# EXHIBIT  1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 04-11548-DPW |
| v. | ) |
| CHARLES R. DALL'ACQUA and | ) |
| PROTOCOL MARKETING GROUP, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF CHARLES R. DALL'ACQUA

I, Charles R. Dall'Acqua, under oath, state as follows:

1.      I am currently the President and Chief Executive Officer of Protocol Services, Inc. ("Protocol"), and have held that position since March 25, 2004.

2.      Prior to joining Protocol, I was an employee of Harte-Hanks, Inc. ("Harte-Hanks"), a company headquartered in San Antonio, Texas, with offices throughout the United States.

3.      I began my employment with Harte-Hanks in approximately 1982, and was terminated on March 5, 2004.

4.      At the time of my termination, I was a Corporate Officer and Senior Vice-President of Harte-Hanks. I worked out of my home office in Annapolis, Maryland.

5.      I did not have a written employment contract with Harte-Hanks. I was not required to sign and did not sign any restrictive covenants of any type prohibiting me from competing with Harte-Hanks or soliciting Harte-Hanks employees at the commencement of my employment, or at any other time during my employment with Harte-Hanks.

6.      On March 4, 2004, Richard Hochhauser, the CEO of Harte-Hanks, informed me that Harte-Hanks was terminating me, and that there would be no severance package.

7.      On March 5, 2004, Harte-Hanks corporate attorney Dean Blythe called me, and informed me that he was trying to broker a severance package for me. Mr. Blythe orally offered me severance for five months or until I found a new job, whichever was earlier, contingent on my signing a noncompetition and nonsolicitation agreement. I declined the offer.

8.      Approximately two to three weeks after my termination from Harte-Hanks, I received a job offer from Protocol. I began employment as President and CEO of Protocol on March 25, 2004. During my interviews with Protocol representatives, I advised Protocol that I did not have any restrictive covenants with Harte-Hanks.

9.      In April 2004, I contacted John Martus, an employee of Harte-Hanks who was working as Controller for their Data Process Unit in Massachusetts, about taking a job with Protocol as Controller. This was the first time that I had spoken to Mr. Martus about employment outside of Harte-Hanks.

10.      During my discussions with Mr. Martus, I asked him whether he had any restrictive covenants with Harte-Hanks which would prevent him from coming to work for Protocol. Mr. Martus informed me that he had a confidentiality and non-solicitation of employees agreement with Harte-Hanks, but no non-competition agreement with Harte-Hanks.

11.      In May of 2004, Protocol offered Mr. Martus the position of Controller with Protocol. He accepted this position, with his employment to commence on June 15, 2004.

12.      On or about June 8, 2004, I received via facsimile a letter from Paul Hacker, Vice President, Legal and Secretary of Harte-Hanks, which accused me of violating a Confidentiality/Non-Disclosure Agreement I had allegedly executed on January 25, 2002 (the

"Dall'Acqua Agreement"). Mr. Hacker enclosed a copy of the Dall'Acqua Agreement with this letter. Copies of this letter and the Dall'Acqua Agreement are attached as Exhibit A and Exhibit B, respectively.

13.     I did not sign the Dall'Acqua Agreement. Prior to my receiving Mr. Hacker's letter dated June 8, 2004, I had never seen the Dall'Acqua Agreement.

14.     The signature on the Dall'Acqua Agreement is not my signature and does not resemble my signature. The curves are different. The letters are not connected the way they are in my signature. The signature is above the signature line, whereas I generally sign on the signature line. The signature also appears to be done in a felt tipped pen, whereas I generally use a fine-tipped pen to sign documents.

15.     Attached to this affidavit as Exhibit C are 18 samples of my signature, which I confirm are my signature.

16.     On the date I purportedly signed the Dall'Acqua Agreement, January 25, 2002, I was traveling to Baltimore from Kansas City on business. A copy of my expense report for January 25, 2002 is attached as Exhibit D.

