# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-11548-DPW |
| v. ) | |
| CHARLES R. DALL'ACQUA and ) | |
| PROTOCOL MARKETING GROUP, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## AFFIDAVIT OF JOHN MARTUS

I, John Martus, under oath, state as follows:

1. I am currently employed as the Controller by Protocol Services, Inc. ("Protocol"), and have held that position since June 15, 2004.

2. Prior to joining Protocol, I was an employee of Harte-Hanks, Inc. ("Harte-Hanks"), a company headquartered in San Antonio, Texas, with offices throughout the United States.

3. I began my employment with Harte-Hanks in November 1995 and resigned from my employment with Harte-Hanks on May 24, 2004, effective June 4, 2004.

4. At the time of my resignation, I was Controller of their Data Process Unit in Massachusetts, and worked in Harte-Hanks' offices in Billerica, Massachusetts.

5. In April 2004, I was contacted by Charles Dall'Acqua, a former employee of Harte-Hanks who was then and is now the President and CEO of Protocol, about taking a position as Controller with Protocol. This was the first time that I had spoken to Mr. Dall'Acqua about employment outside of Harte-Hanks.

6. During my discussions with Mr. Dall'Acqua, Mr. Dall'Acqua asked me if I had any restrictive covenants with Harte-Hanks which would prevent me from working for Protocol. I told Mr. Dall'Acqua that I had executed a confidentiality and non-solicitation of employees agreement with Harte-Hanks. Mr. Dall'Acqua asked me whether I had a non-compete agreement with Harte-Hanks and I told him that I did not.

7. In May of 2004, I was offered and accepted the position of Controller with Protocol. My employment with Protocol was to commence on June 15, 2004.

8. On May 24, 2004, I gave Harte-Hanks two weeks' notice of my resignation and informed them that my last day of employment would be June 4, 2004. Shortly thereafter, Dean Blythe, Harte-Hanks' corporate attorney, called me and asked me if I was going to work for Protocol, and I told him that I was. From May 24, 2004 until my last day of work for Harte-Hanks, June 4, 2004, I continued my job duties for Harte-Hanks. On June 4, 2004, I attended an exit interview for Harte-Hanks. Prior to my last day of work for Harte-Hanks, no one from Harte-Hanks said anything to me about my intended employment by Protocol violating any agreement with Harte-Hanks.

9. On or about June 9, 2004, I received via federal express a letter from Paul Hacker, Vice President, Legal and Secretary of Harte-Hanks, reminding me of the Confidentiality/Non-Disclosure Agreement I had executed on December 15, 2003 (the "Martus Confidentiality Agreement"). Mr. Hacker enclosed a copy of the Martus Confidentiality Agreement with this letter. Copies of this letter and the Martus Confidentiality Agreement are attached as Exhibit A and Exhibit B, respectively.

10. I recognized the Martus Confidentiality Agreement which I had signed. Within a day or two of receipt, I informed Mr. Dall'Acqua that I had received the letter and the Martus

...

Confidentiality Agreement and provided Mr. Dall'Acqua with copies of both documents. Mr. Dall'Acqua stated that he did not expect me to violate any of the provisions of the Martus Confidentiality Agreement in my job as Controller for Protocol.

11. On or about July 14, 2004, I learned that Harte-Hanks had filed a Complaint against Mr. Dall'Acqua and Protocol, and that Harte-Hanks had attached a copy of a Non-Compete Agreement between Harte-Hanks and me that I purportedly signed on October 13, 2003, a copy of which is attached hereto as Exhibit C.

12. I do not recall signing the Non-Compete Agreement, and do not recall seeing the Non-Compete Agreement prior to July 14, 2004.

I declare under penalty of perjury that the foregoing is true and correct.

