# EXHIBIT 4

Case 1:04-cv-11548-DPW    Document 10-5    Filed 07/30/2004    Page 1 of 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., | ) |
|       Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 04-11548-DPW ) |
| CHARLES R. DALL'ACQUA and PROTOCOL MARKETING GROUP, | ) ) ) |
|       Defendants. | ) ) |

## AFFIDAVIT OF CARLA J. ROZYCKI

I, Carla J. Rozycki, under oath, state as follows:

1.    I am a partner in the law firm of Jenner & Block, LLP, and one of the attorneys representing Charles R. Dall'Acqua ("Dall'Acqua") and Protocol Services, Inc. ("Protocol") in the above-captioned matter.

2.    On July 8, 2004, I returned a telephone call to Kathleen Kelley ("Kelley"), counsel for Harte-Hanks, Inc. ("Harte-Hanks"). The stated purpose of Kelley's call was to inquire whether Dall'Acqua would agree to a motion for a preliminary injunction prohibiting Dall'Acqua from soliciting any of Harte-Hanks' employees. I informed her that my client would not agree to such an injunction.

3.    I informed Kelley that Dall'Acqua was adamant that he was not presented with nor did he sign the purported Confidentiality/Non-Disclosure Agreement dated January 25, 2002 (the "Purported Dall'Acqua Agreement"); that Dall'Acqua was traveling on the day he purportedly signed the agreement; that he was terminated with no offer of severance initially, but was subsequently offered five months of severance in exchange for signing a noncompetition and nonsolicitiation agreement, which he declined; and that both prior to and after his

termination by Harte-Hanks, Dall'Acqua told Protocol that he had no restrictive covenants with Harte-Hanks.

4. I suggested that Kelley check for an expense report for the date Dall'Acqua purportedly signed the agreement, and talk to Elaine Dernoga ("Dernoga"), Dall'Acqua's former secretary, who appeared to have signed the Purported Dall'Acqua Agreement on behalf of the company.

5. Kelley informed me that she had already spoken to Dernoga, and that Dernoga confirmed that the signature on the Purported Dall'Acqua Agreement was Dall'Acqua's signature. However, Kelley also told me that Dernoga did not recall witnessing Dall'Acqua sign the Agreement.

6. I then informed Kelley that Harte-Hanks had no witness to Dall'Acqua signing the Dall'Acqua Agreement, that Dall'Acqua insists that he did not sign the agreement, and that there was documentary evidence that Dall'Acqua was traveling on the date the agreement was allegedly signed by him.

7. During this conversation, Kelley stated that Harte-Hanks was not alleging that Dall'Acqua had a noncompetition agreement with Harte-Hanks, only that he had a nonsolicitation of employees agreement with Harte-Hanks. Kelley made no mention to me of the purported Non-Compete Agreement between John Martus and Harte-Hanks.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Carla J. Rozycki

Subscribed and sworn to before me
this 23rd day of July, 2004

_____

"OFFICIAL SEAL"
MARY ANN EICHHORST
Notary Public, State of Illinois
My Commission Expires April 23, 2005

CHICAGO_1131442_1