# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 04-11548-DPW |
| v. | ) |
| CHARLES R. DALL'ACQUA and | ) |
| PROTOCOL MARKETING GROUP, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF ELLEN MULCRONE SCHUETZNER

I, Ellen Mulcrone Schuetzner, under oath, state as follows:

1.      I am a forensic document examiner who has been certified by the American Board of Forensic Document Examiners. A copy of my Curriculum Vitae is attached as Exhibit A.

2.      I have been retained by counsel for Charles Dall'Acqua ("Dall'Acqua") and Protocol Services, Inc. ("Protocol") to conduct a handwriting analysis to determine the authenticity of Dall'Acqua's alleged signature on a document. A copy of the document containing the questioned signature is attached as Exhibit B.

3.      I was provided a number of sample signatures of Dall'Acqua's, which I was told were undisputedly authentic, to compare to the questioned signature. Copies of these documents containing the known signature of Dall'Acqua are attached as Exhibit C.

4.      I conducted visual and microscopic examinations of the documents, which were conducted following the Guideline for the Examination of Handwritten Items.

5.      A true and correct copy of the report I prepared upon the conclusion of my analysis is attached hereto as Exhibit D.

5.      I found significant differences between the questioned and known signatures, which included dissimilarities in the design of the letterforms, connecting strokes between letters, height proportions in the ascenders and descenders in the letters and the ending stroke.

6.      Due to the pictorial similarities and the significant differences found between the questioned and known signatures, I believe the questioned signature may be an attempt to simulate or trace an authentic signature.

7.      My conclusion is that there is no evidence to indicate that the person who prepared the known Charles Dall'Acqua signatures on the samples known to be authentic executed the questioned signature on Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.


                                                    Ellen Mulcrone Schuetzner

Subscribed and sworn to before me
this 22ND day of JULY , 2004

"OFFICIAL SEAL"
SEYMOUR I. SHEDLOW
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/22/06

# EXHIBIT  A

# ELLEN MULCRONE SCHUETZNER

Forensic Document Examiner
PMB 161
6348 N. Milwaukee Avenue
Chicago, Illinois  60646-3728
(773) 774-5731

*American Academy of
Forensic Sciences
Fellow*

*American Board of Forensic
Document Examiners, Inc.
Diplomate*

## CURRICULUM VITAE

**Employment Background:**

| | |
|---|---|
| July, 1988 to Present | Self-employed as a Forensic Document Examiner |
| Jan., 1986 to July, 1988 | Internal Revenue Service National Forensic Laboratory, Chicago, IL |
| Sept., 1980 to Jan., 1986 | Chicago Police Department Crime Laboratory Chicago, IL |

**Education:**   B.A., University of Illinois, Chicago

**Training:**

Chicago Police Department Crime Laboratory
Illinois Department of Law Enforcement,
Springfield, IL
FBI Academy, Quantico, VA
Illinois Printing Institute, Chicago, IL
U.S. Army Laboratory Training Program,
Fort Gillem, GA

**Membership:**

Fellow, American Academy of Forensic Sciences
Member, American Society of Testing and Materials

**Certification:**

Diplomate, American Board of Forensic Document
Examiners

**Presentations:**

American Academy of Forensic Sciences
American Society of Questioned Document Examiners
Midwest Association of Forensic Sciences
Cook County Public Defender's Office
Northwestern University Law School
The John Marshall Law School
DePaul University Law School

**Technical Papers:**

Security Printing: Methods to Discourage Counterfeiting,
Presented to the 1985 meeting of the American Society of
Questioned Document Examiners

Examination of Sequence of Strokes with an Image
Enhancement System, presented to the 1987 meeting of the
American Academy of Forensic Sciences and published in
the Journal of Forensic Sciences, Vol. 33, No. 1,
January, 1988

Shading: A Review of the Literature, presented to the 1990
Meeting of the Midwest Association of Forensic Sciences

Examination of Defects in Laser Printed Documents,
Presented to the 1992 meeting of the American Society
Of Questioned Document Examiners

The Shredded Paper Puzzle: The Reconstruction of
Shredded Documents, presented to the 1997 meeting of the
American Academy of Forensic Sciences and published in
the International Journal of Forensic Document Examiners,
Vol. 4, No.3, July/September, 1998

