UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES R. DALL'ACQUA and )<br>PROTOCOL MARKETING GROUP, )<br>)<br>Defendants. )<br>) | Civil Action No.: 04-11548-DPW |

## DECLARATION OF WILLA J. GRAY

I, Willa J. Gray, state, under the penalties of perjury:

1.  I am over the age of 21. The statements in this supplemental declaration are based on my personal knowledge, unless otherwise indicated.

2.  I am a Vice-President of Human Resources at Harte-Hanks, Inc., based in its Jacksonville, Florida office. I have worked at Harte-Hanks continuously from November 26, 1973 to the present. I worked for Charles Dall'Acqua for many of my years at Harte-Hanks.

3.  Beginning in or about late 2001, Harte-Hanks management, Human Resources Department, and Legal Department undertook a review of company employment records and agreements, with an eye to ensuring that the records and agreements were consistent throughout the company and were in compliance with company policy. I believe various Harte-Hanks managers were discussing appropriate wording and substance of the agreements to be obtained, and identifying the employees who would be required to sign agreements.

4. On or about November 6, 2001, I sent an e-mail to Mr. Dall'Acqua concerning that review and those agreements. I attached drafts of two new Confidentiality/Non-Disclosure Agreements (one for permanent employees and one for temporary employees) and the new draft Non-Compete Agreement to that e-mail. Attached hereto as Exhibit A is a true and correct copy of the e-mail I sent to Mr. Dall'Acqua on November 6, 2001, complete with copies of the attachments to that e-mail.

5. Both before and after November 6, 2001, I had various conversations with Mr. Dall'Acqua concerning the "push" at Harte-Hanks to have employee sign one or another of these agreements. Mr. Dall'Acqua was not only aware of this project, he was, in his capacity as Senior Vice-President, involved in the implementation of it. Mr. Dall'Acqua was certainly aware of and had seen the Confidentiality/Non-Disclosure Agreement proposed for use and subsequently used in the 2001-2002 time-frame. In addition, Mr. Dall'Acqua indicated that it was appropriate for Harte-Hanks employees in his units to execute such agreements.

SIGNED UNDER THE PENALTIES OF PERJURY
THIS 9TH DAY OF AUGUST, 2004.

Willa J. Gray

422004.080404

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail and on _____

2