UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES R. DALL'ACQUA and )<br>PROTOCOL MARKETING GROUP, )<br>)<br>Defendants. )<br>_____) | Civil Action No.04-11548-DPW |

**EMERGENCY MOTION TO RE-OPEN THE EVIDENCE OR
FOR LEAVE TO SUBMIT SUPPLEMENTAL
DECLARATION AND STATEMENT OF REASONS**

Plaintiff, Harte-Hanks, Inc., respectfully moves the Court, on an emergency basis, to re-open the evidence to permit Harte-Hanks to present the opinion of a second document examiner as to the authenticity of Mr. Dall'Acqua's signature, or, in the alternative, for leave to submit a declaration by this examiner concerning the authenticity of Mr. Dall'Acqua's signature.

**Statement Of Reasons**

Harte-Hanks sues to enforce a written Confidentiality/Non-Disclosure Agreement between itself and defendant Dall'Acqua. Although the case is of recent vintage, it has come down to a single issue – whether Mr. Dall'Acqua's signature on the agreement is a forgery.

Harte-Hanks's motion for a preliminary injunction was scheduled for hearing last Tuesday, August 10, 2004. The preceding Friday, Harte-Hanks learned that Mr. Dall'Acqua had just convinced another employee – indeed, a star employee – to resign from Harte-Hanks and to

work for him at Protocol. In light of the ongoing solicitation (even while the motion was pending) and prior representations by Mr. Dall'Acqua that he has no intention of honoring the agreement, Harte-Hanks appeared on the 10th in urgent need of injunctive relief. It remains so.

On August 2, eight days before the hearing, Harte-Hanks retained a second handwriting examiner. It did so to bolster its case and because the undersigned had had difficulties reaching and communicating with Charles Shure.[1] The second examiner is Alan Robillard. A brief declaration by Mr. Robillard is submitted herewith. Attached to it is a copy of Mr. Robillard's curriculum vitae. His credentials are impeccable.

Mr. Robillard started work on the case more than two weeks after Mr. Shure had started and only about a week before the hearing. As a result, he formed relatively final opinions on the forgery issue only late last week; he formed his final opinions only this morning, after first seeing clean copies of certain documents.

At the beginning of the hearing on August 10, the Court indicated that based on First Circuit precedent under Dairy Queen v. Wood, 369 U.S. 469 (1962), the Court could not decide the motion for a preliminary injunction because it raises credibility issues that ultimately would be decided by a jury. The Court offered to decide the merits itself if the parties were to waive a jury. After conferring with their respective clients, counsel for each side waived a jury. Harte-Hanks did so in order to obtain a decision as soon as possible. The Court then asked counsel when they would be prepared to proceed and whether any discovery was necessary. Both sides

---

[1] As the Court must know, the undersigned were unaware of the Rhode Island case or of any other facts or circumstances that would render Mr. Shure unqualified. (He would not have been retained had the undersigned known the truth.) The difficulties noted above were attributed to other factors, including that he had indicated that his wife is ill, and were surprising because his credentials appeared to the undersigned to be acceptable.

indicated that they could proceed immediately without discovery.

The trial began immediately. Ms. Dernoga testified first, with her direct in the form of three declarations and her cross-examination and re-direct live. After Ms. Dernoga's testimony was completed, Mr. Hacker testified by the same procedure. On August 12, Ms. Gray and Mr. Shure testified for Harte-Hanks, and Mr. Dall'Acqua and Ms. Schuetzner testified for Defendants, all pursuant to the same procedure.

At the conclusion of the proceedings on August 12, the Court indicated that the jury waivers would be withdrawn and that the case would go to a jury. The Court set argument on the preliminary injunction motion for August 18. The Court advised counsel for Defendants that he should be prepared at that time to address motive and opportunity. The Court advised counsel for Harte-Hanks that Mr. Shure is not qualified (a decision that Harte-Hanks of course does not question), that Ms. Schuetzner is qualified, and that counsel for Harte-Hanks should be prepared to explain why the Court should not credit Ms. Schuetzner's testimony.

## Argument

As things stand, and principally because of the press of time and the unfortunate surprise with respect to Mr. Shure, the lay witnesses have been heard, but only one side of the expert story is before the Court. Although Harte-Hanks would urge the Court, for reasons that will be provided, to give little or no weight to the one side of the expert story that is before it, Harte-Hanks respectfully requests that the Court permit Harte-Hanks properly to present the other side, which has only just become available.

In specific, Harte-Hanks asks that the Court decide the merits, but re-open the evidence to permit Mr. Robillard to be heard. In other words, Harte-Hanks is prepared to stand by its jury

3

waiver and to have the Court decide the case, but not on the current record. It is within the Court's discretion to re-open the evidence, particularly since the record is not firmly closed; even were it closed, an exercise of the discretion to re-open would be appropriate under the circumstances presented. See, e.g., Rivera-Flores v. Puerto Rico Tel. Co., 64 F.3d 742, 746 (1st Cir. 1995) (listing criteria and conditions for re-opening evidence).

To address any possible objections or concern that Defendants would be prejudiced by the proposed approach, Harte-Hanks is prepared to make Mr. Robillard available for deposition, cross-examination, and/or the sort of joint expert session that the Court proposed on August 12.[2] The advantages of this approach include that it would conserve judicial and party resources and would lead to a just and speedy resolution of a case that calls for such an approach because it presents only one significant issue.

In the alternative, Harte-Hanks asks that the Court decide the motion, but permit Harte-Hanks to submit Mr. Robillard's opinion via declaration or affidavit. (Here again, if wanted, Mr. Robillard would be made available for deposition, cross-examination, and/or a joint session with Ms. Schuetzner.) The advantages of this approach include that it would enable the Court to rule based on all the facts.

---

[2]   Harte-Hanks also would have no objection to submitting to very expedited discovery limited to the forgery issue, or to producing witnesses again, or to producing other witnesses with knowledge as to the issue. Harte-Hanks also is prepared to cover the cost of any re-appearance by Ms. Schuetzner.

4

WHEREFORE, Harte-Hanks respectfully requests that the Court (a) keep the case, but re-open the record, on such terms as the Court deems fair, to permit Harte-Hanks to present the opinion of Mr. Robillard, or (b) decide the motion for a preliminary injunction, but permit Harte-Hanks, on such terms as the Court deems fair, to submit Mr. Robillard's opinion via declaration or affidavit.

Dated: August 16, 2004                                HARTE-HANKS, INC.,

By its attorneys,

_____
David B. Chaffin
BBO No. 549245
Kathleen A. Kelley
BBO No. 562342
HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

### CERTIFICATION OF CONSULTATION

Pursuant to Rule 7.1(A) of the Local Rules of this Court, I certify that I have conferred with opposing counsel in an attempt to narrow or resolve the issue presented by this motion but have been unable to do so.

_____
Kathleen A. Kelley

### CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was served by hand on counsel of record for defendants this 16th day of August 2004.

_____
Kathleen A. Kelley

5