UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HARTE-HANKS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES R. DALL'ACQUA and )<br>PROTOCOL MARKETING GROUP, )<br>)<br>Defendants. )<br>) | Civil Action No.04-11548-DPW |

**MEMORANDUM REGARDING WEIGHT TO BE
GIVEN TO OPINION OF HANDWRITING ANALYST**

Plaintiff, Harte-Hanks, Inc. ("Harte-Hanks"), submits this memorandum as a partial response to the Court's inquiry concerning the weight that should be given to the testimony of Defendants' handwriting analyst, Ellen Mulcrone Schuetzner. The memorandum addresses the general limitations on her testimony. Additional reasons for the Court to give her testimony little, if any, weight will be presented during argument.

**A.    THE DISCIPLINE IS NOT SCIENTIFIC**

While opinions of handwriting analysts are admissible, see, e.g., United States v. Prime, 363 F.3d 1028, 1034 (9th Cir. 2004) (six circuits, including the First Circuit, have ruled handwriting identification admissible under Daubert); United States v. Mooney, 315 F.3d 54, 63 (1st Cir. 2002) (trial court may in its discretion admit expert handwriting analysis deemed to satisfy Daubert/Kumho standard), the field of handwriting analysis has long been recognized by the courts and commentators to be "unscientific" in nature. See, e.g., United States v. Jones, 107

F.3d 1147, 1157-58 (6th Cir.) (handwriting analysis is based on subjective judgments and "academicians and forensic document examiners alike have recognized the lack of empirical evidence in the field of handwriting analysis"), cert. denied, 521 U.S. 1127 (1997); 2 Paul C. Giannelli & Edward J. Imwinkelried, Scientific Evidence, §§ 21-2(B) at 152 (2d ed. 1993) (handwriting examination lacks "data as to the frequency with which stylistic details recur," and is therefore unreliable).[1]

The scientific shortcomings of handwriting analysis are detailed in two seminal articles, D. M. Risinger, M. P. Denbeaux, & M. J. Saks, Exorcism of Ignorance as a Proxy for Rational Knowledge: The Lessons of Handwriting Identification "Expertise", 137 U. Pa. L. Rev. 731 (1989), and D. M. Risinger & M. J. Saks, Science and Nonscience in the Courts: Daubert Meets Handwriting Identification Expertise, 82 Iowa L. R. 21 (1996) (hereinafter Science and Nonscience). (Copies attached.) In these articles, the authors convincingly challenge virtually every premise of the field. Courts across the country have heard and responded. For example, it has been observed and held that:

1.   There is no empirical support for the two basic premises of the discipline, viz, that (1) no two people write the same way, and (2) no one person writes the same way over time.

---

[1] Even the proponents of handwriting examination recognize that the discipline lacks empirical or statistical support. See, e.g., M. Kam, et al., Proficiency of Professional Document Examiners in Writer Identification, 39 Journal of Forensic Sci. 5, 7 (1994) (there is a "lamentable lack of empirical evidence" about forensic document analysis); R.A. Huber & A.M. Headrick, Let's Do It By Numbers, 46 Forensic Sci. Int'l 209, 213 (1990) ("Until we [assign numbers in our analysis of handwriting] we must accept the fact [that] this area of our work does not meet the criteria for science."); B. Found & D. Rogers, Contemporary Issues in Forensic Handwriting Examination: A Discussion of Key Issues in the Wake of the Starzecpyzel Decision, 8 Journal of Forensic Document Examination 1, 26 (1995) (document examination "practical" vs. "scientific" discipline); R.A. Huber & A.M. Headrick, Handwriting Identification: Facts and Fundamentals at 414-15 (1999) (hereinafter Handwriting Identification) ("Writing identification will not become a science by decree. . . . It is a quality that must be earned.") ("To eradicate the risk or to decrease the frequency of error, and to establish levels of certainty based on probabilities, will be a task difficult to achieve.").

See, e.g., United States v. Santillan, 1999 WL 1201765 *4 (N.D. Cal. 1999) (quoting United States v. Hines, 55 F. Supp. 2d 62, 69 (D. Mass. 1999)); United States v. Saelee, 162 F. Supp. 2d 1097, 1103 (D. Ala. 2001); United States v. Brewer, 2002 WL 596365, * 7 (N.D. Ill. 2002); United States v. Lewis, 220 F. Supp. 2d 548, 554 (S.D. W.Va. 2002); Science and Nonscience, 82 Iowa L.R. at 39-40.

2. The discipline lacks objective standards for the identification of authors of handwriting samples. There is no standard, for example, for differentiating a "similarity" from a "dissimilarity." See, e.g., Santillan, 1999 WL 1201765 at *4-5; Hines, 55 F. Supp. 2d at 69. There is no standard for determining when an apparent dissimilarity between two writings (one of questioned and one of known authorship) is significant, i.e., for determining when the dissimilarity constitutes a "difference" (possibly indicating two separate writers) instead of a "natural variation" of one writer. See, e.g., Saelee, 162 F. Supp. 2d at 1104; Handwriting Identification at 27, 47-51, 132-34, 161-62, 358-59 (judgments are flexible and subjective).

