UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HARTE-HANKS, INC.

                         Plaintiff;

– *against* –

CHARLES R. DALL'ACQUA and
PROTOCOL MARKETING GROUP

                     Defendants.

04 CIV. 11548 (DPW)

AFFIDAVIT OF
PETER V. TYTELL

STATE OF NEW YORK   )
                               ) ss.:
COUNTY OF NEW YORK  )

      PETER V. TYTELL, being duly sworn, deposes and says:

1. I am, and for over 30 years have worked as, a forensic document examiner. I submit this affidavit to set forth certain facts regarding documents marked as exhibits in the above captioned matter.

2. I received documents marked as Plaintiff's Exhibits P-1 through P-12 and Defendant's Exhibits D-1 through D-3 (the "Exhibits") from Ms. Ellen M. Schuetzner on September 21, 2004, via UPS. I returned all the Exhibits to Ms. Ellen M. Schuetzner on October 16, 2004, via FedEx (for delivery October 18, 2004).

3. When received, the Exhibits were together in a red rope expandable file pocket. While in my custody the Exhibits were stored in that file pocket and were returned in that file pocket.

4. When received, Plaintiff's Exhibit P-1 (the Questioned Document) was in a separate plain manila file folder in the file pocket. The two pages of Questioned Document were attached with a staple at the top, approximately 1½ inches from the left edge of

the paper. There were numerous empty staple holes in the upper left corner of each page; apparently they had been stapled, unstapled, and restapled a number of times prior to submission. The Questioned Document was unstapled for non-destructive instrumental indentation examination and was not restapled; the removed staple was retained. While in my custody the two pages of the Questioned Document were stored in that file folder, separated by a blank sheet of paper.

5. Plaintiff's Exhibit P-10 includes items separately marked as Plaintiff's Exhibits P-10-A through P-10-T. When received these items were held together with a small metal binder clip. The binder clip was removed and the items transferred to a separate plain manila file folder. While in my custody Plaintiff's Exhibits P-10-A through P-10-T were stored in that file folder and were returned in it.

6. From the time they were received until the time they were sent back, all the Exhibits were in my custody and control. Each item was handled in keeping with the customary practices and standards of forensic document examiners.[1]

7. The Exhibits were not folded, marked, or exposed to direct sunlight. Exposure to strong artificial illumination or ultraviolet was limited to the time required by the procedures undertaken. Humidification for instrumental indentation examination was a minimal one minute.

8. The documents were not placed in plastic sheet protectors because of current anecdotal evidence indicating that storing documents in such protectors or sleeves may adversely affect subsequent instrumental indentation examinations.

---

[1] Although aimed at the attorney and investigator, much sound advice in this area can be found in Chapter 16 "Care, Handling, and Preservation of Documents" in Ordway Hilton, *Scientific Esamination of Questioned Documents*, rev. ed, New York: Elsevier Science Publishing, 1982, Boca Raton, FL: CRC Press, 1993.

9. Peer review is a normal part of forensic document examination and of virtually all other forms of forensic examination. I sought peer review, with the informed consent of counsel for the Defendants. For the purposes of peer review, I took the Exhibits to Colorado, again with the informed consent of counsel for the Defendants.

10. I traveled to Colorado on Friday 8 October 2004, and returned to New York on Sunday 10 October 2004, by commercial air transportation (United Airlines). The Exhibits were kept in the folders and file pocket described above, and the entire file pocket placed in a red rope expanding wallet with a top flap and elastic cord closure. For security purposes and to maintain continuity of custody and control, I did not transport the Exhibits in checked baggage; I hand carried the Exhibits with me on the plane.

11. On Saturday 9 October 2004, I removed the Exhibits from the red rope wallet on three occasions, as follows:

    a) For examination by a forensic document examiner in an empty meeting room; I was the only other person present.

    b) For examination by a forensic document examiner in the hotel suite of a third forensic document examiner. The occupant of the suite and I were the only other people present.

    c) For examination by a forensic document examiner in my hotel room; I was the only other person present.

12. Each of the forensic document examiners mentioned above has many years of experience in the field and each has a background in law enforcement. Each of them is knowledgeable and experienced in the care and handling of documents.

13. On each of the occasions mentioned above I was present for the entire time the Exhibits were out of the red rope wallet and the Exhibits were at all times in my custody and control.

14. During the entire trip the Exhibits were at all times in my custody and control.

*Peter V. Tytell*

Sworn to before me this 22nd day of October, 2004.

*Notary Public*

YONATAN SUSSMAN
Notary Public, State of New York
No. 01SU6113697
Qualified in Queens County
Commission Expires Aug. 2, 2008