UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04 CV 11548 DPW |
| ) | |
| CHARLES R. DALL'ACQUA and ) | |
| PROTOCOL MARKETING GROUP, ) | |
| ) | |
| Defendants. ) | |

**OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY DISCOVERY PENDING RESOLUTION OF PENDING RULE 12(h)(3) MOTION TO DISMISS**

Plaintiff, Harte-Hanks, Inc. ("Harte-Hanks"), submits this Opposition to Defendants' Emergency Motion to Stay Discovery Pending Resolution of Pending Rule 12(h)(3) Motion to Dismiss (the "Emergency Motion").

**Statement Of Relevant Facts And Procedural History**[1]

**Background**

Harte-Hanks filed its Complaint and Demand for Trial by Jury (the "Complaint") on July 12, 2004. The Complaint contains four counts. The first two, which are asserted against Mr. Dall'Acqua alone, are for breach of the non-solicitation provision of Mr. Dall'Acqua's January 25, 2002 Confidentiality/Non-Disclosure Agreement (the "Agreement") and for a preliminary

---

[1] This Statement of Relevant Facts is based on and supported by items on file with and/or entered by the Court (referenced by docket number, where applicable), and the Declaration of Kathleen A. Kelley ("Kelley Dec."), which is attached hereto as Exhibit 1.

injunction prohibiting further breaches of the provision.  **These counts are the centerpiece of this case.**  The third and fourth counts, which are asserted against Mr. Dall'Acqua and Protocol, are for intentional interference with John Martus's non-competition agreement and for a preliminary injunction prohibiting interference with other such agreements with other Harte-Hanks employees.  (Complaint, Docket Number 1, at 7-9.)

On August 2, defendants filed their answer to the Complaint.  They admitted the jurisdictional allegations, and many of the substantive factual allegations, of the Complaint.  (Answer, Docket Number 11, at 1-4.)  They denied, however, that Mr. Dall'Acqua had signed the Agreement.  Indeed, as the Court is well aware, Mr. Dall'Acqua claims that his signature was forged.

On August 10, 12, and 18, 2004, the Court conducted an evidentiary hearing on Harte-Hanks's motion for a preliminary injunction.  Given defendants' admissions and position, only one substantial issue was presented – whether Mr. Dall'Acqua's signature on the Agreement is authentic.[2]  The Court ruled on the motion from the bench on August 18, 2004.  The Court found, on a provisional basis, that Mr. Dall'Aqua had signed the agreement.  Based on this finding and extensive findings with respect to the other elements of the standard for injunctive relief, the Court prohibited Mr. Dall'Acqua and Protocol from soliciting any other Harte-Hanks employees until March 5, 2006, or until further order of the Court.  The ruling from the bench was memorialized in an Electronic Order, entered August 18, as well as a Preliminary Injunction

---

[2] Defendants also argued that the Agreement was not supported by adequate consideration.  The Court quickly dispensed with this argument.

2

Order, entered August 25. (Transcript and Orders, Docket Nos. 24-26, 29-30, and 33; Preliminary Injunction Order, Docket No. 34.) Defendants did not appeal the ruling.

**The Motion To Dismiss**

After 5:00 p.m. on Friday, October 22, 2004, defendants filed a motion to dismiss this action, arguing that Harte-Hanks and Protocol Services, Inc. are not of diverse citizenship and that diversity jurisdiction therefore does not exist. The motion was filed:

(1)  three and one-half months after this action was filed;

(2)  two and one-half months after defendants admitted the jurisdictional allegations of the Complaint;

(3)  over two months after the preliminary injunction was issued at the conclusion of the extended evidentiary hearing;

(4)  nearly two months after written discovery requests were served on defendants;

(5)  one month after the parties had obtained a 30-day extension of the aggressive pre-trial discovery schedule;

(6)  less than one month after the Court instructed the parties that there would be no further extensions to the pre-trial schedule; and

(7)  ten or fewer days before the due date on defendants' responses to Harte-Hanks's written discovery requests.

The motion to dismiss was not filed on an emergency basis, nor does it contain any reference to a stay of discovery. (Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction, Docket No. 48.)

