UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES R. DALL'ACQUA and )<br>PROTOCOL MARKETING GROUP, )<br>)<br>Defendants. )<br>) | Civil Action No. 04 CV 11548 DPW |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff, Harte-Hanks, Inc. ("Harte-Hanks"), hereby opposes Defendants' Motion to

Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction (the "Motion to Dismiss").

**Memorandum Of Reasons**

**I. Facts And Procedural History[1]**

**Background**

Harte-Hanks filed its Complaint and Demand for Trial by Jury (the "Complaint") on July

12, 2004. The Complaint contains four counts. The first two, which are asserted against Mr.

Dall'Acqua alone, are for breach of the non-solicitation provision of Mr. Dall'Acqua's January

25, 2002 Confidentiality/Non-Disclosure Agreement (the "Agreement") and for a preliminary

injunction prohibiting further breaches of the provision. The third and fourth counts, which are

---

[1] This Statement of Relevant Facts and Procedural History is based on and supported by items filed with or entered by the Court (referenced by Docket Number, where applicable).

asserted against Mr. Dall'Acqua and Protocol Market Group ("Protocol"), are for intentional interference with the non-competition agreement of John Martus, a former Harte-Hanks employee, and for a preliminary injunction prohibiting interference with other such agreements with other Harte-Hanks employees. (Complaint, Docket Number 1, at 7-9.)

On August 2, defendants filed their answer to the Complaint. They admitted the jurisdictional allegations, and many of the substantive factual allegations, of the Complaint. (Answer, Docket Number 11, at 1-4.) They denied, however, that Mr. Dall'Acqua had signed the Agreement. As the Court is aware, Mr. Dall'Acqua claims that his signature was forged.

On August 10, 12, and 18, the Court conducted an evidentiary hearing on Harte-Hanks's motion for a preliminary injunction, which sought an injunction prohibiting further breaches of the non-solicitation provision. Given defendants' admissions and position, only one substantial issue was presented – whether Mr. Dall'Acqua's signature on the Agreement is genuine. The Court ruled on the motion from the bench on August 18, 2004. The Court found, on a provisional basis, that Mr. Dall'Acqua had signed the Agreement. Based on this finding and extensive findings with respect to the other elements of the test for injunctive relief, the Court prohibited Mr. Dall'Acqua and Protocol from soliciting any other Harte-Hanks employees until March 5, 2006, or until further order of the Court. The ruling from the bench was memorialized in an Electronic Order, entered August 18, as well as a Preliminary Injunction Order, entered August 25. (Transcript and Orders, Docket Nos. 24-26, 29-30, and 33; Preliminary Injunction Order, Docket No. 34.) Defendants did not appeal the ruling.

**The Motion To Dismiss**

After 4:00 p.m. on Monday, October 25, 2004, defendants filed a motion to dismiss the complaint, arguing that Harte-Hanks and Protocol Services, Inc., are not of diverse citizenship and that diversity jurisdiction therefore does not exist. The motion was filed:

(1) three and one-half months after this action was filed;

(2) two and one-half months after defendants admitted the jurisdictional allegations of the Complaint;

(3) over two months after the preliminary injunction was issued at the conclusion of the extended evidentiary hearing;

(4) nearly two months after written discovery requests were served on defendants;

(5) one month after the parties had obtained a 30-day extension of the aggressive pre-trial discovery schedule; and

(6) less than one month after the Court instructed the parties that there would be no further extensions to the pre-trial schedule.

(Motion to Dismiss, Docket No. 48.)

## II. Argument

### DISMISSAL IS NOT REQUIRED

A.  **The Legal Framework**

It would appear that the entity of which Mr. Dall'Acqua is the Chief Executive Officer is Protocol Services, Inc., not the named defendant, Protocol Marketing Group,[2] and that the former

---

[2] Before filing the complaint, Harte-Hanks's counsel attempted to determine the legal name and citizenship of the entity for which Mr. Dall'Acqua works. The Protocol website (which is extensive) was examined. The website contained no reference to Protocol Services, Inc. Only the entity that Harte-Hanks named is mentioned on the website. Inquiries with the Illinois Secretary of State's office also were unproductive. Thus, Harte-Hanks named the entity that is identified on the website.

is a citizen of Delaware, as is Harte-Hanks. This common citizenship does not, however, require dismissal of the action. Defendants' analysis is incorrect. They ignore that:

> "The question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained, and the suit dismissed as to them."

