# EXHIBIT 3

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC.,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
| v.     ) | Civil Action No. 04 CV 11548 DPW |
|     ) | |
| CHARLES R. DALL'ACQUA and     ) | |
| PROTOCOL MARKETING GROUP,     ) | |
|     ) | |
|     Defendants.     ) | |

## DECLARATION OF JEANINE CLARK

I, Jeanine Clark, state:

1.      I am over the age of 21.  I reside in Pasadena, Maryland.  The statements in this declaration are based on my personal knowledge, unless otherwise indicated.

2.      I was employed by Harte-Hanks, Inc. in Maryland as of January 2002.

3.      Attached hereto as Exhibit 1 is a true and correct copy of a Confidentiality/Non-Disclosure Agreement ("Agreement") relating to my employment at Harte-Hanks.  This Agreement was presented to me in or about January 2002.

4.      I signed the Agreement in or about January 2002, and the "Employee's Signature" on page 2 of the Agreement is mine.

5.      In conjunction with my execution of this declaration, I have initialed my signature

on page 2 of the Agreement.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS *11*th DAY OF NOVEMBER, 2004.

Jeanine Clark

422004.111004

2



# CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1.  I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2.  In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3.  I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs or systems (collectively, intellectual property) that I develop or discover. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4.  Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5.  I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.  I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.  I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.  If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.  I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____
Employee's Signature

_____
Authorized Harte-Hanks Representative

_____
Date

1/22/02
_____
Date

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HARTE-HANKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 CV 11548 DPW |
| | ) | |
| CHARLES R. DALL'ACQUA and | ) | |
| PROTOCOL MARKETING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ELAINE DERNOGA

I, Elaine Dernoga, state:

1.    I am over the age of 21.  I reside in Baltimore, Maryland.  The statements in this declaration are based on my personal knowledge, unless otherwise indicated.

2.    I was employed by Harte-Hanks, Inc. in Maryland as of January 2002.

3.    Attached hereto as Exhibit 1 is a true and correct copy of a Confidentiality/Non-Disclosure Agreement ("Agreement") relating to my employment at Harte-Hanks.  This Agreement was presented to me in or about January 2002.

4.    I signed the Agreement in or about January 2002, and the "Employee's Signature" on page 2 of the Agreement is mine.

5.    In conjunction with my execution of this declaration, I have initialed my signature on page 2 of the Agreement.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS _11_ DAY OF NOVEMBER, 2004.

_Elaine Dernoga_
Elaine Dernoga

422004.111004

2

EXHIBIT 1



## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1. I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2. In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3. I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs or systems (collectively, intellectual property) that I develop or discover. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4. Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5. I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.  I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.  I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.  If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.  I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.


AGREED TO AND ACCEPTED:

_____          _____
Employee's Signature                      Authorized Harte-Hanks Representative


_____          _____
1/22/02                                   1/22/02
Date                                      Date

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HARTE-HANKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04 CV 11548 DPW |
| ) | |
| CHARLES R. DALL'ACQUA and ) | |
| PROTOCOL MARKETING GROUP, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF GLENN HECHT

I, Glenn Hecht, state:

1.      I am over the age of 21. I reside in Baltimore, Maryland. The statements in this

declaration are based on my personal knowledge, unless otherwise indicated.

2.      I was employed by Harte-Hanks, Inc. in Maryland as of January 2002.

3.      Attached hereto as Exhibit 1 is a true and correct copy of a Confidentiality/Non-

Disclosure Agreement ("Agreement") relating to my employment at Harte-Hanks. This

Agreement was presented to me in or about January 2002.

4.      I signed the Agreement in or about January 2002, and the "Employee's Signature"

on page 2 of the Agreement is mine.

5.    In conjunction with my execution of this declaration, I have initialed my signature

on page 2 of the Agreement.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS 10 DAY OF NOVEMBER, 2004.

Glenn Hecht

422004.111004

2



# CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1. I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2. In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3. I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs or systems (collectively, intellectual property) that I develop or discover. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4. Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5. I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6. I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7. I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8. If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9. I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____
Employee's Signature

_____
Authorized Harte-Hanks Representative

_____
Date

1/23/02
_____
Date

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HARTE-HANKS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04 CV 11548 DPW |
| CHARLES R. DALL'ACQUA and PROTOCOL MARKETING GROUP, | ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF CHARLES HOWARD

I, Charles Howard, state:

1.     I am over the age of 21.  I reside in Monrovia, Maryland.  The statements in this declaration are based on my personal knowledge, unless otherwise indicated.

