# EXHIBIT 4

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHARLES R. DALL'ACQUA and PROTOCOL MARKETING GROUP, <br><br> Defendants. | Civil Action No. 04 CV 11548 DPW |

## DECLARATION OF ELAINE DERNOGA

I, Elaine Dernoga, state under the penalties of perjury:

1. I am over the age of 21. I reside in Gambrills, Maryland. The statements made in this declaration are based on my personal knowledge, unless otherwise indicated.

2. I am a Human Resources Administrator at Harte-Hanks, Inc. ("Harte-Hanks") in Glen Burnie, Maryland. I have worked for Harte-Hanks for almost nine years.

3. Before the August hearing, I gathered (and faxed to counsel) numerous documents from the files at my office relating to the assertions by Mr. Dall'Acqua that he had not seen or signed, would not have signed, and could not have signed his Confidentiality/Non-Disclosure Agreement. Among the documents I located are Confidentiality/Non-Disclosure Agreements signed by myself and other current and former Harte-Hanks employees in January 2002 (the "Other Agreements").

4. I had been responsible for obtaining the employees' signatures on the Other Agreements, and I countersigned them (with the exception of my own) on behalf of Harte-Hanks.

5. I was asked to come to the hearing on August 10 and to bring with me the originals of documents I had been faxing to counsel, including the Other Agreements.

6. To attend the hearing, I made plans to travel from Baltimore to Boston on Monday, August 9. In anticipation of the Monday travel, and knowing that I would be busy at work on Monday before catching my flight, on Friday, August 6, I placed the originals of the Other Agreements in a leather portfolio and the originals of the other documents in an envelope, and took the portfolio and envelope home with me. My plan was to pack my suitcase over the weekend; to put it, the portfolio, and the envelope in my car; to leave them there during work on Monday; and then to drive to BWI.

7. I believe that I followed this plan on the 9th. I believe now, having reconstructed the events of those days, that I went to BWI on the afternoon of the 9th with my suitcase, the portfolio, and the envelope.

8. I was in some distress at the airport. I rarely travel for business, I dislike commercial flights, and I did not relish the thought of flying to Logan in light of, among other things, its association with the events of September 11, 2001. I had never been to Boston before, had never testified before, had never met Harte-Hanks's outside or inside (Mr. Hacker) counsel in person before, and was nervous about the possibility that I might be called to testify.

9. In addition, I was upset in general about the case, as I was essentially being accused, by a man for whom I had worked for years, of committing forgery. To make matters worse, when I travel, I normally take my own food with me (for reasons that are not relevant), and, when I got to the airport, I was dismayed to discover that I had forgotten to pack my food. Therefore, while at the airport, I visited a shop and bought some things as substitutes.

2

10. After I arrived at Logan and was en route to my hotel, I realized that I did not have the portfolio containing the Other Agreements.

11. My first thought was that I had left the portfolio at BWI, but I was not sure. I also thought that I might have left the portfolio at my home or in my car. I decided that I would check with lost and found at BWI Airport, and search my home and car. Upon my return to Baltimore on the evening of August 10, I checked my car and home for the missing portfolio, but did not find it. Early the next morning, I went to lost and found at BWI, but had no luck there. I went to the office and checked it. Later, I followed up with lost and found at BWI, again with no success. The originals of the Other Agreements are, therefore, unavailable. Copies of the Other Agreements are on file.

12. During my testimony on August 10, I was asked if I had the original of one of the Agreements at my office. I answered "I most likely do." I mis-spoke, but I did believe at the time that the portfolio was in Baltimore and would be found or retrieved at some location there.

13. I did not know on August 10 that the actual paper of the Other Agreements would become an issue.

14. A true and correct copy of the fax cover sheet I prepared on June 1, 2004, sending the Dall'Acqua Agreement to Faye Sowell, Mr. Hacker's secretary, is attached hereto as Exhibit A.

SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS _15_ DAY OF NOVEMBER, 2004.

                                            _Elaine Demoga_
                                            Elaine Demoga

422003.111304

3

EXHIBIT A

## HARTE HANKS

**We make it happen.**

9701 Bayacadoro Drive
Suite C
Owe Burnie, MD 21060
Phone: (310) 412-1751
Fax: (410) 412-1801

www.harte-hanks.com

**Date:** 6/1/04

**Time:** _____

**Pages to Follow:** _____

**To:** Hugh Sewell

**Company:** _____

**Recipient's Fax Number:** _____

**Recipient's Tel Number:** _____

**From:** Elaine Mannon

**Re:** _____

# Fax

**Notes:**

○ For Review    ○ Urgent    ○ Please Respond    ○ FYI

Privileged and Confidential Information