UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES R. DALL'ACQUA and PROTOCOL MARKETING GROUP,<br><br>Defendants. | Civil Action No. 04 CV 11548 DPW |

**ANSWER TO COUNTERCLAIMS (SIC)**

Plaintiff, Harte-Hanks, Inc., as and for its answer to Charles R. Dall'Acqua's counterclaim, alleges:

1. Paragraph 1 contains introductory allegations that require no response. To the extent a response to paragraph 1 is deemed necessary, Harte-Hanks admits that this action is a civil lawsuit, denies that the counterclaim per se is a civil lawsuit, denies that it has engaged in unfair competition, and denies that Mr. Dall'Acqua has sustained any damages as a result of any unfair competition by Harte-Hanks (because there has been none).

2. Harte-Hanks admits the allegations of paragraph 2 on information and belief.

3. Harte-Hanks interprets paragraph 3 to allege that securities of Harte-Hanks are publicly traded and listed on the New York Stock Exchange and, as interpreted, admits the allegations of paragraph 3.

4. Harte-Hanks admits on information and belief that Protocol Services, Inc., is in

the business of providing marketing services, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4.

5. Harte-Hanks admits the allegations of paragraph 5.

6. Harte-Hanks admits the allegations of paragraph 6, except that it states that before Mr. Hacker fully assumed his role as General Counsel, Mr. Blythe was acting as both Chief Financial Officer and General Counsel.

7. Harte-Hanks admits the allegations of the first two sentences of paragraph 7, but states that Ms. Dernoga has had duties and responsibilities in addition to those alleged. As to the allegations of the third sentence of paragraph 7, Harte-Hanks states that Ms. Dernoga did counter-sign the agreement at issue and denies the allegation that the agreement is a forgery.

8. Harte-Hanks admits jurisdiction.

9. Harte-Hanks admits that venue in this Court is appropriate, but states that to the extent the allegations of venue are intended to suggest that the alleged conduct of which Mr. Dall'Acqua complains, which it denies, occurred primarily and substantially within Massachusetts, the suggestion is denied.

10. Harte-Hanks is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

11. Harte-Hanks admits that Mr. Dall'Acqua had the alleged position and responsibilities before he was terminated.

12. Harte-Hanks denies the allegations of paragraph 12.

13. Harte-Hanks is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 insofar as they describe actions of Protocol and

statements by Dall'Acqua, and it denies that Mr. Dall'Acqua "confirmed" that he did not have any restrictive covenants with Harte-Hanks."

14. Harte-Hanks is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Protocol may have been told, but it denies that the alleged descriptions of Messrs. Dall'Acqua and Hochhauser are accurate.

15. Harte-Hanks admits that Messrs. Hochhauser and Blythe confronted Mr. Dall'Acqua with information suggesting that his loyalties were elsewhere and that he had made overtures about joining him at another employer to at least one other Harte-Hanks employee. Harte-Hanks denies the remaining allegations of paragraph 15 to the extent they purport accurately to describe the conversations at issue.

16. Harte-Hanks admits that Messrs. Hochhauser and Blythe said nothing to Mr. Dall'Acqua about his Confidentiality/Non-Disclosure Agreement because they were unaware that it existed.

17. Harte-Hanks admits that Mr. Dall'Acqua was informed that he had been terminated during a telephone conversation with Mr. Hochhauser on or about the date alleged.

18. Harte-Hanks admits that Mr. Hochhauser said nothing to Mr. Dall'Acqua about his Confidentiality/Non-Disclosure Agreement because he was unaware that it existed.

19. Harte-Hanks denies the allegations of paragraph 19, but admits that Mr. Blythe made an offer of severance, on conditions, to Mr. Dall'Acqua on or about the date alleged.

20. Harte-Hanks admits that it did not write Mr. Dall'Acqua until June 2004 and denies knowledge or information sufficient to form a belief as to what "invariably happens."

21. Harte-Hanks is without knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 21 insofar as they purport to describe a conversation with an unnamed person, but it denies that the alleged description of Mr. Dall'Acqua is accurate.

22. Harte-Hanks denies the allegations of the first sentence of paragraph 22. Harte-Hanks is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22.

