UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HARTE-HANKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 CV 11548 DPW |
| | ) | |
| CHARLES R. DALL'ACQUA, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DAVID B. CHAFFIN IN SUPPORT OF MOTION TO COMPEL RESPONSES TO MONITORING INTERROGATORIES

I, David B. Chaffin, state, under the penalties of perjury:

1.      I am co-counsel to Harte-Hanks, Inc.

2.      I make this declaration in support of Harte-Hanks's motion to compel Mr. Dall'Acqua to respond properly to Harte-Hanks's monitoring interrogatories.

3.      Attached hereto as Exhibit 1 is a copy of Plaintiff's Monitoring Interrogatories Propounded to Defendant Protocol.

4.      Attached hereto as Exhibit 2 is a copy of Defendant Charles R. Dall'Acqua's Response to Plaintiff's Monitoring Interrogatories Propounded to Defendant Charles R. Dall'Acqua.

5.    Attached hereto as Exhibit 3 is Defendant Charles R. Dall'Acqua's First Amended Objections and Responses to Plaintiff's First Set of Interrogatories.

6.    Attached hereto as Exhibit 4 is Defendant Charles R. Dall'Acqua's First Amended Response to Plaintiff's Monitoring Interrogatories Propounded to Defendant Charles R. Dall'Acqua.

7.    In September, we issued a subpoena to Verizon Wireless, which Mr. Dall'Acqua uses for cellphone service, seeking the records of his usage.  On or about September 27, 2004, we received the records of Mr. Dall'Acqua's cell phone usage.

8.    Attached hereto as Exhibit 5 are excerpts from the records we received from Verizon Wireless.  They show the following calls from Mr. Dall'Acqua to what I am informed are Deborah Kennedy's home telephone number ((516) 922-7887) and cell number ((516) 983-1617):

| DATE | DURATION (Seconds) |
| --- | --- |
| 6/25/04 | 34 |
| 6/30/04 | 66 |
| 7/1/04 | 49 |
| 7/7/04 | 151 |
| 7/7/04 | 26 |
| 7/7/04 | 38 |
| 7/8/04 | 80 |
| 7/26/04 | 74 |

2

8/16/04                85

8/20/04                459


SIGNED UNDER THE PENALTIES OF PERJURY
ON THIS 10th DAY OF DECEMBER 2004.


_____
David B. Chaffin

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARTE-HANKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 CV 11548 DPW |
| | ) | |
| CHARLES R. DALL'ACQUA and | ) | |
| PROTOCOL MARKETING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MONITORING INTERROGATORIES PROPOUNDED TO DEFENDANT PROTOCOL

Pursuant to Rules 26, 33, and 65 of the Federal Rules of Civil Procedure, plaintiff, Harte-Hanks Inc. ("Harte-Hanks"), requests that defendant Protocol Marketing Group, a/k/a Protocol Services, Inc., respond under oath to the following monitoring interrogatories no later than thirty (30) days after service hereof.

## DEFINITIONS

1.    "Harte-Hanks" refers to plaintiff, Harte-Hanks, Inc., and any affiliate, predecessor, successor, parent, subsidiary, agent, employee, or representative (including attorneys) of same.

2.    "Protocol," "you," and "your" refer to defendant Protocol Marketing Group, a/k/a Protocol Services, Inc., and Protocol Services, Inc., and its/their agents, employees, representatives (including attorneys), and all other persons acting or purporting to act on its/their behalf.

43

3.     As used herein, the word "each" includes the word "every."  The word "every" includes the word "each."  The word "any" includes the word "all," and the word "all" includes the word "any."

4.     As used herein, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the interrogatory all information that might otherwise be construed to be outside its scope.

5.     Where it is appropriate, the use of the singular incorporates the plural, and the use of the plural incorporates the singular.

6.     As used herein, the term "concerning" means referring to, relating to, describing, evidencing, or constituting.

7.     As used herein, the term "person" means any natural person, individual, firm, corporation, partnership, group, association, organization, or other legal, business, or governmental entity.

8.     As used herein, the term "communication" means any transfer or exchange of information, or request for information, whether oral, written, electronic, or in any other form, between or among two or more persons.

