UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04 CV 11548 DPW |
| ) | |
| CHARLES R. DALL'ACQUA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR
LEAVE TO TAKE MORE THAN TEN DEPOSITIONS**

Plaintiff, Harte-Hanks, Inc., submits this memorandum in support of its emergency motion for leave to take more than ten depositions.

**Background**

As the Court is aware, this action arises out of, among other things, Mr. Dall'Acqua's breach of the non-solicitation provision of his Confidentiality/Non-Disclosure Agreement ("Agreement") with Harte-Hanks. Mr. Dall'Acqua alleges that some unnamed person or persons forged his signature on the Agreement.

To establish the authenticity of the Agreement, Harte-Hanks has offered and will offer at trial, among other things, evidence that the other employees for whom Elaine Dernoga was responsible also signed a Confidentiality/Non-Disclosure Agreement within days of Mr. Dall'Acqua's signature of his. As the Court will recall, Ms. Dernoga lost the originals of some of the other employees' agreements during her trip to Boston on August 9, 2004, the day before the evidentiary hearing on Harte-Hanks's motion for a preliminary injunction began.

The Court will recall also that Mr. Dall'Acqua has made much of Ms. Dernoga's loss. He sought to dismiss the case, claiming that the originals were critical evidence. (Docket # 50.) He said that one of his experts, Peter Tytell, would have examined the lost agreements to determine whether their paper matched the paper of the original Dall'Acqua Agreement. (Id. at 1-2, 4-6.) In support of his motion, Mr. Dall'Acqua submitted a report from Peter Tytell in which Mr. Tytell (1) suggested that the paper of the original Dall'Acqua Agreement does not match the paper of other documents (but not contemporaneous ones) bearing Mr. Dall'Acqua's signature, and (2) sought an opportunity to compare the paper of the original Dall'Acqua Agreement with "appropriate documents reliably dated from early January 2002 through the time the [Dall'Acqua Agreement] was first presented . . .." (Id., Ex. B at 2-3.)

In response, Harte-Hanks indicated that (a) it had located other documents that Ms. Dernoga had printed on or about the same day that Mr. Dall'Acqua had signed his Agreement, and (b) its expert, Alan Robillard, had concluded that the paper of these other contemporaneous documents matches the paper of the original Dall'Acqua Agreement. (Docket # 63 at 10, Ex. 2 at 3.)

The Court denied Mr. Dall'Acqua's motion on November 18, 2004.

On December 10, Harte-Hanks's counsel delivered to Mr. Dall'Acqua's counsel (a) the documents that Mr. Robillard had concluded match the Dall'Acqua Agreement, and (b) the original Dall'Acqua Agreement. (Chaffin Dec., ¶ 4.) That same day, Mr. Dall'Acqua's counsel forwarded the matching documents and the original Dall'Acqua Agreement to Mr. Tytell by overnight mail. (Id., Ex. A.) The documents were returned to Harte-Hanks's counsel on December 20, 2004 "[a]fter the completion of [Mr. Tytell's] examination." (Id., ¶ 6, Ex. B.)

2

Supplemental expert reports were due on December 17. Thus, that day, Harte-Hanks served the supplemental reports of its two Questioned Document Examiners, Messrs. Robillard and Gerry Richards. (Copies of the reports (without exhibits) are submitted as exhibits C and D to the accompanying Declaration of David B. Chaffin.) Mr. Dall'Acqua's counsel served only (1) a third supplemental report by Ms. Schuetzner (wherein she effectively conceded that her indented writing analysis, which, as the Court will recall, was trumpeted in Mr. Dall'Acqua's spoliation motion, had been incorrect (Chaffin Dec., Ex. E at Schuetzner report at 7-8)), and (2) new exhibits to Mr. Tytell's prior report. (A copy of Mr. Dall'Acqua's entire supplemental expert submission is attached to the Chaffin Declaration as Exhibit E.) Even though Mr. Tytell had had sufficient time to conduct the comparison that Mr. Dall'Acqua had claimed was critical, and even though the paper necessary for the comparison had been returned to Harte-Hanks's counsel (making it impossible for Mr. Tytell to conduct the paper comparison thereafter), **no opinion was provided by either Dall'Acqua expert concerning whether the paper of the original Dall'Acqua Agreement matches the paper of the other contemporaneous documents. In other words, neither Ms. Schuetzner nor Mr. Tytell (who has completed his examination and returned the documents) has challenged Mr. Robillard's finding (in which Mr. Richards concurs) with respect to the paper match.** (Id.)

