UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 04-11548-DPW |
| CHARLES R. DALL'ACQUA, | ) |
| Defendant. | ) |

## DALL'ACQUA'S MOTION TO COMPEL
## PRODUCTION OF ELAINE DERNOGA'S EXPENSE REPORTS

Charles Dall'Acqua, by his attorneys, respectfully seeks entry of an Order compelling Harte-Hanks to produce a complete set of the expense reports of Elaine Dernoga which are being improperly withheld from production. The credibility of Dernoga, who countersigned the alleged forged agreement, is central to this case. The withheld expense reports are necessary to undermine Dernoga's claim regarding what she assumes must have happened on January 25, 2002--the day the non-solicitation agreement at issue in this case was allegedly executed.

The evidence is that Dall'Acqua was traveling that day, which supports Dall'Acqua's claim that he did not sign and could not have signed the agreement on January 25. In response, Dernoga has testified that pursuant to her customary practices and procedures, she must have met with him at BWI Airport that evening to pick up (and countersign) the alleged agreement. Dernoga's expense reports and calendars, however, contain no reference to any such meeting. In response, Dernoga has also testified that she generously did not always seek reimbursement from her employer when traveling on business and must not have done so on that occasion. The

limited records produced to date belie that testimony. In fact the limited records produced so far indicate that Dernoga was meticulous about seeking reimbursement of her out-of-pocket costs, no matter how small or inconsequential. With a complete set of Dernoga's expense reports, the jury will be able to evaluate Dernoga's true practices and procedures regarding reimbursement, and will be able to draw an inference from the absence of any request for reimbursement for an alleged January 25, 2002 meeting at BWI Airport. Accordingly, Dernoga's expense records are relevant and discoverable.

## BACKGROUND

Elaine Dernoga is Harte-Hanks' only witness regarding the authenticity of the alleged non-solicitation agreement at issue in this case. Dernoga does not recall meeting with Dall'Acqua on January 25, 2002 (the date the agreement was allegedly signed). [8/10/04 Trans. at 27, 35.] Nor does she remember anything surrounding the circumstances of the alleged execution of the agreement. [Id. at 19-20, 35.] Yet, to circumvent the fact that Dall'Acqua was traveling and not in the office the day the alleged agreement is dated, Dernoga intimated that based on her customary practice of exchanging materials with him at locations outside the office, she must have picked up the alleged agreement from him at BWI Airport that evening upon his return from a business trip. [See 7/7/04 Dernoga Decl. ¶¶ 6-7; 8/9/04 Dernoga Supp. Decl. ¶¶ 11-12.]

To challenge her testimony on this point, Dall'Acqua requested Dernoga's calendars and expense reports for 2002-04. In particular, Dall'Acqua asked Harte-Hanks to produce:

> *Document Request No. 26*: All expense reports submitted by Elaine Dernoga from January 1, 2002 to the present. [Exhibit A.]

In response, Harte-Hanks objected and refused to produce the requested materials except for the period January 1, 2002 to March 31, 2002.[1] [Harte-Hanks Objections and Responses to Doc. Requests No. 26 (Exhibit B).] Harte-Hanks contends the above request is overly broad, unduly burdensome, and seeks irrelevant materials. [Id.] During the parties' Local Rule 37.1 discussions, Harte-Hanks belatedly agreed to produce only a small handful of her expense reports (those specifically referencing off-site meetings between Dall'Acqua and Dernoga). But, Harte-Hanks continues to refuse to produce a complete set of her expense reports for the requested period--the very records Dall'Acqua needs to counter Dernoga's practice and procedure testimony and to show the jury precisely what her actual practices were in seeking reimbursement of all out-of-pocket costs and expenses, no matter how small or inconsequential.

## ARGUMENT

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.12 (1978) ("The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.").

I.  **HARTE-HANKS SHOULD BE COMPELLED TO PRODUCE ALL OF DERNOGA'S EXPENSE REPORTS FOR REQUESTED PERIOD.**

   A.  Withheld Documents Are Relevant To Undermine Dernoga's Claim Regarding What She Assumes Must Have Happened on January 25, 2002.

A complete set of Dernoga's expense records from the requested period are necessary to permit Dall'Acqua to challenge the veracity of her assumption that she must have picked up (and

---

[1] Harte-Hanks also produced a few random expense reports from 2004 (from roughly April through August 2004, though there are gaps in its production from this period).

countersigned) the alleged agreement at BWI Airport on January 25, 2002 given her purported regular practice of meeting him at locations outside the office to exchange materials. Having relied on her purported practices and procedures as the basis for her testimony, Harte-Hanks cannot now refuse to produce the very documents necessary to establish her actual practices and procedures on this critical issue.

The limited records produced to date indicate Dernoga was fastidious about seeking reimbursement for her out-of-pocket expenses. For example, she sought reimbursement of $5.52 for mileage in connection with a December 7, 2001 meeting with Dall'Acqua at BWI Airport to "drop[] off mail for CRD." [Exhibit C.] And, on the very trip to Boston when she "lost" the original agreements, Dernoga requested reimbursement for an $0.85 granola bar and a $3.17 bottle of water and bag of pretzels.[2] [Exhibit D.]

Evidence regarding the other instances in which Dernoga sought reimbursement for nominal out-of-pocket expenses is important to demonstrate to the jury Dernoga's true practices and procedures regarding seeking reimbursement of all of her out-of-pocket expenses, no matter the amount. In the face of mounting evidence of this type, the absence of such a request regarding the alleged January 25, 2002 meeting with Dall'Acqua at BWI Airport is all the more glaring and incriminating. And, from this evidence, the jury will understand that there never was a meeting at the airport on January 25.

---

[2] Unlike the original agreements, Dernoga did not lose the receipts for these items.

## **CONCLUSION**

WHEREFORE, for the above-stated reasons, Dall'Acqua respectfully requests that the Court enter an Order requiring Harte-Hanks to immediately produce all of Dernoga's expense reports for the period January 2002 through August 2004.

Respectfully submitted,

CHARLES R. DALL'ACQUA

By: _____
One of His Attorneys

John F. Rooney III
Angela L. Lackard
Matthew Grygorcewicz
MELICK, PORTER & SHEA, LLP
28 State Street
Boston, MA 02109
(617) 523-6200

Susan C. Levy
Daniel J. Winters
JENNER & BLOCK LLP
One IBM Plaza
330 North Wabash
Chicago, Illinois 60611
(312) 222-9350

Dated: January 13, 2005

CHICAGO1200514

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I, Daniel J. Winters, counsel for Defendant in the above matter, hereby certify that pursuant to Rule 7.1(A)(2) of the Local Rules of the U.S. District Court of the District of Massachusetts, counsel for Dall'Acqua has conferred with David Chaffin, counsel for the plaintiff Harte-Hanks, Inc., in a good faith effort to resolve or narrow the issues regarding the attached motion to compel. Mr. Chaffin indicated in his letter to me dated January 10, 2005 that Harte-Hanks refuses to withdraw its objections or otherwise produce the requested materials in their entirety.

/s/ Daniel J. Winters

CHICAGO1200514
CHICAGO1200514