17.     A few days after I had received the June 8, 2004 letter from Mr. Hacker, Mr. Martus informed me that he had received a letter from Mr. Hacker which enclosed a copy of the Confidentiality/Non-Disclosure Agreement executed between Mr. Martus and Harte-Hanks. Mr. Martus provided me with a copy of the letter he received from Mr. Hacker and the enclosed Confidentiality/Non-Disclosure Agreement, which are attached hereto as Exhibit E and Exhibit F, respectively.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Charles R. Dall'Acqua

Subscribed and sworn to before me
this 23rd day of July , 2004

_____

"OFFICIAL SEAL"
MARY ANN EICHHORST
Notary Public, State of Illinois
My Commission Expires April 23, 2005

# EXHIBIT  A



**HARTE HANKS**

Mailing Address:
P.O. Box 269
San Antonio, TX
78291-0269

Street Address:
200 Concord Plaza Drive
Suite 800
San Antonio, TX
78216-6918

Phone: (210) 829-9135
Fax: (210) 829-9139
E-mail: steve_hacker
@harte-hanks.com

■ Paul Steven Hacker
Vice President, Legal
and Secretary

June 8, 2004

*VIA FACSIMILE (410) 573-0534*

Mr. Charles R. Dall'Acqua
785 Sonne Drive
Annapolis, Maryland 21401

Dear Mr. Dall' Acqua,

Transmitted herewith as Annex A is a copy of the Confidentiality/Non-Disclosure Agreement (the "Agreement") you entered into with Harte-Hanks, Inc. on January 25, 2002. It has become apparent that you have breached Section 5 of the Agreement in connection with your new employment as Chief Executive Officer Protocol Marketing Group by recruiting and hiring John Martus, a Harte-Hanks employee (the "Martus Breach"). Harte-Hanks reserves all, and does not waive any, legal rights it has against you, and/or Protocol Marketing Group related to the Martus Breach.

If you or Protocol Marketing Group hire any other Harte-Hanks employee during the two years following the termination of your employment with Harte-Hanks, regardless of any question about whether you, Protocol, another Protocol representative, or the Harte-Hanks employee initiates the discussion, all legal remedies against you and Protocol Marketing Group will be pursued for the Martus Breach. Further, if such a future breach of the Agreement occurs Harte-Hanks will pursue any and all other claims it may have against you and Protocol related to that breach.

Regards,

Paul Steven Hacker

cc:    Richard Hochhauser
       Dean Blythe

Core Businesses:
• Direct Marketing
• Shoppers

EXHIBIT  B



Annex A





## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1.    I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2.    In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3.    I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs, or systems (collectively, intellectual property) that I develop or discover during my employment by Harte-Hanks and that are related to any work or project that I work on or had knowledge of while employed at Harte-Hanks or that I develop or discover either using Harte-Hanks equipment or resources or while on Harte-Hanks time. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4.    Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5.    I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any

U:\hr\AGR\confidagr_perm_newpara3.doc

employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.  I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.  I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.  If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.  I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____
Employee's Signature

_____
Authorized Harte-Hanks Representative

_____
Date: 1/25/02

_____
Date:

A-2

# EXHIBIT  C

*Signature Samples*

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME C. Dall'Acqua | | DATE PREPARED 12/2/01 C |
|---|---|---|
| LOCATION | DEPARTMENT | |

| ☑ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED 11/18 - 11/24 | 61213 |
|---|---|---|
| TRIP PURPOSE | | 17266 |
| | | 28677 |

| | TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|---|
| 1. | MAJOR TRANSPORTATION | 543.93 | |
| 2. | PERSONAL CAR: ____ MILES @ ____ ¢ | | |
| 3. | RENTED CAR | 72.11 | REC'D DEC 0 6 2001 |
| 4. | PARKING, TOLLS | 60.00 | |
| 5. | TAXI, BUS FARES | | DEC 10 2001 |
| 6. | LODGING | 171.30 | |
| 7. | TELEPHONE TOLLS, ETC. | | |
| 8. | MEALS FOR SELF | 8696 ~~23~~ | see Note over |
| 9. | ENTERTAINING, MEALS FOR OTHERS | 26.60 | METHOD OF SETTLEMENT |
| 10. | MISCELLANEOUS TIPS | | |
| 11. | OTHER ITEMS, SUNDRY | 176.40 | ☑ ISSUE CHECK   ☐ PAY IN CASH |
| | TOTAL OUT-OF-POCKET | 1137.30 | ☐ RECEIPT ATTACHED   ☐ ADJUST PERS. ACCT. |
| | LESS FUNDS ADVANCED | 543.93 | SIGNED C/ |
| | NET DUE EMPLOYEE (COMPANY) | 593.37 | APPROVED |