_____
John Martus

Subscribed and sworn to before me
this 21 day of July, 2004

_____
Dianne M. Stewart
NOTARY PUBLIC
My commission expires Sept. 3, 2004

# EXHIBIT A



Mailing Address:
P.O. Box 269
San Antonio, TX
78291-0269

Street Address:
200 Concord Plaza Drive
Suite 800
San Antonio, TX
78216-6918

Phone: (210) 829-9135
Fax: (210) 829-9139
E-mail: steve_hacker
@harte-hanks.com

■ Paul Steven Hacker
Vice President, Legal
and Secretary

June 9, 2004

***VIA FEDERAL EXPRESS***

Mr. John Martus
49 Macintosh Lane
Fitchberg, Massachusetts 01420

Dear Mr. Martus,

Transmitted herewith as <u>Annex A</u> is a copy of the Confidentiality/Non-Disclosure Agreement (the "Agreement") you entered into with Harte-Hanks, Inc. on December 15, 2003. Harte-Hanks reserves all, and does not waive any, legal rights it has related to the Agreement. Please re-review the Agreement so that you are aware of and may properly honor your obligations thereunder.

Regards,

*[signature]*

Paul Steven Hacker


cc: Dean Blythe

Core Businesses:
• Direct Marketing
• Shoppers

# EXHIBIT B

# ANNEX A

## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1. I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2. In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3. I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs, or systems (collectively, intellectual property) that I develop or discover during the period of time I am employed by Harte-Hanks and that are related to any work or project that I work on or had knowledge of while employed at Harte-Hanks or that I develop or discover either using Harte-Hanks equipment or resources or while on Harte-Hanks time. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4. Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5. I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any

A-1

employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6. I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7. I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8. If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9. I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____        _____
Employee's Signature                                    Authorized Harte-Hanks Representative

_____John Martus_____        _____Mercuria P Griffin_____
Print Name                                                      Print Name

_____12/15/03_____        _____12-15-2003_____
Date                                                                 Date

A-2

D:\Confidentiality\Forms\Confidentiality - Empl..doc

# EXHIBIT C

JUN-29-'04 15:01 FR HARTE HANKS         210 829 9139 TO 916173301996        P.06/07
08/07/2004 MON 08:24 FAX 9786716190          HARTEHANKS                              ☒005



# NON-COMPETE AGREEMENT

This Agreement (the "Agreement") is made by and between Harte-Hanks, Inc. or a subsidiary or affiliate thereof (hereinafter referred to as "Employer"), and the undersigned Employee (hereinafter referred to as "Employee").

In consideration of employment at Employer, and based upon the mutual promises and agreements contained herein, the parties hereto agree as follows:

1. This Agreement supplements the Confidentiality/Non-Disclosure Agreement between Employer and Employee and incorporates those terms by reference.

2. Restrictive Covenant

   For so long as Employee is employed by Employer and for a period of one (1) year after the termination of Employee's employment for any reason whatsoever, whether voluntarily or involuntarily, Employee shall not, without prior express written consent of Employer, directly or indirectly, whether as an employee, officer, trustee, consultant, owner, partner, coventurer, agent, advisor or otherwise, render services to any "competing organization" that does or seeks business (whether by soliciting customers of Employer or otherwise) in any of the businesses engaged in by Employer in which Employee worked or was involved at Employer. For purposes of this agreement, a "competing organization" shall be any business involved in the same or substantially similar business as Employer or which competes in any way with the business of Employer, either directly or indirectly as a contractor or subcontractor. Employee further acknowledges that to the extent Employee is engaged in sales and/or dealings with customers, Employee develops substantial good will on behalf of Employer by dealing with customers. Such customer good will is, in all instances, the property of Employer. Employee further acknowledges that any solicitation of customers in violation of this agreement would be a misappropriation of customer good will to the substantial detriment of Employer.

3. Employment at Will

   Nothing in this agreement shall be construed as a promise or agreement of any kind, express or implied, of employment for specific duration.

4. Acknowledgment of Voluntariness and Consideration

   Employee acknowledges that she/he understands the provisions of this agreement, that the agreement is entered into knowingly and voluntarily, and that Employee has been afforded a sufficient amount of time to consider the agreement and to consult with and seek the advice of any person of Employee's choosing, including an attorney. Employee

C:\Documents and Settings\dlobley\My Documents\Confidentiality\Forms\Non-compete.doc

JUN 08 '04 08:27                                       9786716190              PAGE.05

further acknowledges that any employment Employee has with Employer after the date on which this agreement is executed is adequate and sufficient consideration to support the agreement.

AGREED TO AND ACCEPTED:

_____
Employee's Signature

_____
Authorized Harte-Hanks
Representative

John Martus
Print Name

David A. Lobley
Print Name

10/13/03
Date

10/10/03
Date