Class Characteristics of Hand Printing, presented to the
1999 meeting of the American Academy of Forensic
Sciences and  published in the Journal of the American
Society of Questioned Document Examiners, Vol. 2,
No. 1, June 1999

Class Characteristics of Numbers, presented at the 2000
Meeting of the American Academy of Forensic Sciences

**Testimony:**

Testimony given in Federal, Tax, and State courts,
Arbitration and Hearing Boards

# EXHIBIT  B





## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1.  I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2.  In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3.  I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs, or systems (collectively, intellectual property) that I develop or discover during my employment by Harte-Hanks and that are related to any work or project that I work on or had knowledge of while employed at Harte-Hanks or that I develop or discover either using Harte-Hanks equipment or resources or while on Harte-Hanks time. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4.  Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5.  I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any

employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.     I have read this entire Agreement and understand the Agreement and the restrictions contained herein.  I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests.  I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.     I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.     If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision.  Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.     I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10.    I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11.    In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12.    This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.


AGREED TO AND ACCEPTED:


_____                    _____
Employee's Signature                                Authorized Harte-Hanks Representative


_____                    _____
Date                                                Date

# EXHIBIT  C

*Signature Samples*

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME C. Dall'Acqua | | DATE PREPARED 12/2/01 C |
|---|---|---|
| LOCATION | DEPARTMENT | |

☑ BUSINESS TRIP    ☐ CONVENTION    ☐ COMPANY SEMINAR    ☐ OTHER SEMINAR

| TRIP DESTINATION | PERIOD COVERED 11/18 - 11/24 | 61213 |
|---|---|---|
| TRIP PURPOSE | | 17266 |
| | | 28677 |

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1. MAJOR TRANSPORTATION | 543.93 | |
| 2. PERSONAL CAR: _____ MILES@ _____ ¢ | | |
| 3. RENTED CAR | 72.11 | RECD DEC 06 2001 |
| 4. PARKING, TOLLS | 60.00 | |
| 5. TAXI, BUS FARES | | DEC 10 2001 |
| 6. LODGING | 171.30 | PAID |
| 7. TELEPHONE TOLLS, ETC. | | |
| 8. MEALS FOR SELF | 8696 ~~2773~~ | see Note over |
| 9. ENTERTAINING, MEALS FOR OTHERS | 26.60 | METHOD OF SETTLEMENT |
| 10. MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. OTHER ITEMS, SUNDRY | 176.40 | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 1137.30 | SIGNED C.—— |
| LESS FUNDS ADVANCED | 543.93 | |
| NET DUE EMPLOYEE (COMPANY) | 593.37 | APPROVED 12/14/01 |

871710    30772  91071        842.34

871800    30772  91072        11356

891000    30772  91077        176.40

102470                        (543.93)

**Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.**

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME C. Dall'Acqua | | DATE PREPARED 12/2/01 | |
|---|---|---|---|
| LOCATION | | DEPARTMENT | |

| ☑ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | | PERIOD COVERED 11/25 — 12/1 | 6213 |
|---|---|---|---|
| TRIP PURPOSE | | | 1766 |
| | | | 28378 |

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1. MAJOR TRANSPORTATION | | |
| 2. PERSONAL CAR: ____ MILES@ ____ ¢ | | |
| 3. RENTED CAR | | REC'D DEC 10 2001 / DEC 10 2001 |
| 4. PARKING, TOLLS | | |
| 5. TAXI, BUS FARES | | |
| 6. LODGING | | |
| 7. TELEPHONE TOLLS, ETC. | | |
| 8. MEALS FOR SELF | | |
| 9. ENTERTAINING, MEALS FOR OTHERS | 283.00 | METHOD OF SETTLEMENT |
| 10. MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 283.00 | SIGNED C. ⎰ |
| LESS FUNDS ADVANCED | – – – | |
| NET DUE EMPLOYEE (COMPANY) | 283.00 | APPROVED |

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME  C. Dall'Acqua | | DATE PREPARED  12/2/01 | ß |
|---|---|---|---|
| LOCATION | | DEPARTMENT | |

| ☑ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED  11/11 – 11/17 | 6123 |
|---|---|---|
| TRIP PURPOSE | | 17266 |
| | | 28676 |