3. The discipline lacks objective standards to define the quality or quantity of any findings. For example, there are no standards for determining how many "differences" between two signatures would indicate a simulation, or for how many known signatures one should have for comparison to a questioned signature. See, e.g., Lewis, 220 F. Supp. 2d at 554; Handwriting Identification at 161-63.

4. The discipline lacks objective and probing peer review of its practitioners, methods, and results. See, e.g., United States v. Starzecpyzel, 880 F. Supp. 1027, 1038 (S.D. N.Y. 1995); Lewis, 220 F. Supp. 2d at 553-54; Hines, 55 F. Supp. 2d at 68-69.

5. The certification requirements imposed on practitioners "leave much to be

3

desired," and there is no truly impartial supervision of the discipline. The testing is not objective and fails to establish a true error rate. See, e.g., Science and Nonscience, 82 Iowa L.R. at 43-63 (review of proficiency tests).

      6.     The discipline does not assist the fact-finder, because a lay person is equally capable of viewing and categorizing perceived similarities and dissimilarities between and among handwriting samples. See, e.g., Hines, 55 F. Supp. 2d at 68-69; Brewer, 2002 WL 596365 at *7 n.7; Santillan, 1999 WL at *5; Saelee, 162 F. Supp. 2d at 1102-05; United States v. Fujii, 152 F. Supp. 2d 939, 940-41 (N.D. Ill. 2000).

Based in large part on these limitations, and following the Supreme Court's teachings on the admissibility of scientific and other technical testimony, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), a number of courts have excluded or limited the testimony of handwriting examiners. See, e.g., Fujii, 152 F. Supp. 2d at 940-41 (handwriting expert's analysis of printing inadmissible); Hines, 55 F. Supp. 2d at 68-69 (handwriting expert allowed to testify as to similarities and dissimilarities but not allowed to give ultimate conclusion as to authorship); Saelee, 162 F. Supp. 2d at 1106 (handwriting expert's proffered testimony excluded); Brewer, 2002 U.S. Dist. Lexis at *25 (handwriting expert's proffered testimony excluded); United States v. Rutherford, 104 F. Supp. 2d 1190, 1194 (D. Neb. 2000) (handwriting expert's proffered testimony excluded); United States v. Van Wyk, 83 F. Supp. 2d 515, 524 (D.N.J. 2000) (handwriting expert allowed to testify as to similarities but precluded from rendering opinion as to authenticity), aff'd, 262 F.3d 405 (3d Cir.), cert. denied, 534 U.S. 826 (2001); Wolf v. Ramsey, 253 F. Supp. 2d 1323, 1362-63 (N.D. Ga. 2003) (handwriting expert allowed to testify as to

similarities and precluded from rendering opinion as to authenticity); Santillan, 1999 WL 1201765 at *1103-1104 (handwriting expert allowed to testify as to similarities and precluded from rendering opinion as to authenticity); Lewis, 220 F. Supp. 2d at 554 (handwriting expert testimony excluded). See also L.C. Hartfield, Daubert/Kumho Challenges to Handwriting Analysis, 26 NOV Champion 24 (summary of deficiencies leading to exclusion/limitation of experts' testimony). (Copy attached).

**B.     MS. SCHUETZNER'S APPROACH IS UNRELIABLE**

Although Ms. Schuetzner considers the "Guidelines for Forensic Document Examination" (the "Guidelines") and Handwriting Examination to be authoritative, she strayed from or ignored their teachings. For example:

1. Although required by the Guidelines, Ms. Schuetzner apparently did not separate "subsets" of writings/samples for comparison purposes. Instead, she lumped together different types of documents (checks, forms, and contracts), different types of signatures (abbreviated and full), and signatures made by different types of instruments (ballpoint and fluid ink) for comparison purposes. See, e.g., Guidelines at 7.6.1 and 7.6.2.

2. Ms. Schuetzner reached and maintains her position even though (1) there are numerous dissimilarities among the known signatures, such that, based on her approach, one could conclude that known signatures are forgeries, and (2) the alleged "dissimilarities" in the questioned signature appear in other examples of Mr. Dall'Acqua's signature. Handwriting Identification at 132-34.

3. Ms. Schuetzner opines based on a limited number of samples, and based on few, insignificant alleged differences, even though Mr. Dall'Acqua's handwriting is highly variable.

Her opinion is undercut by <u>Handwriting Identification</u>:

> In writing examinations, variation is an expected attribute of the standards, for allowance must be made in the study of any apparent disparity between the standards and the unknown or questioned writing. The level of such disparity and **the range of the writer's normal variation may be the principal factors on which the determination of authorship may turn**.

<u>Id</u>. at 134.

4.  Ms. Schuetzner made no attempt to control for the many factors that can influence writing. <u>Id</u>. at 198-243.

## Conclusion

For the foregoing reasons and those to be presented, Ms. Schuetzner's testimony should be given little or no weight.

Dated: August 18, 2004

HARTE-HANKS, INC.,

By its attorneys,

_____
David B. Chaffin
BBO No. 549245
Kathleen A. Kelley
BBO No. 562342
HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

### CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was served by hand on counsel of record for defendants this 18th day of August 2004.

_____
Kathleen A. Kelley