**Subsequent Conversations**

On October 26, 2004, Kathleen Kelley, co-counsel for Harte-Hanks, spoke with Angela Lackard, co-counsel for defendants. Ms. Kelley told Ms. Lackard that Harte-Hanks was planning

to file an opposition to the motion to dismiss and that the opposition would be filed within the time prescribed by the Local Rules. Ms. Lackard indicated that defendants believed discovery was or should be stayed pending the resolution of the motion to dismiss.[3] Ms. Kelley responded that discovery had not been stayed, that no one had requested that it be stayed, that the Court had told the parties that there would be no further extensions, and that discovery responses were due on November 3, 2004. With respect to Ms. Kelley's assertion that discovery had not been stayed, Ms. Lackard responded with words to the effect of, "unless federal case law says differently," and indicated that she likely would be instructed to research the issue. (Kelley Dec. at ¶¶ 2-6.)

**The Instant Motion**

At 4:37 on Friday, October 29, 2004, defendants filed the instant motion. Defendants argue, in essence, that previously-ordered discovery should be stayed solely because they have filed a motion to dismiss. Defendants do not explain why the motion is brought on an emergency basis. (Emergency Motion, Docket No. 49.)[4]

---

[3] Ms. Lackard's position in this regard was somewhat unclear: She suggested that Harte-Hanks should disclose the substance of its opposition to the motion to dismiss, so that the parties could "stop stalling." Ms. Kelley indicated that Harte-Hanks was not "stalling," but rather was working to complete its discovery responses, and that she hoped defendants were doing the same. (Kelley Dec. at ¶¶ 7-8.)

[4] Defendants have been playing fast and loose. The motion to dismiss and the motion to stay were filed during an agreed-upon 30-day standstill (and while, as defendants' counsel knew, Harte-Hanks's lead counsel was on paternity leave). The instant motion is styled an emergency, but no explanation for the styling is provided; but for defendants' apparent unwillingness to provide the information Harte-Hanks has sought in discovery, the motion, in contrast to Harte-Hanks's motion with respect to the original exhibits, could have waited. **Further, defendants' responses to Harte-Hanks's monitoring interrogatories (a short set of interrogatories designed to monitor compliance with the Court's injunction) were due on November 1, 2004, but apparently were not served.** Defendants ignore that the mere filing of a motion to stay does not relieve a party of its obligation to respond. See, e.g., Goodwin v. City of Boston, 118 F.R.D. 297, 298 (D. Mass. 1988) ("The filing of a motion to quash or a motion for protective order does not automatically operate to stay a deposition or other discovery.").

## Argument

## THE CASE SHOULD REMAIN ON TRACK

**A.    Defendants Misstate The Law**

All of the authority on which defendants rely confirms that the conduct of discovery in any action is left to the sound discretion of the district court. See, e.g., 8 C. Wright & A. Miller, Federal Practice & Procedure, § 2009 (court may (but need not), in its discretion and in light of all the relevant facts, postpone discovery pending decision of dispositive motion); Wyatt v. Kaplan, 686 F.2d 276, 284 (5th Cir. 1982) ("The district court . . . has broad discretion in all discovery matters.") (citations omitted); Coastal States Gas Corp. v. Department of Energy, 84 F.R.D. 278, 282 (D. Del. 1979) (scheduling of discovery "is within the sound discretion of the Court"). There is simply no support for the virtually per se prohibition on discovery that is urged by defendants. (See Emergency Motion at 2) ("discovery . . . should not be permitted" in similar situation).)[5]

---

[5]    Moreover, defendants affirmatively misrepresent the holding in Wyatt. Defendants quote two sentences purportedly from Wyatt: The first – that "[a] stay of discovery pending the determination of [a] Motion to Dismiss 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources'" – is not in Wyatt, but rather is found in Coastal States Gas Corp. (a case where the discovery was not stayed), and relates to the initiation of discovery, not to the completion of previously-ordered and due discovery.  The second quotation – "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted" – appears in Wyatt, but it does not mean what defendants would have the Court believe it means.  The Wyatt court considered a request for discovery as to jurisdictional facts after a challenge to personal jurisdiction: The plaintiff sought a deposition to show additional (alleged) contacts with Texas sufficient to establish personal jurisdiction over the defendant.  The court ruled that the plaintiff would need to show that some aspect of the alleged tort had occurred in Texas, and that, even if the plaintiff could show every fact he was attempting to establish via deposition, personal jurisdiction would still be lacking.  Wyatt, 686 F.2d at 284-85. While the quote may enhance the defendants' "sound bite" method of argument, closer scrutiny reveals that the case has nothing to do with the issue at hand.