Grupo Dataflux v. Atlas Global, L.P., 124 S. Ct. 1920, 1925 (2004) (quoting Horn v. Lockhart, 17 Wall. 570, 579, 21 L. Ed. 657 (1873)). See also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 837 (1989) (appeals court may dismiss non-diverse party to avoid forcing parties to "jump[] through . . . judicial hoops merely for the sake of hypertechnical jurisdictional purity.").

The authority to dismiss a party in order to preserve jurisdiction arises under, and is defined by, Rule 21 of the Federal Rules of Civil Procedure, which provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21. "Misjoinder" under Rule 21 includes "situations in which joinder of parties produces defects in jurisdiction or venue." Fed. R. Civ. P. 21 (Author's Commentary, "Applications"); see also Author's Commentary at "Preserving Jurisdiction" (under rule court may properly "dismiss[] a nondiverse party in order to obtain diversity jurisdiction over the remaining parties").

In exercising Rule 21 authority, however, Rule 19 must be considered. "A district court's authority to dismiss a non-diverse party derives from Rule 21; however, the factors which must be considered in determining whether a non-diverse party is indispensable are set forth in Fed. R.

4

Civ. P. 19(b)." H. D. Corp. of Puerto Rico v. Ford Motor Company, 791 F.2d 987, 991 (1st Cir. 1986). "Rule 19(b), which governs indispensable parties, works in two steps. Step 1 requires the district court to decide whether a person fits the definition of those who should be joined if feasible under 19(a). That is to say, is the person (what used to be called) a 'necessary' party?" Pujol v. Shearson American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989) (citing Provident Tradesmens Bank v. Patterson, 390 U.S. 102, 118 (1968)). A party cannot be an "indispensable" party under Rule 19(b) unless it is first a "necessary" party under Rule 19(a). See, e.g., Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 n.2 (1st Cir. 1998); 7 C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure, § 1607 (Rule 19(b) analysis unnecessary where criteria of Rule 19(a) not met). A "necessary" party under Rule 19(a) is

> one that should be joined if it is subject to service of process and [its] joinder will not deprive the court of jurisdiction over the subject matter of the action . . . if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter, impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). The analysis under Rule 19(a) is fact-specific: "[W]hen applying Rule 19(a), a court essentially will decide whether considerations of efficiency and fairness, growing out of the particular circumstances of the case, require that a particular person be joined as a party." Pujol, 877 F.2d at 134.

"If the person is a 'necessary' party . . ., but joinder is not feasible, the court must take step 2. It must decide, using four 'factors,' whether 'in equity and good conscience the action

should proceed among the parties before it, or should be dismissed.'" Pujol, 877 F.2d at 134 (quoting Provident Tradesmens Bank, 390 U.S. at 118). The four factors are:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or to those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).[3] "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience" may be deemed indispensable parties under Rule 19(b). United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 382 n.19 (1949) (quoting Shields v. Barrows, 58 U.S. 130, 139 (1854)).

**B.     Application**

Under the foregoing principles, Protocol is not an indispensable party, and the Court can retain jurisdiction by simply dismissing the claims as to Protocol. In view of what has transpired in the case to date, this would be the fair and efficient approach.

---

[3]     Put another way:

> [T]he interests promoted by these four criteria [are] (1) the interests of the outsider whom it would have been desirable to join; (2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability it shares with another; (3) the interest of the courts and the public in complete, consistent, and efficient settlement of controversies; and (4) the plaintiff's interest in having a forum.

H. D. Corp. of Puerto Rico, 791 F.2d at 991.

1.   **Protocol Is Not a Necessary Party**

   a.   **Complete Relief Can Be Accorded Between The Remaining Parties**

The key claim in this case is that Mr. Dall'Acqua breached (and should be made to abide by) the non-solicitation provision of the Agreement. Harte-Hanks's purpose is to prevent further breaches and to obtain compensation for the past breaches. This purpose can be served with only Mr. Dall'Acqua in the case. Indeed, Protocol is not a party to the Agreement and is not named as a party to the claims based on the Agreement. Therefore, Harte-Hanks can obtain complete relief with respect to the key claim in the case if Protocol is dismissed. (The same is true, of course, for Mr. Dall'Acqua.) See, e.g., Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 676-77 (1st Cir. 1995) (where a person is not a party to the disputed contract, that person is not necessary to complete adjudication of those contract rights).[4]