2.     I was employed by Harte-Hanks, Inc. in Maryland as of January 2002.

3.     Attached hereto as Exhibit 1 is a true and correct copy of a Confidentiality/Non-Disclosure Agreement ("Agreement") relating to my employment at Harte-Hanks.  This Agreement was presented to me in or about January 2002.

4.     I signed the Agreement in or about January 2002, and the "Employee's Signature" on page 2 of the Agreement is mine.

5.    In conjunction with my execution of this declaration, I have initialed my signature on page 2 of the Agreement.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS _11_ DAY OF NOVEMBER, 2004.

_Charles M. Howard_
Charles Howard

422004.111004

EXHIBIT 1



## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1.  I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2.  In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3.  I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs, or systems (collectively, intellectual property) that I develop or discover during my employment by Harte-Hanks and that are related to any work or project that I work on or had knowledge of while employed at Harte-Hanks or that I develop or discover either using Harte-Hanks equipment or resources or while on Harte-Hanks time. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4.  Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5.  I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any

U:\hr\AGR\confidagr_perm_newpara3.doc

employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6. I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7. I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8. If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9. I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____
Employee's Signature

_____
Authorized Harte-Hanks Representative

_____
Date    January 23, 2002

_____
Date    1/23/02

U:\hr\AGR\confidagr_perm_newpara3.doc

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HARTE-HANKS, INC.,           ) | |
|           ) | |
| Plaintiff,        ) | |
|           ) | |
| v.              ) | Civil Action No. 04 CV 11548 DPW |
|           ) | |
| CHARLES R. DALL'ACQUA and   ) | |
| PROTOCOL MARKETING GROUP,  ) | |
|           ) | |
| Defendants.     ) | |

## **DECLARATION OF DAVID J. SCHULTZ**

I, David J. Schultz, state:

1.     I am over the age of 21. I reside in Baltimore, Maryland. The statements in this declaration are based on my personal knowledge, unless otherwise indicated.

2.     I was employed by Harte-Hanks, Inc. in Maryland as of January 2002.

3.     Attached hereto as Exhibit 1 is a true and correct copy of a Confidentiality/Non-Disclosure Agreement ("Agreement") relating to my employment at Harte-Hanks. This Agreement was presented to me in or about January 2002.

4.     I signed the Agreement in or about January 2002, and the "Employee's Signature" on page 2 of the Agreement is mine.

5.    In conjunction with my execution of this declaration, I have initialed my signature

on page 2 of the Agreement.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS _11 th_ DAY OF NOVEMBER, 2004.

David J. Schultz

422004.111004

2

EXHIBIT 1



## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1.  I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2.  In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3.  I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs or systems (collectively, intellectual property) that I develop or discover. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4.  Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5.  I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.  I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.  I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.  If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.  I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____
Employee's Signature

_____
Authorized Harte-Hanks Representative

_____
Date

_____
Date

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ <br> ) <br> HARTE-HANKS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHARLES R. DALL'ACQUA and ) <br> PROTOCOL MARKETING GROUP, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. 04 CV 11548 DPW |

### DECLARATION OF RICHARD SCHWARTZ

I, Richard Schwartz, state:

1.      I am over the age of 21.  I reside in Baltimore, Maryland.  The statements in this declaration are based on my personal knowledge, unless otherwise indicated.

2.      I was employed by Harte-Hanks, Inc. in Maryland as of January 2002.

3.      Attached hereto as Exhibit 1 is a true and correct copy of a Confidentiality/Non-Disclosure Agreement ("Agreement") relating to my employment at Harte-Hanks.  This Agreement was presented to me in or about January 2002.

4.      I signed the Agreement in or about January 2002, and the "Employee's Signature" on page 2 of the Agreement is mine.

5.    In conjunction with my execution of this declaration, I have initialed my signature

on page 2 of the Agreement.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS __11__ DAY OF NOVEMBER, 2004.


Richard Schwartz

422004.111004

2

EXHIBIT 1





# CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1. I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2. In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3. I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs or systems (collectively, intellectual property) that I develop or discover. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4. Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5. I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.  I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.  I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.  If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.  I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.

AGREED TO AND ACCEPTED:

_____          _____
Employee's Signature                        Authorized Harte-Hanks Representative

_____          _____
        Date                                Date

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARTE-HANKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 CV 11548 DPW |
| | ) | |
| CHARLES R. DALL'ACQUA and | ) | |
| PROTOCOL MARKETING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF JOHANNA WHITE

I, Johanna White, state:

1.    I am over the age of 21.  I reside in Edgewater, Maryland.  The statements in this declaration are based on my personal knowledge, unless otherwise indicated.