23. Harte-Hanks admits that Protocol hired Mr. Dall'Acqua.

24. Harte-Hanks is without knowledge or information sufficient for form a belief as to the truth of the allegations of paragraph 24.

25. Harte-Hanks admits that it sent a letter of the sort alleged on or about the alleged date, and it refers the Court to the letter for the content thereof.

26. Harte-Hanks denies the allegations of paragraph 26.

27. Harte-Hanks denies the allegation that Mr. Dall'Acqua had never seen his Confidentiality/Non-Disclosure Agreement before, is without knowledge or information sufficient to form a belief as to the truth of the allegation concerning what Mr. Dall'Acqua said, and admits receipt of a letter from Jenner & Block in which claims of forgery and lack of authorization were raised, which claims are denied.

28. Harte-Hanks is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28, but it denies that the conclusion is correct.

29. Harte-Hanks is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29, but it denies that the conclusion is correct.

30. Harte-Hanks is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

31. Harte-Hanks denies the allegations of the first sentence of paragraph 31. Harte-Hanks admits that Ms. Dernoga lost the originals of certain documents, copies of which are available, on or about August 9, 2004, in the course of her travel to Boston. Harte-Hanks denies that Ms. Dernoga was asked about the whereabouts of the "documents," admits that she was asked whether she had one of the original documents back at her office, and admits that she said that she most likely did. Harte-Hanks denies the remaining allegations of paragraph 31.

32. Harte-Hanks denies the allegations of paragraph 32.

33. Harte-Hanks denies the allegations of paragraph 33, states that the allegations refer to the contents of a letter from Harte-Hanks to Mr. Dall'Acqua, and refers the Court thereto for its precise contents.

34. Harte-Hanks denies that "Protocol" so informed Harte-Hanks, admits that it received a letter from Jenner & Block that claimed that the agreement at issue is a forgery and unauthorized and that made certain threats. Harte-Hanks refers the Court to the letter for its precise contents.

35. Harte-Hanks admits the allegations of the first sentence of paragraph 35. Harte-Hanks admits that the complaint contains a claim for breach of the agreement at issue and that it sought preliminary injunctive relief to prevent further breaches thereof. Harte-Hanks denies that the agreement is a forgery. Harte-Hanks admits that it filed a motion (not an emergency motion) for a preliminary injunction, seeking to prevent further breaches. Harte-Hanks denies the remaining allegations of paragraph 35.

36. Harte-Hanks admits that this action is pending against Mr. Dall'Acqua.

**As To The Allegations Of Count I**

37. Harte-Hanks repeats and incorporates by reference herein the allegations of paragraph 1 through 36 above.

38. Harte-Hanks denies the allegations of paragraph 38.

39. Harte-Hanks denies the allegations of paragraph 39.

40. Harte-Hanks denies the allegations of paragraph 40.

41. Harte-Hanks denies the allegations of paragraph 41.

42. Harte-Hanks denies the allegations of paragraph 42.

43. Harte-Hanks denies the allegations of paragraph 43.

44. Harte-Hanks denies the allegations of paragraph 44.

**Affirmative/Separate Defenses**

1. The counterclaim fails to state a claim based on which relief may be granted.

2. Dall'Acqua failed to comply with the pre-requisites to suit under Chapter 93A, Section 9.

3. The alleged conduct of which Mr. Dall'Acqua complains did not occur in trade or commerce.

4. The alleged conduct of which Mr. Dall'Acqua complains did not occur primarily and substantially within Massachusetts.

5. The gravamen of the counterclaim is that the agreement at issue is a forgery, and it is not a forgery.

6. The alleged conduct is litigation-related, and a cause of action under Chapter 93A, Section 9, will not lie based on such conduct.

7. The alleged conduct was not unfair or deceptive within the meaning of Chapter 93A, Section 9.

WHEREFORE, Harte-Hanks respectfully requests judgment dismissing the counterclaim with prejudice, awarding Harte-Hanks its fees and costs associated with the defense of the counterclaim, and providing for such other and further relief as it appropriate.

Dated: December 6, 2004

HARTE-HANKS, INC.,

By its attorneys,

s/David B. Chaffin

David B. Chaffin
BBO# 549245
Kathleen A. Kelley
BBO# 562342
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

422004.1130