## INSTRUCTIONS

1.     You are required to amend or supplement your responses to the following interrogatories pursuant to 26(e) of the Federal Rules of Civil Procedure.

2

## MONITORING INTERROGATORIES

**Interrogatory 1**

Please identify, by providing his or her full name, address, telephone number, and e-mail address, each and every current or former employee of Harte-Hanks with whom you have communicated, whether in person or by telephone, e-mail, written correspondence, or otherwise, from January 1, 2004 to the date of your response.

**Interrogatory 2**

Please describe in complete detail each communication of any sort you have had with any current or former employee of Harte-Hanks from January 1, 2004, to the date of your response. Your description of each such communication should include, but not be limited to, (a) an identification of the individual with whom you communicated; (b) an identification of the method(s) (e.g., telephone, writing, etc.) of communication employed; (c) an identification of the date(s) of the communication(s); (d) a word-for-word account of the communication(s) or, where such an account is not possible, a statement of the substance of the communication; (e) an identification of any witness(es) to the communication; and (f) an identification of any documents referring to, relating to, or memorializing the communication.

**Interrogatory 3**

Identify all procedures, steps, and/or safeguards that you or any of your agents have undertaken to ensure compliance with the Court's ruling of August 18, 2004, and order of August 25, 2004. As to each such procedure, step, and/or safeguard, please describe in full detail (a) the individual and/or entity who devised such procedure, step, and/or safeguard; (b) the date, time, place and manner in which such procedure, step, and/or safeguard was adopted; and (c) the

3

identity of the individual or entity responsible for monitoring your full compliance with each

such procedure, step, and/or safeguard.

Dated: August 30, 2004                          HARTE-HANKS, INC.,

                                                By its attorneys,


                                                _____
                                                David B. Chaffin
                                                BBO# 549245
                                                Kathleen A. Kelley
                                                BBO # 562342
                                                HARE & CHAFFIN
                                                160 Federal Street
                                                Boston, Massachusetts 02110
                                                (617) 330-5000


                        CERTIFICATE OF SERVICE

        I certify that a true copy of the foregoing document was served by hand on counsel of
record for defendants this 30th day of August, 2004.


                                                _____
                                                David B. Chaffin



422004.0830

4

EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC.,               )<br><br>        Plaintiff,           )<br><br>       v.               )<br><br>CHARLES R. DALL'ACQUA and   )<br>PROTOCOL MARKETING GROUP,  )<br><br>        Defendants.      )      | Civil Action No.  04-11548-DPW |

### DEFENDANT CHARLES R. DALL'ACQUA'S  RESPONSE TO PLAINTIFF'S MONITORING INTERROGATORIES PROPOUNDED TO DEFENDANT CHARLES R. DALL'ACQUA

Defendant Charles R. Dall'Acqua ("Dall'Acqua"), by his attorneys, hereby responds to Plaintiff Harte-Hanks, Inc.'s Monitoring Interrogatories Propounded to Defendant Charles R. Dall'Acqua as follows:

### GENERAL OBJECTIONS

1.      Dall'Acqua objects to these interrogatories on the grounds that they exceed the maximum number of interrogatories a party may serve under Rule 33(a) of the Federal Rules of Civil Procedure.  In particular, including all discrete subparts as well as the interrogatories included in its "Monitoring Interrogatories," Harte-Hanks has submitted well in excess of the permitted twenty-five (25) interrogatories.

2.      Dall'Acqua objects to these interrogatories to the extent they seek information which is within the attorney-client privilege, the attorney work product privilege or any other recognized privilege or immunity.  Dall'Acqua and his counsel hereby assert such privileges and immunities and will not produce any such protected information.

3.    Dall'Acqua objects to these interrogatories, including the definitions and instructions, to the extent they seek to impose discovery obligations on Dall'Acqua greater than those specified in the Federal Rules of Civil Procedure. Dall'Acqua will respond to these interrogatories in accordance with his obligations pursuant to the Federal Rules of Civil Procedure.