Needless to say, Harte-Hanks intends to prove at trial that the other employees signed Confidentiality/Non-Disclosure Agreements. During the last two weeks, Harte-Hanks's counsel repeatedly asked Mr. Dall'Acqua's counsel whether they would stipulate to the authenticity of the other employees' agreements in order to avoid, among other things, the burden and expense of deposing the other employees (some of whom are no longer employed by Harte-Hanks). Mr.

Dall'Acqua's counsel will not stipulate to the other agreements' authenticity, even though (a) a necessary premise of Mr. Dall'Acqua's spoliation motion was that the other agreements are authentic, and (b) Harte-Hanks submitted declarations from most of the other employees (even some who are former employees) confirming the authenticity of the agreements. (Chaffin Dec., ¶¶ 9, 10.)

**Argument**

**THE TEN-DEPOSITION LIMIT SHOULD BE LIFTED**

Proof that the other employees for whom Ms. Dernoga was responsible also signed a Confidentiality/Non-Disclosure Agreements will be an important component of Harte-Hanks's case. Because (1) Mr. Dall'Acqua will not stipulate to the authenticity of the other employees' agreements, and (2) Harte-Hanks cannot be sure that any of the other employees will appear at trial (and knows that some cannot be forced to appear),[1] the only way for Harte-Hanks to ensure that it will have this proof at trial in a form that is unassailable is by deposing the other employees.

Fortunately, the depositions of the other employees probably can be completed in a short time, hopefully in a day or two. Harte-Hanks does not expect to have many more than twenty questions for each of them.

Deposing all of the other employees will consume Harte-Hanks's full allotment of depositions. There are, however, others whom Harte-Hanks must depose, including Messrs. Dall'Acqua, Martus, Bakal, and Froetcher, with whom the Court is familiar based on prior

---

[1] As noted previously, some of these persons no longer work for the company, and there is no guarantee that those who do still work for the company will agree to appear or will be with the company at the time of trial.

filings. In addition, Harte-Hanks intends to depose one or two representatives of the recruiting firm that brought Mr. Dall'Acqua to Protocol. Mr. Dall'Acqua has made an issue of this firm's work, and the firm's documents contain relevant statements. In addition, Harte-Hanks intends to depose Avi Stein, the head of the venture capital firm that apparently is the majority owner of Protocol. Mr. Stein was intimately involved in the hiring of Mr. Dall'Acqua and has made statements that warrant inquiry. In addition, for reasons previously stated, Harte-Hanks wishes to depose Deborah Kennedy. Harte-Hanks may also want to depose a few other individuals, depending on the Court's ruling on the pending motion for a protective order and on what turns up in discovery (including in Mr. Dall'Acqua's supplemental production and responses to interrogatories).

## Conclusion

In summary, because Mr. Dall'Acqua refuses to stipulate to the authenticity of the other employees' agreements, Harte-Hanks will be unable adequately to prepare for trial unless it is relieved from the ten-deposition limit. It respectfully requests such relief.

Dated: January 10, 2005                HARTE-HANKS, INC.,

By its attorneys,

s/David B. Chaffin
David B. Chaffin
BBO# 549245
Kathleen A. Kelley
BBO # 562342
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

## CERTIFICATION OF CONSULTATION

      Pursuant to Local Rule 37.1, I certify that I have conferred with opposing counsel in an attempt to narrow or resolve the issue presented by this motion but have been unable to do so. The consultations included multiple telephone conversations and an exchange of correspondence during the last two weeks. I participated in the conversations and exchange. Messrs. Grygorcewicz and Winters participated on behalf of Mr. Dall'Acqua.

                                          s/David B. Chaffin
                                          David B. Chaffin

422004.0110