871710   30112  91071      842.34

871800   30112  91071      11356

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

891000   30112  91071      176.40

102470                     (543.93)

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME C. Dall'Acqua | | | DATE PREPARED 12/2/01 | |
|---|---|---|---|---|
| LOCATION | | DEPARTMENT | | |

| ☑ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

TRIP DESTINATION

PERIOD COVERED  11/25 — 12/1    61213

TRIP PURPOSE    17266

28378

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1.  MAJOR TRANSPORTATION | | |
| 2.  PERSONAL CAR: ____ MILES@ ____ ¢ | | |
| 3.  RENTED CAR | | RECD DEC 10 2001 DEC 10 2001 |
| 4.  PARKING, TOLLS | | |
| 5.  TAXI, BUS FARES | | |
| 6.  LODGING | | |
| 7.  TELEPHONE TOLLS, ETC. | | |
| 8.  MEALS FOR SELF | | |
| 9.  ENTERTAINING, MEALS FOR OTHERS | 283.00 | METHOD OF SETTLEMENT |
| 10. MISCELLANEOUS TIPS | | ☑ ISSUE CHECK        ☐ PAY IN CASH |
| 11. OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED   ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 283.00 | SIGNED  C. Y |
| LESS FUNDS ADVANCED | - - - | |
| NET DUE EMPLOYEE (COMPANY) | 283.00 | APPROVED |

871560  30112  91077

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

# HARTE-HANKS DIRECT MARKETING
## AMD
### EXPENSE REPORT

| NAME  C. Dall'Acqua | | DATE PREPARED  12/2/01 | B |
|---|---|---|---|
| LOCATION | | DEPARTMENT | |

| ☑ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | | PERIOD COVERED  11/11 – 11/17 | 6123 |
|---|---|---|---|
| TRIP PURPOSE | | | 17266 |
| | | | 28676 |

| | TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|---|
| 1. | MAJOR TRANSPORTATION | 406.25 | |
| 2. | PERSONAL CAR: ____ MILES @ ____ ¢ | | |
| 3. | RENTED CAR | 98.89 | REC'D DEC 0 6 2001 |
| 4. | PARKING, TOLLS | 62.00 | |
| 5. | TAXI, BUS FARES | | |
| 6. | LODGING | 337.37 | |
| 7. | TELEPHONE TOLLS, ETC. | | |
| 8. | MEALS FOR SELF | 38.87 | |
| 9. | ENTERTAINING, MEALS FOR OTHERS | 360.71 | METHOD OF SETTLEMENT |
| 10. | MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. | OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| | TOTAL OUT-OF-POCKET | 1304.09 | SIGNED |
| | LESS FUNDS ADVANCED | 322.25 | APPROVED |
| | NET DUE EMPLOYEE (COMPANY) | 981.84 | |

871210    30772 91077        904.51
871500    30772 91077        399.58

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

102470                          (44.00)
102470                          (278.25)

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME C. Dall'Acqua | | DATE PREPARED  12/2/01    A |
|---|---|---|
| LOCATION | | DEPARTMENT |

| ☑ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED  11/4 - 11/10    C1213 |
|---|---|
| TRIP PURPOSE | 17266 |
| | 28675 |

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1. MAJOR TRANSPORTATION | 66.00 | |
| 2. PERSONAL CAR: ____ MILES @ ____ ¢ | | |
| 3. RENTED CAR | | REC'D DEC 08 2001 |
| 4. PARKING, TOLLS | 18.00 | |
| 5. TAXI, BUS FARES | | |
| 6. LODGING | | |
| 7. TELEPHONE TOLLS, ETC. | 275.38 | DEC 10 2001 |
| 8. MEALS FOR SELF | 4.00 | |
| 9. ENTERTAINING, MEALS FOR OTHERS | 84.25 | METHOD OF SETTLEMENT |
| 10. MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 447.63 | SIGNED |
| LESS FUNDS ADVANCED | 275.38 | |
| NET DUE EMPLOYEE (COMPANY) | 172.25 | APPROVED    12/10/01 |

871210   3032   9102    84.00
811500   30332   9107    88.25

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME C. Dall'Acqua | | DATE PREPARED 12/2/01 |
|---|---|---|
| LOCATION | | DEPARTMENT |