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1.  MAJOR TRANSPORTATION | 406.25 | |
| 2.  PERSONAL CAR: _____ MILES @ _____ ¢ | | |
| 3.  RENTED CAR | 98.89 | REC'D DEC 0 6 2001 |
| 4.  PARKING, TOLLS | 62.00 | |
| 5.  TAXI, BUS FARES | | |
| 6.  LODGING | 337.37 | |
| 7.  TELEPHONE TOLLS, ETC. | | DEC 10 2001 |
| 8.  MEALS FOR SELF | 38.87 | |
| 9.  ENTERTAINING, MEALS FOR OTHERS | 360.71 | METHOD OF SETTLEMENT |
| 10.  MISCELLANEOUS TIPS | | ☑ ISSUE CHECK          ☐ PAY IN CASH |
| 11.  OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED     ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 1304.09 | SIGNED |
| LESS FUNDS ADVANCED | 322.25 | |
| NET DUE EMPLOYEE (COMPANY) | 981.84 | APPROVED |

871210    30722 91071    904.51
871500    30722 91077    399.58

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

102470    (44.00)
102470    (278.25)

# HARTE-HANKS DIRECT MARKETING
## AMD
## EXPENSE REPORT

| NAME C. Dall'Acqua | | | | DATE PREPARED 12/2/01   A |
|---|---|---|---|---|
| LOCATION | | DEPARTMENT | | |

| ☑ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED 11/4 - 11/10    C1213 |
|---|---|
| TRIP PURPOSE | 17266 |
| | 28675 |

| | TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|---|
| 1. | MAJOR TRANSPORTATION | 66.00 | |
| 2. | PERSONAL CAR: ____MILES@____ ¢ | | |
| 3. | RENTED CAR | | REC'D DEC 08 2001 |
| 4. | PARKING, TOLLS | 18.00 | |
| 5. | TAXI, BUS FARES | | |
| 6. | LODGING | | |
| 7. | TELEPHONE TOLLS, ETC. | 275.38 | DEC 10 2001 |
| 8. | MEALS FOR SELF | 4.00 | |
| 9. | ENTERTAINING, MEALS FOR OTHERS | 84.25 | METHOD OF SETTLEMENT |
| 10. | MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. | OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| | TOTAL OUT-OF-POCKET | 447.63 | SIGNED |
| | LESS FUNDS ADVANCED | 275.38 | |
| | NET DUE EMPLOYEE (COMPANY) | 172.25 | APPROVED |

811210   30332  9103    84.00
811500   30332  9103    88.25

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

# HARTE-HANKS DIRECT MARKETING
## AMD
### EXPENSE REPORT

| NAME C. Dall'Acqua | | DATE PREPARED 12/2/01 |
|---|---|---|
| LOCATION | DEPARTMENT | |

☐ BUSINESS TRIP   ☐ CONVENTION   ☐ COMPANY SEMINAR   ☐ OTHER SEMINAR

| TRIP DESTINATION | PERIOD COVERED 10/28 – 11/3 | 6/2/3 |
|---|---|---|
| TRIP PURPOSE | | 17266 |
| | | 28674 |

| | TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|---|
| 1. | MAJOR TRANSPORTATION | 280.50 ✓ | |
| 2. | PERSONAL CAR: ____ MILES @ ____ ¢ | | |
| 3. | RENTED CAR | | REC'D DEC 0 6 2001 |
| 4. | PARKING, TOLLS | 31.50 ✓ | |
| 5. | TAXI, BUS FARES | 116.00 ✓ | |
| 6. | LODGING | 471.69 ✓ | |
| 7. | TELEPHONE TOLLS, ETC. | | |
| 8. | MEALS FOR SELF | 41.55 ✓ | |
| 9. | ENTERTAINING, MEALS FOR OTHERS | 364 ✓ | METHOD OF SETTLEMENT |
| 10. | MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. | OTHER ITEMS, SUNDRY | 750.00 ✓ | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| | TOTAL OUT-OF-POCKET | 1794.88 | SIGNED |
| | LESS FUNDS ADVANCED | 1130.50 | |
| | NET DUE EMPLOYEE (COMPANY) | 664.38 | APPROVED |