5

**B.     A Stay Is Not Warranted**

**First**, the premise of the Emergency Motion – that the case will be dismissed – is incorrect. As is clear from the lead case cited by defendants in support of their motion to dismiss, the recently-revealed common citizenship of Harte-Hanks and Protocol does <u>not</u> require dismissal of this action. <u>Grupo Dataflux v. Atlas Global, L.P.</u>, 124 S. Ct. 1920, 1925 (2004) ("The question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether there are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained, and the suit dismissed as to them.") (quoting <u>Horn v. Lockhart</u>, 17 Wall. 570, 579, 21 L. Ed. 657 (1873)); Fed. R. Civ. P. 21 (court may cure defect in subject matter jurisdiction based on diversity of citizenship by the dismissal of dispensable non-diverse party). Where, as here, the non-diverse party is not indispensable, the party should be dismissed, and the action should continue as between the diverse parties. <u>See</u>, <u>e.g.</u>, <u>Grupo Dataflux</u>, 124 S. Ct. at 1925.

**Second**, even assuming <u>arguendo</u> that defendants' argument has some merit and there is a risk that the case will be dismissed, no harm will befall defendants. Harte-Hanks has every intention of pursuing this matter, be it as is, or solely against Mr. Dall'Acqua in this Court, and/or against Dall'Acqua and/or Protocol in state court. Sooner or later, defendants will have to provide the information they are seeking permission to withhold. Sooner is in keeping with the Court's pre-trial order and the parties' commitments. Sooner permits the accelerated handling of this matter that the interests of justice and judicial and party economy require.

6

## Conclusion

For the foregoing reasons, Harte-Hanks respectfully requests that the Emergency Motion be denied.

Dated: November 3, 2004                          HARTE-HANKS, INC.,

By its attorneys,


s/David B. Chaffin
David B. Chaffin
BBO No. 549245
Kathleen A. Kelley
BBO No. 562342
HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

422003.102904

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARTE-HANKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. NO. 04-11548-DPW |
| v. | ) | |
| | ) | |
| CHARLES R. DALL'ACQUA and | ) | |
| PROTOCOL MARKETING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF KATHLEEN A. KELLEY

I, Kathleen A. Kelley, under the penalties of perjury, state:

1. I am over the age of 21. I reside in Massachusetts. I am co-counsel for Harte-Hanks, Inc. ("Harte-Hanks") in the above-referenced matter. The statements made in this declaration are based on my personal knowledge, unless otherwise indicated.

2. I spoke on the telephone with Angela Lackard, counsel for defendants, on or about October 26, 2004 regarding the provision of certain original checks for review by Harte-Hanks's expert(s). During that conversation, Ms. Lackard asked me about Harte-Hanks's position with respect to the defendants' motion to dismiss.

3. I informed Ms. Lackard that Harte-Hanks was planning and preparing to file an opposition to the motion to dismiss, and such opposition would be filed within the time

allowed by the rules. When Ms. Lackard pressed me for more information on Harte-Hanks's opposition, I stated that she would know what that position was "in the fullness of time," meaning when the opposition was filed.

4. Ms. Lackard indicated that the defendants believed discovery was/should be stayed pending the resolution of the motion to dismiss.

5. I responded that discovery was not stayed, no one had requested that it be stayed, it would not be stayed unless and until Judge Woodlock said so, Judge Woodlock had already told the parties that there would be no further extensions, and discovery responses were due on November 3, 2004, as scheduled.

6. Ms. Lackard responded with words to the effect "unless federal case law says differently," and indicated that she would likely be instructed to review such case law.

7. Ms. Lackard suggested that Harte-Hanks should disclose the substance of its opposition to the motion to dismiss, so that the parties could "stop stalling."

8. I indicated that Harte-Hanks was not "stalling," but rather was working to complete its discovery responses, and I hoped defendants were doing the same.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS ___ DAY OF NOVEMBER, 2004.

Kathleen A. Kelley

422004.110104

2