   b.   **Protocol's Interests Are Not At Risk**

"[A] party is necessary under Rule 19(a) only if they can claim a 'legally protected interest' relating to the subject matter of the action." United States v. San Juan Marina Bay, 239 F.3d 400, 406 (1st Cir. 2001). Protocol has no "legally protected" interest in a contract to which it is not a party. Further, even if Protocol were to claim some interest in the Agreement, the interest would be <u>identical</u> to Mr. Dall'Acqua's: Protocol and Mr. Dall'Acqua both hope to show

---

[4] The claims (actually claim) in which Protocol is named are relatively insignificant and largely subsumed by the claims based on the non-solicitation provision. Judgment in Harte-Hanks's favor against Mr. Dall'Acqua on the claims based on the non-solicitation provision will provide greater relief than judgment on the claims for interference with Mr. Martus's non-competition agreement: All of the money damages sought on the latter claims are sought on the former, and the injunctive relief sought on the former claims will prevent the behavior sought to be prevented on the latter (and more). In other words, Harte-Hanks will be fully protected and compensated by the judgment on the claims related to the non-solicitation provision. Further, judgment against Mr. Dall'Acqua alone on the interference claims will provide full relief on those claims; Harte-Hanks will be fully compensated and fully protected even if the judgment does not extend to Protocol, for it is Mr. Dall'Acqua's behavior that Harte-Hanks seeks to reach.

that (a) Mr. Dall'Acqua did not sign the Agreement, and (b) the Agreement is unenforceable against Mr. Dall'Acqua. Mr. Dall'Acqua, who will remain a party, therefore adequately represents and protects any interest Protocol might claim, and Protocol is not needed. See, e.g., Pujol, 877 F.2d at 135-36.[5]

### c. Double, Multiple, Or Inconsistent Obligations Are Not Possible

Defendants may argue that they could face double, multiple, or inconsistent obligations were Protocol dismissed. Harte-Hanks is unable to conjure any scenario under which this would be true.[6] Further, the argument would miss the mark. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. . . . [T]he mere possibility of inconsistent results in separate actions does not make the [parties] in each action . . . necessary part[ies] to the other." Delgado, 139 F.3d at 3.[7]

For the foregoing reasons, Protocol is not a necessary party under Rule 19(a). By definition, it therefore is not an indispensable party under Rule 19(b). See, e.g., Pujol, 877 F.2d at 134. Accordingly, the claims as to Protocol should be dismissed, and the case should proceed between Harte-Hanks and Mr. Dall'Acqua.

---

[5] The same analysis with respect to identity of interest applies to the claims for intentional interference with contractual relations.

[6] If, for example, Harte-Hanks were to sue Protocol separately elsewhere, the result in this case undoubtedly would have preclusive effect in the other case.

[7] In any event, with respect to the claims asserted against both Mr. Dall'Acqua and Protocol – intentional interference with Mr. Martus's non-compete agreement – their liability is joint and several, and such liability does not render Protocol a necessary party under Rule 19(a)(2)(ii). See, e.g., Newman-Green, Inc., 490 U.S. at 828 (joint tortfeasor is not necessary/indispensable party under Rule 19).

8

### 2. In Any Event, Protocol Is Not An Indispensable Party

Even assuming arguendo that Protocol is a necessary party, the "Step 2" analysis under Rule 19 demonstrates that Protocol is not an indispensable party under Rule 19(b).

#### a. Protocol Would Not Be Prejudiced By Judgment In Its Absence

Once Protocol is dismissed, two claims will remain: (1) that Mr. Dall'Acqua breached the non-solicitation provision of his Agreement with Harte-Hanks; and (2) that Mr. Dall'Acqua intentionally interfered with Mr. Martus's non-competition agreement with Harte-Hanks. These claims will seek relief only from or against Mr. Dall'Acqua. It is he who breached and interfered, and it is he who should pay for his breaches and be made to refrain from further like activity. Protocol has no substantial direct interest – and certainly has no interest separate from Mr. Dall'Acqua – in this action. Protocol's only colorable interest is a function of Mr. Dall'Acqua's status as Protocol's CEO: Protocol logically will be indirectly affected by what Mr. Dall'Acqua can or cannot do with respect to employment solicitation. These indirect interests are irrelevant. First, as noted above, they are identical to Mr. Dall'Acqua's interests, and are thus adequately represented/protected. Second, the existence of such indirect interests does not suffice to render Protocol indispensable. See, e.g., Casas Office Machines, Inc., 42 F.3d at 676-77 (party outside a contract is not necessary to action to enforce that contract); Pujol, 877 F.2d at 137 (citing Sierra Club v. United States Army Corps of Engineers, 709 F.2d 175, 176-77 (2d Cir. 1983) (courts may make orders and enter judgments that affect non-parties, and there is no need for all affected entities to be parties to the subject actions).