2.    I was employed by Harte-Hanks, Inc. in Maryland as of January 2002.

3.    Attached hereto as Exhibit 1 is a true and correct copy of a Confidentiality/Non-Disclosure Agreement ("Agreement") relating to my employment at Harte-Hanks.  This Agreement was presented to me in or about January 2002.

4.    I signed the Agreement in or about January 2002, and the "Employee's Signature" on page 2 of the Agreement is mine.

5.      In conjunction with my execution of this declaration, I have initialed my signature

on page 2 of the Agreement.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS _11_ DAY OF NOVEMBER, 2004.

Johanna White

422004.111004

EXHIBIT 1



## CONFIDENTIALITY/NON-DISCLOSURE AGREEMENT

In consideration of employment at Harte-Hanks, Inc. or a subsidiary or affiliate thereof ("Harte-Hanks"), as well as other goods and valuable regard (receipt of which is hereby acknowledged), Employee agrees to the following:

1.  I acknowledge that my employment at Harte-Hanks provides me with access to confidential information and knowledge. For purposes of this Agreement, the term confidential information includes, but is not limited to, customer lists, employee lists, customer information, pricing information, business plans, business strategies, trade secrets, proprietary information, as well as any information provided by Harte-Hanks customers, including, but not limited to, nonpublic personal information and protected health information about consumers.

2.  In return for being given access to the aforementioned information, I agree that I will not at any time, whether during or subsequent to my employment, directly or indirectly divulge to any person, firm or corporation confidential information obtained during my employment other than in the ordinary course of performing my duties under this Agreement. In addition, I agree to use confidential information of Harte-Hanks customers only for the purpose specified by the customer. I understand that Harte-Hanks is or will be a party to confidentiality agreements with its customers or clients restricting Harte-Hanks use or disclosure of confidential information of its customers or clients, and I agree to comply with all of the terms of such confidentiality agreements.

3.  I also agree to disclose to Harte-Hanks any and all inventions, improvements, discoveries, processes, programs or systems (collectively, intellectual property) that I develop or discover. Such intellectual property will be the sole and absolute property of Harte-Hanks and, upon request of Harte-Hanks, I will execute and deliver such assignments and other documents as Harte-Hanks may consider appropriate to properly vest rights, titles and interests therein in Harte-Hanks.

4.  Should I leave the employment of Harte-Hanks, I will not take or use, without the prior written consent of Harte-Hanks, any memoranda, notes, lists, schedules, forms or other documents, papers, records, or compilations of information of any kind and in any medium, relating to Harte-Hanks business, customers or employees. In addition, I agree to relinquish all such materials to Harte-Hanks upon termination of my employment.

5.  I agree that I will not at any time during or for a period of two years subsequent to my employment with Harte-Hanks attempt directly or through others to influence any employee of Harte-Hanks to terminate their employment with Harte-Hanks or to recruit Harte-Hanks employees for other employment.

6.  I have read this entire Agreement and understand the Agreement and the restrictions contained herein. I also understand that this Agreement and the restrictions contained in this Agreement are reasonable, proper, and necessitated by Harte-Hanks legitimate business interests. I have freely, willingly, and knowingly entered into this Agreement with the intent to be bound by the Agreement and the restrictions contained herein.

7.  I authorize Harte-Hanks to provide copies of this Agreement to any person or entity in order to make such person or entity aware of my obligations under this Agreement.

8.  If the scope of any provision contained in this Agreement is determined by a court or arbitral authority of competent jurisdiction to be unenforceable to its full extent, then such provision shall be enforced to the maximum extent permitted by law and the parties hereby consent to modification of such provision. Subject to the foregoing provision, if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this Agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

9.  I agree that nothing in this Agreement modifies or in any way affects, explicitly or implicitly, my at-will status or the terms and conditions of my employment, such as those contained in Harte-Hanks employee handbook.

10. I agree that the obligations under this agreement shall survive after the termination of my employment relationship with Harte-Hanks.

11. In the event of a breach or threatened breach of this agreement, Harte-Hanks shall be entitled to a preliminary and/or permanent injunction restraining such breach.

12. This Agreement shall be interpreted in accordance with the laws of the state where I am employed without giving effect to its conflict of law principles.


AGREED TO AND ACCEPTED:

_____          _____
Employee's Signature                      Authorized Harte-Hanks Representative


_____          _____
Date                                      Date