4.    Dall'Acqua objects to these interrogatories to the extent that any particular request is overly broad, vague, ambiguous, misleading, subject to differing interpretations or otherwise objectionable under the Federal Rules of Civil Procedure.

5.    To the extent that any interrogatory calls for information generally available or otherwise known to defendants, Dall'Acqua objects on the grounds that such request is unduly burdensome and oppressive.

6.    Dall'Acqua submits these answers and responses without conceding the relevancy or materiality of the subject matter of any interrogatory, and without prejudice to his right to object to any further discovery or to object to the admissibility of proof on the subject matter.

7.    Dall'Acqua's investigation continues and, therefore, his responses are preliminary. Dall'Acqua expressly reserves the right to supplement these responses as necessary after discovery closes.

8.    All of the above general objections are incorporated by reference into each and every one of the following specific responses.

## MONITORING INTERROGATORIES

**INTERROGATORY NO 1:**   Please identify, by providing his or her full name, address, telephone number and e-mail address, each and every current or former employee of Harte-Hanks with whom you have communicated by any means, including in person or by telephone, e-mail, written correspondence, or otherwise, from January 1, 2004, to the date of your response.

**RESPONSE:**   Dall'Acqua objects to this interrogatory on the grounds it is overly broad,

burdensome and harassing in seeking the identities of all current and former Harte-Hanks

employees with whom Dall'Acqua communicated from January 1, 2004 to the present.

Dall'Acqua further objects on the grounds that it seeks information not reasonably likely to lead

to the discovery of admissible evidence.  Subject to some significant narrowing of the scope of

this interrogatory, Dall'Acqua will reconsider his response.  Further answering, Dall'Acqua

incorporates by reference his responses to Interrogatories Nos. 8, 11, 12 and 13 which discuss his

(pre-preliminary injunction order) discussions with Harte-Hanks' employees regarding their

possible employment at Protocol.

**INTERROGATORY 2:**  Please describe in complete detail each communication of any sort you have had with any current or former employee of Harte-Hanks from January 1, 2004, to the date of your response.  Your description of each such communication should include, but not be limited to, (a) an identification of the individual with whom you communicated; (b) an identification of the method(s) (e.g., telephone, writing, etc.) of communication employed; (c) an identification of the date(s) of the communication(s); (d) a word-for-word account of the communication(s) or, where such an account is not possible, a statement of the substance of the communication; (d) an identification of any witness(es) to the communication; and (f) an identification of any documents referring to, relating to, or memorializing the communication.

**RESPONSE:**   Dall'Acqua objects to this interrogatory on the grounds it is overly broad,

burdensome and harassing in seeking the identities of all current and former Harte-Hanks

employees with whom Dall'Acqua communicated from January 1, 2004 to the present.

Dall'Acqua further objects on the grounds that it seeks information not reasonably likely to lead

to the discovery of admissible evidence.  Subject to some significant narrowing of the scope of

this interrogatory, Dall'Acqua will reconsider his response.  Further answering, Dall'Acqua

incorporates by reference his responses to Interrogatories Nos. 8, 11, 12 and 13 which discuss his

(pre-preliminary injunction order) discussions with Harte-Hanks' employees regarding their

possible employment at Protocol.

**INTERROGATORY NO. 3:**  Identify all procedures, steps, and/or safeguards that you or any
of your agents have undertaken to ensure compliance with the Court's ruling of August 18, 2004,
and order of August 25, 2004.  As to each such procedure, step, and/or safeguard, please describe
in full detail (a) the individual and/or entity who devised such procedure, step, and/or safeguard;
(b) the date, time, place and manner in which such procedure, step, and/or safeguard was
adopted; and (c) the identity of the individual or entity responsible for monitoring your full
compliance with each such procedure, step, and/or safeguard.

**RESPONSE:**   Dall'Acqua objects to this interrogatory to the extent it seeks to intrude upon

privileged matters.  Dall'Acqua further objects in that the Court's preliminary injunction order

did not require Dall'Acqua to implement any specific "procedures, steps and/or safeguards," but

rather directed Dall'Acqua not solicit Harte-Hanks employees.  Without waiving said objections,

Dall'Acqua states that he has fully complied with the Court's Order and has not influenced any

Harte-Hanks employee to terminate their employment with Harte-Hanks or otherwise recruited

any Harte-Hanks employee for any other employment.  To ensure compliance, Protocol,

Dall'Acqua and all those acting on their behalf have steadfastly adhered to the Court's Order.