☐ BUSINESS TRIP   ☐ CONVENTION   ☐ COMPANY SEMINAR   ☐ OTHER SEMINAR

| TRIP DESTINATION | PERIOD COVERED 10/28 – 11/3 | 21243 |
| TRIP PURPOSE | | 17266 |
| | | 28674 |

| | TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|---|
| 1. | MAJOR TRANSPORTATION | 380.50 ✓ | |
| 2. | PERSONAL CAR: _____ MILES@ _____ ¢ | | |
| 3. | RENTED CAR | | REC'D DEC 0 6 2001 |
| 4. | PARKING, TOLLS | 31.50 ✓ | |
| 5. | TAXI, BUS FARES | 116.00 ✓ | |
| 6. | LODGING | 471.69 ✓ | – Rec'd |
| 7. | TELEPHONE TOLLS, ETC. | | |
| 8. | MEALS FOR SELF | 41.55 ✓ | |
| 9. | ENTERTAINING, MEALS FOR OTHERS | 364 | METHOD OF SETTLEMENT |
| 10. | MISCELLANEOUS TIPS | | ☑ ISSUE CHECK   ☐ PAY IN CASH |
| 11. | OTHER ITEMS, SUNDRY | 750.00 ✓ | ☐ RECEIPT ATTACHED   ☐ ADJUST PERS. ACCT. |
| | TOTAL OUT-OF-POCKET | 1794.88 | SIGNED |
| | LESS FUNDS ADVANCED | 1130.50 | APPROVED |
| | NET DUE EMPLOYEE (COMPANY) | 664.38 | |

DEC 10 2001   POSTED

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

871710   3011 ∟   91011   999.69
871500   3011 ∟   91011   45.19

102470   (260.50)
102470   (120.00)

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME | Charles R. Dall'Acqua | | DATE PREPARED | 3/10/02 |
|---|---|---|---|---|

| LOCATION | | DEPARTMENT | |
|---|---|---|---|

☑ BUSINESS TRIP ☐ CONVENTION ☐ COMPANY SEMINAR ☐ OTHER SEMINAR

| TRIP DESTINATION | | PERIOD COVERED | 2/3 - 2/9 |
|---|---|---|---|

TRIP PURPOSE

REC'D MAR 1 9 2002

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1. MAJOR TRANSPORTATION | 198.00 | |
| 2. PERSONAL CAR: ___ MILES @ ___ ¢ | | |
| 3. RENTED CAR | 190.24 | |
| 4. PARKING, TOLLS | | |
| 5. TAXI, BUS FARES | | |
| 6. LODGING | | |
| 7. TELEPHONE TOLLS, ETC. | 391.60 | |
| 8. MEALS FOR SELF | 13.00 | |
| 9. ENTERTAINING, MEALS FOR OTHERS | | |
| 10. MISCELLANEOUS TIPS | | |
| 11. OTHER ITEMS, SUNDRY | 58.26 | |
| TOTAL OUT-OF-POCKET | 851.00 | |
| LESS FUNDS ADVANCED | 128.00 | |
| NET DUE EMPLOYEE (COMPANY) | 723.00 | |

METHOD OF SETTLEMENT

☑ ISSUE CHECK ☐ PAY IN CASH
☐ RECEIPT ATTACHED ☐ ADJUST PERS. ACCT.

SIGNED

APPROVED

| 871710 | 30772 | 91077 | 388.24 |
| 871500 | 30772 | 91077 | 13.00 |
| 884280 | 30772 | 91077 | 431.40 |
| 891000 | 30772 | 91077 | 18.36 |

**Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.**

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME Charles R. Dall'Acqua | | DATE PREPARED 3/10/02 |
|---|---|---|
| LOCATION | DEPARTMENT | |

| ☐ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED 2/17 – 2/23 |
|---|---|