DEC 10 2001

8-71710    3071 ∟ 9/011    999.69
8-71500    3071 ∟ 9/611    45.19

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

102470                    (260.50)

102470                    (120.00)

# HARTE-HANKS DIRECT MARKETING
## AMD
### EXPENSE REPORT

| NAME | Charles R. Dall'Acqua | | DATE PREPARED | 3/10/02 |
|---|---|---|---|---|

| LOCATION | | DEPARTMENT | |
|---|---|---|---|

☑ BUSINESS TRIP    ☐ CONVENTION    ☐ COMPANY SEMINAR    ☐ OTHER SEMINAR

| TRIP DESTINATION | | PERIOD COVERED | 2/3 - 2/9 |
|---|---|---|---|

TRIP PURPOSE

REC'D MAR 1 9 2002

| | TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|---|
| 1. | MAJOR TRANSPORTATION | 198.00 | |
| 2. | PERSONAL CAR: ____ MILES@ ____ ¢ | | |
| 3. | RENTED CAR | 190.24 | |
| 4. | PARKING, TOLLS | | |
| 5. | TAXI, BUS FARES | | |
| 6. | LODGING | | |
| 7. | TELEPHONE TOLLS, ETC. | 391.60 | |
| 8. | MEALS FOR SELF | 13.00 | |
| 9. | ENTERTAINING, MEALS FOR OTHERS | | |
| 10. | MISCELLANEOUS TIPS | | |
| 11. | OTHER ITEMS, SUNDRY | 58.76 | |
| | TOTAL OUT-OF-POCKET | 851.00 | |
| | LESS FUNDS ADVANCED | 128.00 | |
| | NET DUE EMPLOYEE (COMPANY) | 723.00 | |

METHOD OF SETTLEMENT

☑ ISSUE CHECK    ☐ PAY IN CASH
☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT.

SIGNED

APPROVED

| 871710 | 30772 | 91077 | 388.24 |
|---|---|---|---|
| 871500 | 30772 | 91077 | 13.00 |
| 884280 | 30772 | 91077 | 431.40 |
| 891000 | 30772 | 91077 | 1836 |

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

# HARTE-HANKS DIRECT MARKETING
## AMD
### EXPENSE REPORT

| NAME Charles R. Dall'Acqua | | DATE PREPARED 3/10/02 |
|---|---|---|
| LOCATION | DEPARTMENT | |

| ☐ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED 2/17 – 2/23 |
|---|---|

TRIP PURPOSE

REC'D MAR 18 2002

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1. MAJOR TRANSPORTATION | 477.70 | |
| 2. PERSONAL CAR: _____ MILES @ _____ ¢ | | |
| 3. RENTED CAR | | |
| 4. PARKING, TOLLS | 60.00 | |
| 5. TAXI, BUS FARES | | |
| 6. LODGING | 197.99 | |
| 7. TELEPHONE TOLLS, ETC. | 388.33 | |
| 8. MEALS FOR SELF | 19.96 | |
| 9. ENTERTAINING, MEALS FOR OTHERS | 182.14 | METHOD OF SETTLEMENT |
| 10. MISCELLANEOUS TIPS | | ☑ ISSUE CHECK    ☐ PAY IN CASH |
| 11. OTHER ITEMS, SUNDRY | 86.02 | ☐ RECEIPT ATTACHED    ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 1412.14 | SIGNED |
| LESS FUNDS ADVANCED | ~~86.03~~  866.03  ~~427.90~~ | |
| NET DUE EMPLOYEE (COMPANY) | 546.11 | APPROVED |

8)1210    3072    9107)    ~~2789~~ 735.69
871560    3072    9107)    202.10
889280    3072    9107)    20.95
891660    3072    9107)    6507