Furthermore, if Protocol is concerned regarding any activity, order, and/or judgment that may take place in or issue from this action, Protocol is free to intervene. See, e.g., Fed. R. Civ.

P. 24 (permissive intervention allowed "when applicant's claim or defense and the main action have a question of law or fact in common"); Sweeney v. Westvaco Co., 926 F.2d 29, 42 (1st Cir. 1991) (court can consider possibility of Rule 24 intervention in Rule 21 analysis); San Juan Bay Marina, 239 F.3d at 406-07 (party's decision to forego intervention can be seen as an indication that the party did not feel its interests were at risk).

Protocol's ability to intervene is a particularly appropriate consideration. It is because of Protocol that this action has advanced as far as it has prior to any challenge to jurisdiction. Protocol admitted that there was diversity and recanted only two weeks ago. Its delay has allowed significant expenditures of time and money by the parties and the Court. Protocol has allowed the case to proceed to its late stages, only to be temporarily derailed by an argument that should have been raised and dealt with months ago. It is not unfair to factor Protocol's delay into the balancing of competing interests necessary to a Rule 21 determination. See, e.g., id.

### b. Mr. Dall'Acqua Would Not Be Harmed By Protocol's Absence

Mr. Dall'Acqua would not be harmed one whit by the absence of Protocol. He is responsible for the breaches claimed, and he will be deprived of nothing by the dismissal of Protocol. Harte-Hanks does not attempt to hold Mr. Dall'Acqua responsible for any act of Protocol, and he cannot, therefore, insist on Protocol's presence in the litigation. See supra.

### c. Protocol Is Not Needed For An Efficient And Full Resolution

Dismissal of the case as a whole would undo what it has taken months of effort by the parties and the Court to accomplish.[8] Dismissal of the case as a whole would result in the polar opposite of efficiency. Protocol's continuing presence simply is not required for the full, fair,

---

[8] It would also, of course, free Mr. Dall'Acqua from the strictures of the injunction.

and efficient resolution of this dispute. No party will be denied any evidence or argument by reason of Protocol's absence. The key claim involves an agreement between Harte-Hanks and Mr. Dall'Acqua, and the claim can be fairly and fully litigated in the absence of Protocol. See, e.g., Casas Office Machines, Inc., 42 F.3d at 676-77. And, for the reasons stated above, the judgment that will result will be adequate.

### d. Harte-Hanks Has An Interest In Retaining This Forum:

Last, but certainly not least, Harte-Hanks has a very real interest in preserving this forum. The case has an extensive history, including a multi-day evidentiary hearing that resulted in the grant of Harte-Hanks's motion for a preliminary injunction. The pre-trial conference is weeks away. Dismissal of the action as a whole would wipe out that history and force Harte-Hanks to start again at square one. The gross inequity of this result is manifest. See, e.g., Newman-Green, Inc., 490 U.S. at 837 (prevailing party has a strong interest in preserving its order/judgment). Protocol answered the Complaint, appeared (through counsel) at the hearings, engaged in motion practice, and participated in settlement talks, all without mentioning the jurisdictional defect. It allowed this case to proceed to this late stage, and it should not be permitted to erase Harte-Hanks's success by its tardy revelations.

## Conclusion

For the foregoing reasons, Harte-Hanks respectfully requests that defendants' motion to dismiss the complaint be denied, that the claims as to Protocol be dismissed, without prejudice, and that the action proceed between Harte-Hanks and Mr. Dall'Acqua.

Dated: November 8, 2004

Respectfully submitted,

HARTE-HANKS, INC.,

By its attorneys,

s/David B. Chaffin
David B. Chaffin
BBO No. 549245
Kathleen A. Kelley
BBO No. 562342
HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

422004.1029