Objections by:

John F. Rooney III
Angela L. Lackard
MELICK, PORTER & SHEA, LLP
28 State Street
Boston, MA  02109
(617) 523-6200

Susan C. Levy
Daniel J. Winters
JENNER & BLOCK LLP
One IBM Plaza
330 North Wabash
Chicago, IL  60611
(312) 222-9350

Dated:  November 17, 2004

## **VERIFICATION**

Charles R. Dall'Acqua states on his oath that he has read the foregoing Defendant

Charles R. Dall'Acqua's Responses to Plaintiff's Monitoring Interrogatories Propounded to

Defendant Charles R. Dall'Acqua and that the facts stated therein are true and correct to the best

of his knowledge and belief.

_____
Charles R. Dall'Acqua

Dated: November _15_, 2004

# DALL'ACQUA PRIVILEGE LOG

Harte-Hanks, Inc. v. Dall'Acqua
(Civil Action No. 04-11548-DPW; D. Mass.)

| Document Number | Date | Description | Privilege[1] |
|---|---|---|---|
| 1 | 3/4/04 | Letter from Barnabei & Katz (outside counsel) to C. Dall'Acqua re employment termination issue | AC |
| 2 | 3/04 | Memorandum by C. Dall'Acqua discussing termination dispute prepared at direction of outside counsel | AC, WP |
| 3 | 3/11/04 | Engagement letter from R. Stucker (outside counsel) to C. Dall'Acqua | AC |
| 4 | 3/11/04 | Invoice for retainer from R. Stucker (outside counsel) to C. Dall'Acqua | AC |
| 5 | 6/29/04 | E-mail from T. Monson (outside counsel) to K. Marhoefer and D. Mungerson (outside counsel) re Martus employment agreement, and subsequent e-mail thread | AC |
| 6 | 6/29/04 | E-mail from T. Monson (outside counsel) to K. Marhoefer and D. Mungerson (outside counsel) re Martus employment agreement, and subsequent e-mail thread | AC |

[1] AC = Attorney-client privilege; WP = Attorney work product privilege

1180676.v1

<u>CERTIFICATE OF SERVICE</u>

I, Matthew Grygorcewicz, hereby certify that on this day, I forwarded notice of the foregoing document(s) by first class mail to:

Mr. David B. Chaffin
Ms. Kathleen Kelly
HARE & CHAFFIN
160 Federal Street, 23rd Floor
Boston, MA 02110-1701

Matthew Grygorcewicz

Date: _____11·17·04_____

EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARTE-HANKS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11548-DPW |
| | ) | |
| CHARLES R. DALL'ACQUA and | ) | |
| PROTOCOL MARKETING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

**CHARLES R. DALL'ACQUA'S FIRST AMENDED OBJECTIONS AND
RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Charles R. Dall'Acqua ("Dall'Acqua"), by his attorneys, hereby objects and

responds to Plaintiff Harte-Hanks, Inc.'s First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

1.      Dall'Acqua objects to these interrogatories on the grounds that they exceed the

maximum number of interrogatories a party may serve under Rule 33(a) of the Federal Rules of

Civil Procedure.  In particular, including all discrete subparts as well as the interrogatories

included in its "Monitoring Interrogatories," Harte-Hanks has submitted well in excess of the

permitted twenty-five (25) interrogatories.

2.      Dall'Acqua objects to these interrogatories to the extent they seek information

which is within the attorney-client privilege, the attorney work product privilege or any other

recognized privilege or immunity.  Dall'Acqua and his counsel hereby assert such privileges and

immunities and will not produce any such protected information.

3.      Dall'Acqua objects to these interrogatories, including the definitions and

instructions, to the extent they seek to impose discovery obligations on Dall'Acqua greater than

those specified in the Federal Rules of Civil Procedure. Dall'Acqua will respond to these

interrogatories in accordance with his obligations pursuant to the Federal Rules of Civil

Procedure.