TRIP PURPOSE

REC'D MAR 18 2002

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1. MAJOR TRANSPORTATION | 477.70 | |
| 2. PERSONAL CAR: _____ MILES@ _____ ¢ | | |
| 3. RENTED CAR | | |
| 4. PARKING, TOLLS | 60.00 | |
| 5. TAXI, BUS FARES | | |
| 6. LODGING | 197.99 | |
| 7. TELEPHONE TOLLS, ETC. | 388.33 | |
| 8. MEALS FOR SELF | 19.96 | |
| 9. ENTERTAINING, MEALS FOR OTHERS | 182.14 | METHOD OF SETTLEMENT |
| 10. MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. OTHER ITEMS, SUNDRY | 86.02 | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 1412.14 | SIGNED |
| LESS FUNDS ADVANCED | ~~866.03~~ 866.03 ~~427.70~~ | |
| NET DUE EMPLOYEE (COMPANY) | 546.11 | APPROVED |

```
8)1210    3072    9077    235.69
871560    3072    9077    202.10
889280    3072    9077    20.95
891660    3072    9077    65.07
```

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME _Charles R. Dall'Acqua_ | | DATE PREPARED _3/10/02_ |
|---|---|---|
| LOCATION | DEPARTMENT | |

| ☐ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED _3/3 - 3/9_ |
|---|---|

TRIP PURPOSE

REC'D MAR 1 9 2002

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1. MAJOR TRANSPORTATION | 5 85.50 | |
| 2. PERSONAL CAR: ___ MILES@ ___ ¢ | | |
| 3. RENTED CAR | | |
| 4. PARKING, TOLLS | | |
| 5. TAXI, BUS FARES | 104.30 | |
| 6. LODGING | 240.19 | |
| 7. TELEPHONE TOLLS, ETC. | 13.00 | |
| 8. MEALS FOR SELF | 16.66 | |
| 9. ENTERTAINING, MEALS FOR OTHERS | 177.40 ~~150.40~~ | METHOD OF SETTLEMENT |
| 10. MISCELLANEOUS TIPS | | ☐ ISSUE CHECK    ☐ PAY IN CASH |
| 11. OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 1137.05 ~~1130.05~~ | SIGNED |
| LESS FUNDS ADVANCED | 386.50 | |
| NET DUE EMPLOYEE (COMPANY) | 750.55 ~~76.55~~ | APPROVED |

871710   30772   9077   ⁹⁻²·⁸⁹   29
871500   30772   9077   $207.06

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

102470   (248.50)
102470   (125.50)

DATE: _9-13-02_

To: Merrill Lynch, Pierce, Fenner & Smith Inc.

_Lee Bollhorst_

_60 West St, Ste. 300_

_Annapolis, MD 21401_

In connection with the proposed sale by me of _30,000_ shares of common stock of _Harte-Hanks_ (" the Company"), pursuant to Rule 144 of the Securities Act of 1933, I hereby represent to you that:

1. I have not made, and will not make, any payment in connection with the execution of the above order to any persons other than Merrill Lynch.

2. I have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with this transaction.

3. I have sold _30,000_ shares of the Company within the preceding three (3) months and I have no sale orders open with any broker, and will not place any pending execution or cancellation of this order.

4. To the best of my knowledge, members of my immediate family and others with whom I am acting in concert or whose sales are required to be aggregated with sales by me pursuant to Rule 144 have sold _-0-_ shares of the Company stock within the preceding three (3) months.

5. In the event that any or all of the securities I am selling are restricted securities as defined in paragraph (a)(3) of Rule 144, I warrant that I have beneficially owned these securities for a period of at least one (1) year as computed in accordance with paragraph (d) of Rule 144.

6. In the event that any or all of the securities I am selling are restricted securities as defined in paragraph (a)(3) of Rule 144, I am aware that payment of the proceeds of the sale is subject to the shares being transferred and delivered free of restriction into Merrill Lynch's name and that the transfer of the shares may be delayed if the certificate(s) bear a restrictive legend. I hereby indemnify Merrill Lynch for any loss it may incur as a result of any such delay.

7. Enclosed is an executed copy of Form 144, three copies of which were transmitted to the Securities and Exchange Commission and (where applicable) one copy of which has been sent to the _NY_ Stock Exchange on _____. (I understand that no form need to be filed if the amount of securities to be sold during any three (3) month period does not exceed 500 shares and the aggregate sale price does not exceed $10,000.)

I am familiar with Rule 144 under the Securities Act of 1933, as amended, and agree that you may rely upon the above statements in executing the order referred to above.