# HARTE-HANKS DIRECT MARKETING
## AMD
### EXPENSE REPORT

| NAME  Charles R. Dall'Acqua | | DATE PREPARED  3/10/02 |
|---|---|---|
| LOCATION | | DEPARTMENT |

| ☐ BUSINESS TRIP | ☐ CONVENTION | ☐ COMPANY SEMINAR | ☐ OTHER SEMINAR |
|---|---|---|---|

| TRIP DESTINATION | PERIOD COVERED  3/3 - 3/9 |
|---|---|

TRIP PURPOSE

REC'D MAR 1 9 2002

| TYPE OF EXPENSE | EXPENSES PAID OUT-OF-POCKET | REMARKS |
|---|---|---|
| 1.  MAJOR TRANSPORTATION | 5 85.50 | |
| 2.  PERSONAL CAR: _____ MILES@ _____ ¢ | | |
| 3.  RENTED CAR | | |
| 4.  PARKING, TOLLS | | |
| 5.  TAXI, BUS FARES | 104.30 | |
| 6.  LODGING | 240.19 | |
| 7.  TELEPHONE TOLLS, ETC. | 13.00 | |
| 8.  MEALS FOR SELF | 16.66 | |
| 9.  ENTERTAINING, MEALS FOR OTHERS | 177.40 150.70 | METHOD OF SETTLEMENT |
| 10.  MISCELLANEOUS TIPS | | ☑ ISSUE CHECK      ☐ PAY IN CASH |
| 11.  OTHER ITEMS, SUNDRY | | ☐ RECEIPT ATTACHED   ☐ ADJUST PERS. ACCT. |
| TOTAL OUT-OF-POCKET | 1137.05 1150.05 | SIGNED  Ch RJ |
| LESS FUNDS ADVANCED | 386.50 | |
| NET DUE EMPLOYEE (COMPANY) | 750.55 763.55 | APPROVED |

871710   30772   9077            942.89
                                  29
871500   30772   9077           $207.06 $

Complete reverse side for trip expense details and attach duplicate copy of all charge tickets.

102470                          (248.50)

103 470                         (12 5 5 0)

DATE: 9-13-02

To: Merrill Lynch, Pierce, Fenner & Smith Inc.

Lee Bollhorst

60 West St., Ste. 300

Annapolis, MD 21401

In connection with the proposed sale by me of 30,000 shares of common stock of Harte-Hanks (" the Company"), pursuant to Rule 144 of the Securities Act of 1933, I hereby represent to you that:

1. I have not made, and will not make, any payment in connection with the execution of the above order to any persons other than Merrill Lynch.

2. I have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with this transaction.

3. I have sold 30,000 shares of the Company within the preceding three (3) months and I have no sale orders open with any broker, and will not place any pending execution or cancellation of this order.

4. To the best of my knowledge, members of my immediate family and others with whom I am acting in concert or whose sales are required to be aggregated with sales by me pursuant to Rule 144 have sold ___0___ shares of the Company stock within the preceding three (3) months.

5. In the event that any or all of the securities I am selling are restricted securities as defined in paragraph (a)(3) of Rule 144, I warrant that I have beneficially owned these securities for a period of at least one (1) year as computed in accordance with paragraph (d) of Rule 144.

6. In the event that any or all of the securities I am selling are restricted securities as defined in paragraph (a)(3) of Rule 144, I am aware that payment of the proceeds of the sale is subject to the shares being transferred and delivered free of restriction into Merrill Lynch's name and that the transfer of the shares may be delayed if the certificate(s) bear a restrictive legend. I hereby indemnify Merrill Lynch for any loss it may incur as a result of any such delay.

7. Enclosed is an executed copy of Form 144, three copies of which were transmitted to the Securities and Exchange Commission and (where applicable) one copy of which has been sent to the NY Stock Exchange on _____. (I understand that no form need to be filed if the amount of securities to be sold during any three (3) month period does not exceed 500 shares and the aggregate sale price does not exceed $10,000.)

I am familiar with Rule 144 under the Securities Act of 1933, as amended, and agree that you may rely upon the above statements in executing the order referred to above.

Very truly yours,

_____
(Client Signature)

Charles R. Dall'Acqua

504 Forest Hill Dr.

Annapolis, MD 21403
(Client Name & Address)

CODE 1809 (Rev. 3-97)

**CHARLES R. DALLACQUA**   03-02                1265
410-431-7066
1534 BRIARCLIFF RD.
ARNOLD, MD  21012-2209                     Date _12/30/02_   7-163/520 MD
                                                              8122