4.    Dall'Acqua objects to these interrogatories to the extent that any particular

request is overly broad, vague, ambiguous, misleading, subject to differing interpretations or

otherwise objectionable under the Federal Rules of Civil Procedure.

5.    To the extent that any interrogatory calls for information generally available or

otherwise known to defendants, Dall'Acqua objects on the grounds that such request is unduly

burdensome and oppressive.

6.    Dall'Acqua submits these answers and responses without conceding the relevancy

or materiality of the subject matter of any interrogatory, and without prejudice to his right to

object to any further discovery or to object to the admissibility of proof on the subject matter.

7.    Dall'Acqua's investigation continues and, therefore, his responses are

preliminary. Dall'Acqua expressly reserves the right to supplement these responses as necessary

after discovery closes.

8.    All of the above general objections are incorporated by reference into each and

every one of the following specific responses.

**ANSWERS**

1.    Please identify the person answering each interrogatory set forth below, and any
persons who assisted in answering each interrogatory or who provided information used in
preparing the answer, and indicate the information provided by that or those persons.

**ANSWER:**    Dall'Acqua objects to this interrogatory on the grounds it seeks

information protected from disclosure by the attorney-client and attorney work product

privileges. Dall'Acqua further objects to this interrogatory on the grounds it is overly broad and

burdensome.  Without waiving said objections, the following persons provided information in

connection with these responses:  Dall'Acqua and Robert Froetscher.

      2.     Please state the basis for your contention that the signature on the agreement that
is at issue in this case is a forgery.

**ANSWER:**   Dall'Acqua objects to this interrogatory to the extent it seeks information

within the control of Harte-Hanks as to the circumstances of its forging of Dall'Acqua's

signature on the January 25, 2002 Confidentiality/Non-Disclosure Agreement (hereinafter "the

forged agreement" or "the alleged agreement").  Without waiving said objection, Dall'Acqua

contends the forged agreement is not authentic because he did not sign it.  Dall'Acqua

incorporates by reference his affidavit and testimony at the preliminary injunction hearing as to

why he could not have and would not have signed the alleged agreement.  Moreover, the pre-

June 8 conduct of Harte-Hanks (including its failure to reference any such agreement during its

many conversations with, among others, Dall'Acqua, Protocol, or Spencer Stuart and the fact

that it offered Dall'Acqua a six-figure severance package conditioned on his signing a non-

solicitation agreement) establishes the alleged agreement is not authentic.

      Further answering, Dall'Acqua states that his investigation continues and he reserves the

right to supplement this response as necessary after the close of discovery.

      3.     Please set forth each and every fact and circumstance that you contend supports
your allegation that the signature on the agreement at issue in this case is a forgery.

      **ANSWER:**   Dall'Acqua incorporates by reference his response to Interrogatory No. 2.

      4.     Please describe in detail the process pursuant to which you were hired by
Protocol, including in your answer detailed statements, descriptions, or identifications of (a) how
you first became or were identified as a candidate for the position; (b) the negotiations and/or
discussions and/or communications between you and Protocol concerning your candidacy for the
position with Protocol; (c) the identity of all persons who were involved in such negotiations

and/or discussions and/or communications;. (d) every representation or statement by you concerning why you were a suitable candidate and concerning the value that you potentially could bring to Protocol; (e) what was said during each negotiation, discussion, and/or communication concerning your ability to identify and/or obtain for Protocol prospective employees among Harte-Hanks's employees , and sales prospects among Harte-Hanks's customer base.

**ANSWER:**    Dall'Acqua objects to this interrogatory on the grounds it is overly broad,

burdensome, and seeks information more appropriately obtained via deposition discovery.

Dall'Acqua also objects to this interrogatory to the extent it seeks information not in the

possession of Dall'Acqua, but rather other third parties (i.e., Protocol, Willis Stein, Spencer

Stuart).  Dall'Acqua further objects in that much of this information may be derived or

ascertained from the records previously produced by Willis Stein, BCI Partners and Spencer

Stuart relating to Dall'Acqua's recruitment and hiring.  Dall'Acqua, therefore, refers Harte-

Hanks to those documents for the information contained therein.