Very truly yours,

_____
(Client Signature)

_Charles R. Dall'Acqua_

_504 Forest Hill Dr._

_Annapolis, MD 21403_
(Client Name & Address)

CODE 1209 (Rev. 3/97)

TOTAL P.04

CHARLES R. DALLACQUA    03-02
410-431-7066
1534 BRIARCLIFF RD.
ARNOLD, MD  21012-2209

1265

7-163/520 MD
8122

Date 12/30/02

Pay to the
Order of  Jasons Moving                              $ 235.00

Two Hundred and Thirty-Five 00/100 —— Dollars

**Bank of America.**

Bank of America Advantage®

ACH R/T 052001633

For _____

⑆052001633⑆ 0039368547025⑈ 1265 ⑈00000023500⑈

---

CHARLES R. DALL'ACQUA    02-88
1534 BRIARCLIFF LANE
ARNOLD, MD  21012

1411

7-163/520 MD
2196

DATE 11/8/01

PAY TO THE
ORDER OF  American Express                          $ 292.05

Two Hundred and Ninety-Two and 05/100 —— DOLLARS

**Bank of America.**

Premier Banking

ACH R/T 052001633

⑆052001633⑆ 00200 2969590⑈ 1411 ⑈00000029205⑈

---

CHARLES R. DALL'ACQUA    02-88
1534 BRIARCLIFF LANE
ARNOLD, MD  21012

1394

7-163/520 MD
2196

DATE 10/1/01

PAY TO THE
ORDER OF  Antoinette Petrucci                       $ 300.00

Three Hundred and 00/100 —— DOLLARS

**Bank of America.**

Premier Banking

ACH R/T 052001633

October 01

⑆052001633⑆ 00200 2969590⑈ 1394 ⑈00000030000⑈

**CHARLES R. DALL'ACQUA**    02-88
1534 BRIARCLIFF LANE
ARNOLD, MD 21012

1434

7-163/520 MD
2196

DATE 12/6/01

PAY TO THE ORDER OF  American Express    $ 2319.63

Two Thousand - Three hundred and Nineteen + 63/100 —    DOLLARS

**Bank of America.**

ACH R/T 052001633

Premier Banking

⑆05200l633⑆ 00 200 2969590⑈ 1434 ⑈0000 23l963⑈

---

**CHARLES R. DALLACQUA**    03-02
410-431-7066
1534 BRIARCLIFF RD.
ARNOLD, MD 21012-2209

1267

7-163/520 MD
8122

Date 1/1/03

Pay to the Order of  Brandon Dall'Acqua    $ 100.00

One Hundred + 00/100    Dollars

**Bank of America.**

ACH R/T 052001633

Bank of America Advantage®

For_____

⑆05200l633⑆ 0039368547251⑈ 1267 ⑈00000 l0000⑈

---

**CHARLES R. DALL'ACQUA**    02-88
1534 BRIARCLIFF LANE
ARNOLD, MD 21012

1459

7-163/520 MD
2196

DATE 12/18/54

PAY TO THE ORDER OF  South River Yachts    $ 309.00

Three Hundred and Nine 00/100 —    DOLLARS

**Bank of America.**

ACH R/T 052001633

Premier Banking

⑆05200l633⑆ 00 200 2969590⑈ 1459 ⑈0000030900⑈

We the sellers Charles Dall'Acqua and Marie Dall'Acqua agree to split the proceeds of the sale of 1201 Scarlett Place as follows:

| | |
|---|---|
| Charles Dall'Acqua | 109,042.47 |
| Marie Dall'Acqua | 106,566.48 |
| Total | 216,608.95 |

_[signature]_ 7/24/03
_[signature]_ 7/24/03

WITNESS: _[signature]_ 7/24/03

Notary: _[signature]_
Comm Expires: 8/1/05

ORIGINATOR:    Richard Hochhauser
DISTRIBUTION: Board of Directors                                    1/29/03
SUBJECT:      **SENIOR MANAGEMENT BONUS**        | HH EPS |

| EPS | % GROWTH | % ACHIEVEMENT | INCREMENTAL EPS |
|---|---|---|---|
| 0.97 | 1.0% | 10% | 0.01 |
| 0.99 | 3.1% | 20% | .0.03 |
| 1.01 | 5.2% | 30% | 0.05 |
| 1.02 | 6.3% | 40% | 0.06 |
| 1.03 | 7.3% | 70% | 0.07 |
| 1.05 | 9.4% | 85% | 0.09 |
| 1.06 | 10.4% | 100% | 0.10 |

|  | 2002A | 2003B | GROWTH |
|---|---|---|---|
| ADJUSTMENTS | $  0.96 | $  1.05 | 9.38% |
|  | - | - |  |
| ADJUSTED | $  0.96 | $  1.05 | 9.38% |