Pay to the
Order of _Jasons Movinc_                    | $ 235.00

_Two Hundred and Thirty-Five 00/100_ ——— Dollars

**Bank of America.**

ACH R/T 052001633                          Bank of America Advantage®

For _____

⑆052001633⑆ 003936854725⑈ 1265 ⑆000002 3500⑈

**CHARLES R. DALL'ACQUA**   02-88             1411
1534 BRIARCLIFF LANE
ARNOLD, MD  21012                   DATE _11/8/01_   7-163/520 MD
                                                     2196

PAY TO THE
ORDER OF _American Express_                | $ 292.05

_Two Hundred and Ninety-Two and 05/100_ ——— DOLLARS

**Bank of America.**

ACH R/T 052001633                          Premier Banking

⑆052001633⑆ 00200 2969590⑈ 1411 ⑆000002 9205⑈

**CHARLES R. DALL'ACQUA**   02-88             1394
1534 BRIARCLIFF LANE
ARNOLD, MD  21012                   DATE _10/1/01_   7-163/520 MD
                                                     2196

PAY TO THE
ORDER OF _Angielette Petrucci_             | $ 300.00

_Three Hundred and 00/100_ ——— DOLLARS

**Bank of America.**

ACH R/T 052001633
_October 01_                               Premier Banking

⑆052001633⑆ 00200 2969590⑈ 1394 ⑆000003 0000⑈

**CHARLES R. DALL'ACQUA**  02-88
1534 BRIARCLIFF LANE
ARNOLD, MD  21012

1434

DATE  12/6/01

7-163/520 MD
2196

PAY TO THE
ORDER OF  American Express                    $ 2319.63

Two Thousand - Three hundred and Nineteen + 63/100 — DOLLARS

**Bank of America.**

ACH R/T 052001633

Premier Banking

:052001633: 00200 2969590 1434 0000231963

---

**CHARLES R. DALLACQUA**  03-02
410-431-7066
1534 BRIARCLIFF RD.
ARNOLD, MD  21012-2209

1267

Date  4/4/03

7-163/520 MD
8122

Pay to the
Order of  Brandon Dall'Acqua            $ 100.00

One Hundred + 00/100                    Dollars

**Bank of America.**

ACH R/T 052001633

Bank of America Advantage®

For

:052001633: 003936854725 1267 00000 10000

---

**CHARLES R. DALL'ACQUA**  02-88
1534 BRIARCLIFF LANE
ARNOLD, MD  21012

1459

DATE  12/18/54

7-163/520 MD
2196

PAY TO THE
ORDER OF  South River Yachts            $ 309.00

Three Hundred and Nine 00/100 — DOLLARS

**Bank of America.**

ACH R/T 052001633

Premier Banking

:052001633: 00200 2969590 1459 0000030900

We the sellers Charles Dall'Acqua and Mavie Dall'Acqua agree to split the proceeds of the sale of 1201 Scarlett Place as follows:

| | |
|---|---|
| Charles Dall'Acqua | 109,042.47 |
| Mavie Dall'Acqua | 106,566.48 |
| Total | 216,608.95 |

_(signature)_     7/24/03

_(signature)_     7/24/03

Witness: _(signature)_     7/24/03

Notary: _(signature)_
Comm Expires: 8/01/05

JANE C. ANDERSON
NOTARY PUBLIC
BALTIMORE COUNTY, MD

ORIGINATOR: Richard Hochhauser
DISTRIBUTION: Board of Directors                                    1/29/03
SUBJECT:    **SENIOR MANAGEMENT BONUS**        | HH EPS |

| EPS | % GROWTH | % ACHIEVEMENT | INCREMENTAL EPS |
|-----|----------|---------------|------------------|
| 0.97 | 1.0% | 10% | 0.01 |
| 0.99 | 3.1% | 20% | 0.03 |
| 1.01 | 5.2% | 30% | 0.05 |
| 1.02 | 6.3% | 40% | 0.06 |
| 1.03 | 7.3% | 70% | 0.07 |
| 1.05 | 9.4% | 85% | 0.09 |
| 1.06 | 10.4% | 100% | 0.10 |

| | 2002A | 2003B | GROWTH |
|---|---|---|---|
| ADJUSTMENTS | $ 0.96 | $ 1.05 | 9.38% |
| | - | - | |
| ADJUSTED | $ 0.96 | $ 1.05 | 9.38% |