Without waiving said objections, Dall'Acqua states that in January 2004, he was

contacted by Spencer Stuart regarding his interest in a position with Protocol Services, Inc.

Dall'Acqua responded that he was interested.  On January 16, 2004, Dall'Acqua met Chris

Nadherny (of Spencer Stuart) and Robert Froetscher at O'Hare International Airport to discuss

Protocol and what it was looking for in a new CEO.  Over the course of the next several weeks,

Dall'Acqua met with numerous individuals as part of Protocol's recruiting process, including:

Protocol board members Robert Froetscher, Avy Stein, Bart Goodwin, Howard Hoffman and

Bob Conrads; Protocol's CFO Kurt Marhoefer; Protocol division presidents Jerry Lewis, Jeff

Jarrett and Jeff Baker; and Bain & Company.

During this time, Dall'Acqua also had a number of conversations with Gil Stenholm of

Spencer Stuart regarding the position at Protocol and about Dall'Acqua's desired salary and

other job requirements for taking the position.  On Tuesday, March 9, 2004, Messrs. Froetscher

and Stein met with Dall'Acqua to discuss Dall'Acqua's assessment of Protocol's market position and the steps he would take if he were to become Protocol's CEO. At that dinner, Messrsr. Stein and Froetscher stated their interest in having Dall'Acqua take the Protocol CEO position and described in some detail the title, roles, responsibilities, cash compensation, equity compensation and benefits associated with the position. Negotiations regarding the details of the offer continued over the following ten days. Dall'Acqua signed an employment agreement with Protocol on March 19, 2004, and started work on March 25, 2004.

Over the course of the recruiting process, Dall'Acqua represented that he believed he would be an excellent candidate for the Protocol CEO role due to, among other reasons: his extensive experience in the marketing services industry; his track record as a successful business executive; his leadership; his business management skills; and his work ethic. These qualities were confirmed by various senior Harte-Hanks executives in the course of Protocol's due diligence.

Further answering, Dall'Acqua refers Harte-Hanks to the documents previously produced by Willis Stein, BCI Partners and Spencer Stuart for additional information and details regarding the recruitment process.

5.     Please identity each and every person whom you contend participated in any capacity in the alleged forgery of your signature on the agreement at issue in this case, and, with respect to each such person, state the basis for your contention that he or she participated in the forgery.

**ANSWER:**    Dall'Acqua objects to this interrogatory on the grounds it seeks information within the exclusive control of Harte-Hanks as to the circumstances of its forging Dall'Acqua's signature on the alleged agreement. Dall'Acqua, therefore, cannot respond to this interrogatory and, instead, demands that Harte-Hanks immediately identify the persons who were

involved in creating the forged agreement and disclose the circumstances surrounding the

forgery.

6.    Please describe in full detail the circumstances of the alleged forgery of your
signature on the agreement at issue in this case.

**ANSWER:**    Dall'Acqua incorporates by reference his response to Interrogatory No. 5.

7.    With respect to each and every attempt you or Protocol have made since March 1,
2004, to solicit business from a party known to you to be a current or former customer or client
of Harte-Hanks, please describe all information concerning, or of, Harte-Hanks that was used,
referenced, or relied upon in any respect in connection with the attempt.

**ANSWER:**    Mr. Dall'Acqua objects to this interrogatory on the grounds it requests

information completely irrelevant to this action and not reasonably likely to lead to the discovery

of admissible evidence.  Subject to some explanation as to the arguable relevance of this

information, Dall'Acqua will reconsider his response to this interrogatory.

8.    With respect to each and every attempt you have made since January 31, 2004, to
hire a current or former employee of Harte-Hanks, please identify the current or former
employee and describe all information concerning that current or former employee that was used,
referenced, or relied upon in any respect in connection with the attempt.