**EPS IN 02 AND 03 REFLECT NEW ACCOUNTING FOR GOODWILL
AND 3:2 SPLIT OF MAY 2002**

NOTE:  MUST BE EMPLOYED AT YEAR END TO QUALIFY

NO PRORATION BETWEEN LEVELS

Sign: _____

Date: _____

I/WE, THE UNDERSIGNED, DO HEREBY AGREE TO ACCEPT AND COMPLY WITH ALL CONDITIONS OF THE ABOVE REFERENCED GRADING PERMIT AND APPROVED GRADING AND SEDIMENT CONTROL PLAN.  I/WE FURTHER UNDERSTAND AND AGREE THAT THE ABOVE-NOTED PERMIT WILL BE LISTED IN MY/OUR NAME(S) AND THAT I/WE WILL BE TOTALLY AND COMPLETELY RESPONSIBLE FOR PERFORMANCE UNDER THE PERMIT AND APPROVED GRADING AND SEDIMENT CONTROL PLAN AS IF I/WE ARE/WERE THE ORIGINAL PERMITTEE(S).

_____           _____
SIGNATURE OF NEW PERMITTEE(S)                              DATE

_____
TITLE

STATE OF MARYLAND, COUNTY OF __Queen Anne_____ , to wit:

I HEREBY CERTIFY, That on this _16_ day of _November_____ , 19 2001 before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared _Charles R. Dall'Acqua_ known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within Request for Transfer of Grading Permit and acknowledged that same was executed for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                         _Colleen L. Webb_
                         Notary Public

My commission expires: _1-1-05_____

_____
_____

TRANSFER APPROVED
BY: _____           _1-3-02_____
     DIRECTOR, DEPARTMENT OF                       DATE
     INSPECTIONS AND PERMITS

-2-

Nov.12. 2001 10:32AM



### Anne Arundel County Association of REALTORS®



## ADDENDUM / AMENDMENT

ADDENDUM/ADDENDUM # _____ dated _____ <u>November 03, 2001</u> _____ to CONTRACT OF SALE dated _____ between
Buyer(s): _____ and
Seller(s): _____ <u>ROBB TAYLOR</u> _____ <u>CYNTHIA TAYLOR</u> ____ for Property known as: _____ <u>785 SONNE DRIVE</u> ___,
_____ <u>ANNAPOLIS</u> _____ <u>MD</u> _____ <u>21401-</u> _____

**ALL PARTIES AGREE:**
1. CURRENT *Demolition* BUILDING AND GRADING PERMITS WILL BE TRANSFERED TO PURCHASERS AT SETTLEMENT *and will be updated and in affect.*
2. PURCHASERS AGREE TO REIMBURSE SELLERS AT SETTLEMENT $4698.00 FOR GRADING BOND.

3. PURCHASERS AGREE TO ALLOW SELLERS USE OF EXISTING GARAGE ON PROPERTY FOR STORAGE UNTIL 02/28/02. PURCHASER SHALL HAVE NO LIABILITY FOR ITEMS LEFT IN GARAGE.

4. PROPERTY AND BUILDINGS SOLD IN "AS-IS" CONDITION.

5. Seller agrees to assign all demolition, grading and building permits to purchaser.

*All other terms and conditions of the Contract of Sale remain in full force and effect.*

_____    11/09/01        _____    11/10/01
Buyer                    Date            Seller                   Date

_____    _____      _____    11/12/01
Buyer                    Date            Seller                   Date

This form is the property of Anne Arundel County Association of REALTORS®, Inc. and may be used only by Association members.