**EPS IN 02 AND 03 REFLECT NEW ACCOUNTING FOR GOODWILL AND 3:2 SPLIT OF MAY 2002**

NOTE:  MUST BE EMPLOYED AT YEAR END TO QUALIFY

NO PRORATION BETWEEN LEVELS

Sign: _____

Date: _____

I/WE, THE UNDERSIGNED, DO HEREBY AGREE TO ACCEPT AND COMPLY WITH ALL CONDITIONS OF THE ABOVE REFERENCED GRADING PERMIT AND APPROVED GRADING AND SEDIMENT CONTROL PLAN.  I/WE FURTHER UNDERSTAND AND AGREE THAT THE ABOVE-NOTED PERMIT WILL BE LISTED IN MY/OUR NAME(S) AND THAT I/WE WILL BE TOTALLY AND COMPLETELY RESPONSIBLE FOR PERFORMANCE UNDER THE PERMIT AND APPROVED GRADING AND SEDIMENT CONTROL PLAN AS IF I/WE ARE/WERE THE ORIGINAL PERMITTEE(S).


_____              _____
SIGNATURE OF NEW PERMITTEE(S)                          DATE


_____
TITLE

STATE OF MARYLAND, COUNTY OF _Queen Anne_____, to wit:

I HEREBY CERTIFY, That on this _16_ day of _November_____, 20_2001_ before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared _Charles R. Dall'Acqua_ known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within Request for Transfer of Grading Permit and acknowledged that same was executed for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _Colleen L. Webb_
                          Notary Public

My commission expires: _1-1-05_


_____

TRANSFER APPROVED

BY: _____          _1-3-02_
     DIRECTOR, DEPARTMENT OF                          DATE
     INSPECTIONS AND PERMITS


-2-

Nov.12. 2001 10:32AM



## Anne Arundel County Association of REALTORS®



# ADDENDUM / AMENDMENT

ADDENDUM/ADDENDUM # _____ dated _____ __November 03, 2001__ _____ to CONTRACT OF SALE dated _____ between
Buyer(s): _____ for Property known as: _____ __785 SONNE DRIVE__ _____ and
Seller(s): _____ __ROBB TAYLOR__ _____ __CYNTHIA TAYLOR__ _____
_____ __ANNAPOLIS__ _____ , ____ __MD__ ____ , _____ __21401-__ _____

**ALL PARTIES AGREE:**
*Demolition*
1. CURRENT  BUILDING AND GRADING PERMITS WILL BE TRANSFERRED TO PURCHASERS AT SETTLEMENT *and will be updated and in affect.*

2. PURCHASERS AGREE TO REIMBURSE SELLERS AT SETTLEMENT $4598.00 FOR GRADING BOND.

3. PURCHASERS AGREE TO ALLOW SELLERS USE OF EXISTING GARAGE ON PROPERTY FOR  STORAGE UNTIL 02/28/02. PURCHASER SHALL HAVE NO LIABILITY FOR  ITEMS LEFT IN GARAGE.

4. PROPERTY AND BUILDINGS SOLD IN "AS-IS" CONDITION.

*5. Seller agrees to assign all demolition, grading and building permits to purchaser.*

All other terms and conditions of the Contract of Sale remain in full force and effect.

_____   11/09/01        _____   11/10/01
Buyer                      Date            Seller                     Date

                                                                      11/12/01
_____   _____       _____   _____
Buyer                      Date            Seller                     Date

This form is the property of Anne Arundel County Association of REALTORS®, Inc. and may be used only by Association members.

Page 1 of 1

AACAR Form S-3071.Revised 3/2001.ProForms Ver. 4.0.8.Cynthia Taylor.RE/MAX Ideal Properties,172 West Street

-6-

16.    This option will not be treated as an incentive stock option under the Internal Revenue Code of 1986, as amended.

17.    Participant accepts this option subject to all the provisions of the Plan including the provisions that authorize the Board to administer and interpret the Plan and that provide the Board's decisions, determinations and interpretations with respect to the Plan and options granted thereunder are final and conclusive on all persons affected thereby.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Participant: _____

NEW Address Only:

_____

_____

_____

Harte-Hanks, Inc.

By: _____

8

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Participant: _____

ADDRESS:

211 Aspynthview Lane
Arnold, Md 21012
_____


Harte-Hanks, Inc.