**ANSWER:**    Dall'Acqua objects to this interrogatory as vague, ambiguous, and seeking

irrelevant information to the extent it requests information related to Dall'Acqua's involvement

while still employed at Harte-Hanks in hiring employees to work at Harte-Hanks or any conduct

prior to the entry of the preliminary injunction order.  Dall'Acqua further objects on the grounds

that this interrogatory seeks information not reasonably likely to lead to the discovery of

admissible evidence.  Without waiving said objections, Dall'Acqua states that the only Harte-

Hanks employees he hired to work at Protocol were John Martus, Joel Bakal and Deb Kennedy

(after she was terminated by Harte-Hanks).  In connection with these efforts, the only

information Dall'Acqua used, referenced or relied upon was his general knowledge of their capabilities.

9.    Please identify each person who has knowledge of the facts and circumstances relevant to this case, and, for each such person, provide a summary of his or her knowledge.

**ANSWER:**    Dall'Acqua objects to this interrogatory on the grounds it is vague, ambiguous, overly broad, and burdensome.  Dall'Acqua further objects on the grounds that it seeks information within the exclusive control of Harte-Hanks, including, for example, the identities of the persons involved in forging Dall'Acqua's signature on the alleged agreement. Subject to some reasonable narrowing of the scope of this interrogatory, Dall'Acqua will consider supplementing his response.  Dall'Acqua also incorporates by reference his Rule 26 disclosure statement.  Further answering, Dall'Acqua states that his investigation continues and he reserves the right to supplement this response as necessary after the close of discovery.

10.    Please identify each and every document relevant to the facts and circumstances at issue in this case.

**ANSWER:**    Dall'Acqua objects to this request as vague, ambiguous, overly broad and burdensome. Dall'Acqua further objects on the grounds that it seeks information within the exclusive control of Harte-Hanks, including, for example, the identity of any documents relating to the forging of Dall'Acqua's signature on the alleged agreement.  Subject to some reasonable narrowing of the scope of this interrogatory, Dall'Acqua will consider supplementing his response.  Dall'Acqua also incorporates by reference his Rule 26 disclosure statement. Investigation continues.  Further answering, Dall'Acqua states that his investigation continues and he reserves the right to supplement this response as necessary after the close of discovery.

11.    Please describe in full detail how John Martus came to be employed by Protocol.

**ANSWER:**    Dall'Acqua objects to this interrogatory to the extent it seeks information relating to anything beyond Dall'Acqua's personal knowledge regarding the hiring of John Martus.  Dall'Acqua further objects on the grounds that the circumstances surrounding the hiring of Martus are irrelevant to this action; the only pertinent issue is whether the alleged agreement is authentic.  Without waiving said objections, Dall'Acqua states that in mid- to late-April 2004, he contacted Martus regarding possible employment with Protocol.  Martus expressed interest in the position.  Over the next few weeks, Dall'Acqua and Martus discussed Martus' possible employment with Protocol in the position of Controller.  During one such conversation, Dall'Acqua asked Martus if he had any restrictive covenants with Harte-Hanks, and Martus informed Dall'Acqua that he had executed a confidentiality agreement with Harte-Hanks.  Dall'Acqua then asked if Martus had signed any type of non-competition agreement with Harte-Hanks, and Martus stated that he did not.  Martus decided to accept employment at Protocol, and began his employment with Protocol on June 15, 2004.

12.    Please describe in full detail how Joel Bakal came to be employed by Protocol.

**ANSWER:**    Dall'Acqua objects to this interrogatory to the extent it seeks information relating to anything beyond Dall'Acqua's personal knowledge regarding the hiring of Joel Bakal. Dall'Acqua further objects on the grounds that the circumstances surrounding the hiring of Bakal are irrelevant to this action; the only pertinent issue is whether the alleged agreement is authentic.  Without waiving said objections, Dall'Acqua states that he and Bakal have enjoyed a personal and professional relationship for many years.  Their personal relationship continued after Dall'Acqua was terminated by Harte-Hanks, and they spoke on occasion.  During these conversations, the issue of Bakal's possible employment at Protocol arose.  Thereafter, Dall'Acqua and Bakal met to discuss the specifics of Bakal's possible employment at Protocol.