AACAR Form S-3071.Revised 3/2001.ProForms Ver. 4.0.8.Cynthia Taylor.RE/MAX Ideal Properties.172 West Street

EXHIBIT  D

## TRIP EXPENSE DETAILS

| | TYPE OF EXPENSE | INSERT DATES | SUNDAY 1/20 | MONDAY 1/21 | TUESDAY 1/22 | WEDNESDAY 1/23 | THURSDAY 1/24 | FRIDAY 1/25 | SATURDAY 1/26 | WEEKLY TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. | MAJOR TRANSPORTATION | | | | | | | | | $20.89 |
| 2. | PERSONAL CAR | | | | 165.00 | | 255.89 | 100.00 | | |
| 3. | RENTED CAR | | | | | | | | | |
| 4. | PARKING, TOLLS | | | | | | | 8.69 | | 8.69 |
| 5. | TAXI, BUS FARES | | | | 6.00 | | | 60.00 | | 66.00 |
| 6. | LODGING | | | | | | | | | |
| 7. | TELEPHONE TOLLS, ETC. | | | | | | 141.37 | | | 141.37 |
| 8. A | BREAKFAST | | | | | | | | | |
| 8. B | LUNCH | | | | 4.00 | | 4.00 | 3.00 | | 11.00 |
| 8. C | DINNER | | | | 3.75 | | | | | 3.75 |
| 8. D | SNACKS, ETC. | | | | 5.00 | | 6.95 | 3.00 | | 14.95 |
| 8. | TOTAL MEALS FOR SELF | | | | | | | | | |
| 9. | ENTERTAINING, MEALS FOR OTHERS | | | | | | | | | |
| 10. | MISCELLANEOUS TIPS | | | | | | 33.00 | | | 33.00 |
| 11. | OTHER ITEMS, SUNDRY | | | | | 5.16 | | | | 31.99 |
| | DAILY TOTALS | | 26.83 | | | | | | | 909.94 |

ADDITIONAL EXPLANATION

| LINE | DATE | AMOUNT | |
|---|---|---|---|
| 11 | 1/20 | 26.83 | Office Supplies |
| 4 | 1/22 | 60.00 | Parking - HHD |
| 6 | 1/24 | 141.37 | Hotel - HHC |
| 9 | 1/24 | 33.00 | Dinner - & Mason |
| 1 | 1/25 | 100.00 | Airfare Charge |
| 3 | 1/25 | 86.89 | Car Rental |
| 4 | 1/25 | 60.00 | Airport Parking |
| 1 | 1/26 | 14500 | rental - Bwl-Boston-Bwl |
| 1 | 1/27 | 265.89 | Hotel - Bwl-Boston-Bwl |

ADDITIONAL EXPLANATION

| LINE | DATE | AMOUNT |
|---|---|---|
| | | |

EXHIBIT  E



■ Paul Steven Hacker
Vice President, Legal
and Secretary

Mailing Address:
P.O. Box 269
San Antonio, TX
78291-0269

Street Address:
200 Concord Plaza Drive
Suite 800
San Antonio, TX
78216-0918

Phone: (210) 829-9135
Fax: (210) 829-9139
E-mail: steve_hacker
@harte-hanks.com

June 9, 2004

***VIA FEDERAL EXPRESS***

Mr. John Martus
49 Macintosh Lane
Fitchburg, Massachusetts 01420

Dear Mr. Martus,

Transmitted herewith as <u>Annex A</u> is a copy of the Confidentiality/Non-Disclosure Agreement (the "Agreement") you entered into with Harte-Hanks, Inc. on December 15, 2003. Harte-Hanks reserves all, and does not waive any, legal rights it has related to the Agreement. Please re-review the Agreement so that you are aware of and may properly honor your obligations thereunder.

Regards,

*Paul Steven Hacker*

Paul Steven Hacker


cc: Dean Blythe

Core Businesses:
• Direct Marketing
• Shoppers

# EXHIBIT  F



# $A$ NNE $\times A$

## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1.  I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2.  In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3.  I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs, or systems (collectively, intellectual property) that I develop or discover during the period of time I am employed by Harte-Hanks and that are related to any work or project that I work on or had knowledge of while employed at Harte-Hanks or that I develop or discover either using Harte-Hanks equipment or resources or while on Harte-Hanks time. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4.  Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5.  I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any

## $A$-1

D:\Confidentiality\Forms\Confidentiality - Empl.doc

employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.  I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.  I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.  If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.  I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____    _____
Employee's Signature    Authorized Harte-Hanks Representative

_____John Martus_____    _MERCURIA P GRIFFITH_
Print Name    Print Name

_____12/15/03_____    _12-15-2003_____
Date    Date

D:\Confidentiality\Forms\Confidentiality - Empl..doc    A-2