By: _____

-8-

16.     This option will not be treated as an incentive stock option under the Internal Revenue Code of 1986, as amended.

17.     Participant accepts this option subject to all the provisions of the Plan including the provisions that authorize the Board to administer and interpret the Plan and that provide the Board's decisions, determinations and interpretations with respect to the Plan and options granted thereunder are final and conclusive on all persons affected thereby.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Participant:        _____

NEW Address Only:
PO Box 854
Arnold, Md 21012

Harte-Hanks, Inc.

By: _____
        Larry Franklin

# EXHIBIT  D

# ELLEN MULCRONE SCHUETZNER

Forensic Document Examiner
PMB 161
6348 N. Milwaukee Avenue
Chicago, Illinois  60646-3728
(773) 774-5731

*American Academy of
Forensic Sciences
Fellow*

*American Board of Forensic
Document Examiners, Inc.
Diplomate*

July 21, 2004

Mr. Darren M. Mungerson
Jenner & Block
One IBM Plaza
Chicago, Illinois  60611-7603

Re:    **Charles Dall' Acqua Matter**

Dear Mr. Mungerson,

On July 13 and 16, 2004, the following described documents were
submitted to the examiner.

## QUESTIONED

Q-1:    Two (2) copies of a Harte Hanks Confidentiality/Non-Disclosure
Agreement, dated 1/25/02, bearing a questioned Charles Dall'Acqua
signature

## KNOWN

The following described documents bear signatures in the name of and purported
to be prepared by Charles Dall'Acqua.

K-1:    One copy of page 6 of an Agreement

K-2:    One copy of page 8 of an Agreement

K-3:    One copy of page 6 of an Agreement

K-4:    One copy of an Anne Arundel County Association of Realtors

Mungerson/Dall'Acqua
Page 2 of 3

Addendum/Amendment, dated 11/9/01

K-5:    One copy of page 2 of a Permit Agreement, dated 11/16/01

K-6:    Copies of eight (8) Harte-Hanks Direct Marketing AMD Expense
        Reports, dated 12/2/01 and 3/10/02

K-7:    One copy of a memo to Merrill Lynch, dated 9/13/02

K-8:    One copy of a memo Re: Senior Management Bonus, dated 1/29/03

K-9:    One copy of a hand printed agreement, dated 7/24/03

Six (6) original Charles R. Dall'Acqua checks, further described as follows:

|        | Check # | Date     |
|--------|---------|----------|
| K-10:  | 1394    | 10/1/01  |
| K-11:  | 1411    | 11/8/01  |
| K-12:  | 1434    | 12/6/01  |
| K-13:  | 1459    | 12/18/01 |
| K-14:  | 1265    | 12/30/02 |
| K-15:  | 1267    | 1/1/03   |

It was requested that examinations be conducted to determine the authenticity of the Charles Dall' Acqua on Exhibit Q-1. Visual and microscopic examinations of Exhibits Q-1 and K-1 through K-15 were conducted to answer this request. These examinations were conducted following the Guideline for the Examination of Handwritten Items.

The Charles Dall'Acqua signature in Exhibit Q-1 bears some pictorial similarities to the known signatures, however, the examiner also found significant differences between the questioned and known signatures. These differences include dissimilarities in the design of the letterforms, connecting strokes between letters, height proportions in the ascenders and descenders in the letters, and the

Mungerson/Dall'Acqua
Page 3 of 3

ending stroke. Due to the pictorial similarities and the significant differences found between the questioned and known signatures, the questioned signature may be an attempt to simulate or trace an authentic signature. Based on the differences, it is the opinion of the examiner that there is no evidence to indicate that the person who prepared the known Charles Dall'Acqua signatures on Exhibits K-1 through K-15 executed the questioned signature on Exhibit Q-1.

Exhibit Q-1 contains photocopies. The examiner was limited in this examination by the reproduction. The examiner requests that the original document that produced Exhibit Q-1 be submitted for further examinations. This opinion is rendered on the best evidence available to the examiner and is subject to review should the original evidence become available for examination.

A copy of the examiner's Curriculum Vitae is attached to this report. The examiner will retain the above described documents until further notice.

Respectfully submitted,

Ellen Mulcrone Schuetzner

Attachment