# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARTE-HANKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.  04-11548-DPW |
| v. | ) | |
| | ) | |
| CHARLES R. DALL'ACQUA and | ) | |
| PROTOCOL MARKETING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT CHARLES R. DALL'ACQUA'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUESTS TO INSPECT TO PLAINTIFF

Defendant Charles R. Dall'Acqua ("Dall'Acqua"), by his attorneys and pursuant to Federal Rule of Civil Procedure 34, hereby requests that Plaintiff Harte-Hanks, Inc. ("Harte-Hanks") produce for inspection and copying, or to allow for inspection, at a mutually convenient location the following documents or items.

## DEFINITIONS AND INSTRUCTIONS

A.    The term "Plaintiff" shall mean and refer to Harte-Hanks, its attorneys, and all others acting or purporting to act on its behalf.

B.    The term "Defendants" shall mean any defendant named in this case and any officers, directors, employees, agents, attorneys and all others acting or purporting to act on behalf of Defendants.

C.    The term "Complaint" shall mean the Complaint for filed by Harte-Hanks against Dall'Acqua and Protocol on July 12, 2004, in the United States District Court for the District of Massachusetts, bearing the case number 04 CV 11548 DPW.

D.      The term "Purported Dall'Acqua Agreement" shall mean the January 25, 2002 Confidentiality/Non-Disclosure Agreement allegedly entered into between Dall'Acqua and Harte-Hanks which is attached to the Complaint as Exhibit A.

E.      The words "document" or "documents" are used in their customary broad sense and include, but are not limited to, correspondence, letters, personal and business memoranda, notes, diaries, audio or visual recordings, or any other tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure which are within the possession, custody or control of Plaintiff.  The term "document" shall include all drafts and copies of each document if the copies contain any additional writing or are not identical copies of the originals.

F.      The words "refer" or "relate" shall mean, in addition to the customary and usual meaning, to discuss, reflect, assess, record, evidence, mention, constitute or in any way be logically or factually connected with the matter discussed.

G.      Words in the singular shall be construed to include the plural, and words in the plural shall be construed to include the singular, so as to make the words used in the broadest sense possible.

H.      Each document request must be answered separately and in the order shown. Each page of each document must be numerically stamped consecutively or "Bates Stamped," to minimize the chance of any dispute as to which documents were produced, and for identification purposes.  If a document already has been provided in response to a previous document request, the response merely should identify the document; a second copy is not required.

I.      If any requested information is claimed to be privileged, to constitute work product or to be otherwise confidential, state the grounds on which such privilege, work product

or confidentiality is being asserted, and include a brief description of the subject matter of the information withheld, the identity of all persons by whom and to whom the information was communicated, and if the information is contained in a document, the identity of the document.

      J.     Each Document Request constitutes a continuing request for information pursuant to Federal Rule of Civil Procedure 26(e) so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the time of trial.

## DOCUMENT REQUESTS

      1.     Any and all documents identified in Plaintiff's answers to Defendant Charles R. Dall'Acqua's First Set of Interrogatories to Plaintiff.

      2.     Any and all documents which relate to the Purported Dall'Acqua Agreement or its negotiation, including any and all internal or external drafts, correspondences, memoranda, e-mails, circulations of drafts or final copy, analyses, summaries, directions of compliance or non-compliance with the Purported Dall'Acqua Agreement, and any communications between Plaintiff and Dall'Acqua regarding the Purported Dall'Acqua Agreement.

      3.     All Board minutes from meetings from October 2001 to the present where the following topics were discussed:

      i.     Dall'Acqua's employment or termination;

      ii.     The Purported Dall'Acqua Agreement; or

      iii.     Any plan or practice to have employees of Harte-Hanks execute Confidentiality/Non-Disclosure Agreements or Non-Compete Agreements and any discussion regarding the results or status of implementation or compliance with any such plan.

3

4.      Dall'Acqua's personnel file, and other files where documents executed by Dall'Acqua were retained.

5.      All performance evaluations of Dall'Acqua during his period of employment.

6.      Copies of all Confidentiality/Non-Disclosure Agreements executed by employees of Harte-Hanks from July 2001 to the present.

7.      All versions (electronic and printed) of the Confidentiality/Non-Disclosure Agreements which were presented to employees of Harte-Hanks from July 2001 to the present.

8.      All documents referring or relating to any plans commenced in 2001 or 2002 regarding having employees execute Confidentiality/Non-Disclosure Agreements or Non-Compete Agreements, including any reports or documents discussing the results or status of implementation or compliance with any such plan.

9.      All documents referring or relating to Dall'Acqua regarding Dall'Acqua's termination, employment by Protocol or alleged breach of the Purported Dall'Acqua Agreement.

10.      All communications between Dean Blythe and Elaine Dernoga from March 1, 2004 to the present.

11.      All communications between Richard Hochhauser and Elaine Dernoga from March 1, 2004 to the present.

12.      All communication betweens Paul Steven Hacker and Elaine Dernoga from March 1, 2004 to the present.

13.      All documents referring or relating to any communications between Elaine Dernoga and anyone at Harte-Hanks relating to the Purported Dall'Acqua Agreement.

14.      Elaine Dernoga's personnel file.

15.     All calendars, attendance records, travel schedules or other documents detailing the schedule or whereabouts of Elaine Dernoga for the period January 1, 2002 through August 31, 2004.

16.     Joel Bakal's personnel file.

17.     John Martus's personnel file.

18.     All procedures, policies or manuals regarding the retention of personnel files or other employee records in place at Harte-Hanks' Glen Burnie, Maryland office.

19.     All documents regarding efforts taken by Harte-Hanks to replace any employees who have left the employment of Harte-Hanks since January 1, 2004, including but not limited to all documents showing costs and expenses of replacing these individuals.

20.     All documents relating to damages suffered by Harte-Hanks as a result of Dall'Acqua's alleged breach of the Purported Dall'Acqua Agreement.

21.     All documents relating to damages suffered by Harte-Hanks as a result of any actions taken by Defendants since March 1, 2004.

22.     All documents regarding training provided to Joel C. Bakal and John Martus during their period of employment with Harte-Hanks.

23.     Any and all notes, notations, notebooks, diaries, calendar entries and all other documents relating to any of the matters alleged in the Complaint or the Answer.

24.     Any and all written statements and affidavits which refer or relate to any of the matters alleged in the Complaint, the Answer, or any other matter relevant to this case.

25.     Any and all documents relating to any employees allegedly hired or solicited by Defendants, including but not limited to employment contracts, offer letters, correspondence between Plaintiff and the individual employee(s) and personnel files.

5

26.     All expense records submitted by Elaine Dernoga from January 1, 2002 to the present.

27.     All expense records submitted by Dall'Acqua from January 1, 2002 to the present.

28.     Documents sufficient to show the organizational structure of Harte-Hanks (including any organizational charts) for the period (a) immediately prior to Dall'Acqua's termination and (b) subsequent to Dall'Acqua's termination.

29.     All documents where the stamp bearing Dall'Acqua's signature was used.\

30.     All documents supporting Plaintiff's contention that the signature on the Purported Dall'Acqua Agreement is that of Dall'Acqua.

31.     All documents supporting Plaintiff's contention that Dall'Acqua received a copy of the Purported Dall'Acqua Agreement on or prior to January 25, 2002.

32.     All documents concerning any meetings between Elaine Dernoga and Dall'Acqua at the Baltimore-Washington International Airport from January 2000 to the present.

33.     All documents concerning any delivery of documents to Dall'Acqua by Elaine Dernoga at any location other than the offices of Harte-Hanks from January 2000 to the present.

34.     All documents concerning any delivery of documents by Dall'Acqua to Elaine Dernoga at any location other than the offices of Harte-Hanks from January 2000 to the present.

35.     All documents relating or referring to Harte-Hanks' decision not to seek to enforce the Non-Compete Agreement allegedly executed by John Martus on October 13, 2003 against John Martus.

### REQUESTS FOR INSPECTION

1.     Any stamp bearing a likeness of Dall'Acqua's signature.

      2.      Any filing cabinet or storage facility where the Purported Dall'Acqua Agreement was stored from January 25, 2001 to the present.

Dated: September __, 2004          Respectfully submitted,

                                    CHARLES R. DALL'ACQUA

                                    By:_____

                                        John F. Rooney III
                                        Angela L. Lackard
                                        MELICK, PORTER & SHEA, LLP
                                        28 State Street
                                        Boston, MA  02109
                                        (617) 523-6200

                                        Susan C. Levy
                                        Carla J. Rozycki
                                        Darren M. Mungerson
                                        JENNER & BLOCK, LLP
                                        One IBM Plaza
                                        330 N. Wabash
                                        40th Floor
                                        Chicago, IL  60611
                                        (312) 222-9350

                                      Attorneys for Defendant Charles R. Dall'Acqua

7

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HARTE-HANKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04 CV 11548 DPW |
| | ) | |
| CHARLES R. DALL'ACQUA and | ) | |
| PROTOCOL MARKETING GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO DEFENDANT CHARLES R. DALL'ACQUA'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUESTS TO INSPECT TO PLAINTIFF

Plaintiff, Harte-Hanks, Inc. ("Harte-Hanks"), responds as follows to Defendant Charles R. Dall'Acqua's First Request for Production of Documents and Requests to Inspect to Plaintiff (the "First Request").

### General Objections

Harte-Hanks asserts the following general objections to the First Request. References herein to the general objections indicate that the general objections have been raised to limit, and apply to, the response.

1.     Harte-Hanks objects to the definition of "Plaintiff" on the grounds that it is vague, ambiguous, and overly broad, and that it is unfair in that it purports to impose on Harte-Hanks an obligation to determine or to assume the motivation for the conduct of third parties. In responding to the First Request, Harte-Hanks has taken the term "Plaintiff" to mean Harte-Hanks, including its employees and agents.

2.    Harte-Hanks objects to the First Request to the extent it purports to impose obligations that are greater than those under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts.  For example, Harte-Hanks objects to Instruction H on the ground that there is no requirement under the rules that "[e]ach page of each document must be numerically stamped consecutively or "Bates Stamped[.]"

3.    Harte-Hanks objects to the First Request to the extent it seeks the disclosure of information protected or covered by rights of confidentiality and/or privacy, including the attorney-client privilege, the work product doctrine, and every other judicially-recognized privilege or protection.  Documents will be produced pursuant and subject to the Confidentiality Stipulation and Order in effect between the parties.

4.    In providing this response and producing documents, Harte-Hanks does not in any way waive or intend to waive, but rather intends to preserve and is preserving:

(a)    all objections as to competency, relevancy, materiality, and admissibility;

(b)    all rights to object on any ground to the use of any of the responses herein or any of the documents produced pursuant hereto in any subsequent proceedings, including the trial of this or any other action; and

(c)    all rights to object on any grounds to any further document requests.

5.    This response is based on information now known.  Harte-Hanks reserves the right to amend, modify, or supplement this response.

6.    A statement that "Harte-Hanks will produce" a category of documents is not an indication that the factual premise for the request for the category of documents is correct, that the category of documents exists, or that any documents within the category exist, but is, rather,

2

an undertaking to determine whether the factual premise is correct, and, if so, to determine

whether such a category of documents exists, and, if so, to conduct a reasonable search for such

documents and to produce any discoverable documents found during such search.

## Document Requests and Responses

### Request No. 1

Any and all documents identified in Plaintiffs answers to Defendant Charles R.
Dall'Acqua's First Set of Interrogatories to Plaintiff.

### Response

Subject to and without waiving its general objections, Harte-Hanks will produce the

documents.

### Request No. 2

Any and all documents which relate to the Purported Dall'Acqua Agreement or its
negotiation, including any and all internal or external drafts, correspondences, memoranda,
emails, circulations of drafts or final copy, analyses, summaries, directions of compliance or
noncompliance with the Purported Dall'Acqua Agreement, and any communications between
Plaintiff and Dall'Acqua regarding the Purported Dall'Acqua Agreement.

### Response

Subject to and without waiving its general objections, Harte-Hanks will produce the

documents.

### Request No. 3

All Board minutes from meetings from October 2001 to the present where the following
topics were discussed:

   i.  Dall'Acqua's employment or termination;

   ii.  The Purported Dall'Acqua Agreement; or
   iii.  Any plan or practice to have employees of Harte-Hanks execute
     Confidentiality/Non-Disclosure Agreements or Non-Compete Agreements
     and any discussion regarding the results or status of implementation or
     compliance with any such plan.

**Response**

Harte-Hanks objects specifically to Request 3 on the grounds that it is overly broad and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce documents relating to the topics listed above.

**Request No. 4**

Dall'Acqua's personnel file, and other files where documents executed by Dall'Acqua were retained.

**Response**

Harte-Hanks objects specifically to Request No. 4 on the grounds that the term "other files where documents executed by Dall'Acqua were retained" is vague and ambiguous. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents contained in Dall'Acqua's personnel file, as well as documents relating to Dall'Acqua retained in Glen Burnie, MD, and Harte-Hanks's corporate offices in San Antonio, Texas.

**Request No. 5**

All performance evaluations of Dall'Acqua during his period of employment.

**Response**

Harte-Hanks objects specifically to Request No. 5 on the grounds that it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents.

**Request No. 6**

Copies of all Confidentiality/Non-Disclosure Agreements executed by employees of Harte-Hanks from July 2001 to the present.

4

**Response**

Harte-Hanks objects specifically to Request 6 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce Confidentiality/Non-Disclosure Agreements executed by employees of Harte-Hanks with respect to whom Elaine Dernoga was responsible for obtaining the signatures.

**Request No. 7.**

All versions (electronic and printed) of the Confidentiality/Non-Disclosure Agreements which were presented to employees of Harte-Hanks from July 2001 to the present.

**Response**

Harte-Hanks objects specifically to Request 7 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce versions of the Confidentiality/Non-Disclosure Agreement to which Elaine Dernoga had access.

**Request No. 8**

All documents referring or relating to any plans commenced in 2001 or 2002 regarding having employees execute Confidentiality/Non-Disclosure Agreements or Non-Compete Agreements, including any reports or documents discussing the results or status of implementation or compliance with any such plan.

**Response**

Harte-Hanks objects specifically to Request 8 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and

5

general objections, Harte-Hanks will produce the documents.

**Request No. 9**

All documents referring or relating to Dall'Acqua regarding Dall'Acqua's termination, employment by Protocol or alleged breach of the Purported Dall'Acqua Agreement.

**Response**

Harte-Hanks objects specifically to Request 9 on the grounds that it is ambiguous and

confusing in its reference to documents "relating to Dall'Acqua regarding Dall'Acqua's

termination, employment by Protocol or alleged breach of the Purported Dall'Acqua

Agreement." Subject to and without waiving its specific and general objections, Harte-Hanks

will produce documents regarding Dall'Acqua's termination, employment by Protocol, or

alleged breach of the Purported Dall'Acqua Agreement.

**Request No. 10**

All communications between Dean Blythe and Elaine Dernoga from March 1, 2004 to the present.

**Response**

Harte-Hanks objects specifically to Request 10 on the grounds that it is overly broad and

unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to

lead to the discovery of admissible evidence and documents that are or may be protected from

disclosure under the attorney-client privilege and/or the attorney work-product doctrine. Subject

to and without waiving its specific and general objections, Harte-Hanks will produce documents

constituting discoverable communications between Dean Blythe and Elaine Dernoga from

March 1, 2004 to the present relating to Dall'Acqua's Confidentiality/Non-Disclosure

Agreement.

6

**Request No. 11**

All communications between Richard Hochhauser and Elaine Dernoga from March 1, 2004 to the present.

**Response**

Harte-Hanks objects specifically to Request 11 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce documents constituting communications between Richard Hochhauser and Elaine Dernoga from March 1, 2004 to the present relating to Dall'Acqua's Confidentiality/Non-Disclosure Agreement.

**Request No. 12**

All communication between Paul Steven Hacker and Elaine Dernoga from March 1, 2004 to the present.

**Response**

Harte-Hanks objects specifically to Request 12 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence and documents that are or may be protected from disclosure under the attorney-client privilege and/or the attorney work-product doctrine. Subject to and without waiving its specific and general objections, Harte-Hanks will produce documents constituting discoverable communications between Paul Steven Hacker and Elaine Dernoga from March 1, 2004 to the present relating to Dall'Acqua's Confidentiality/Non-Disclosure Agreement.

**Request No. 13**

All documents referring or relating to any communications between Elaine Dernoga and

7

anyone at Harte-Hanks relating to the Purported Dall'Acqua Agreement.

**Response**

      Harte-Hanks objects specifically to Request 13 on the grounds that it is overly broad,

unduly burdensome, and unlimited as to time, and it seeks documents that are neither relevant

nor reasonably likely to lead to the discovery of admissible evidence and are or may be protected

from disclosure under the attorney-client privilege and/or the attorney work-product doctrine.

Subject to and without waiving its specific and general objections, Harte-Hanks will produce

discoverable documents constituting communications between Elaine Dernoga and anyone at

Harte-Hanks from November 2001 to the present relating to Dall'Acqua's Confidentiality/Non-

Disclosure Agreement.

**Request No. 14**

      Elaine Dernoga's personnel file.

**Response**

      Harte-Hanks objects specifically to Request 14 on the grounds that it is overly broad and

unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to

lead to the discovery of admissible evidence.  Subject to and without waiving its general

objections, Harte-Hanks will produce the documents.

**Request No. 15**

      All calendars, attendance records, travel schedules or other documents detailing the
schedule or whereabouts of Elaine Dernoga for the period January 1, 2002 through August 31,
2004.

**Response**

      Harte-Hanks objects specifically to Request 15 on the grounds that it is overly broad and

unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to

lead to the discovery of admissible evidence and documents that are private. Subject to and

without waiving its specific and general objections, Harte-Hanks will produce the described

documents for the period of January 1, 2002 to March 31, 2002.

**Request No. 16**

Joel Bakal's personnel file.

**Response**

Harte-Hanks objects specifically to Request 16 on the grounds that it is overly broad and

unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to

lead to the discovery of admissible evidence. Subject to and without waiving its specific and

general objections, Harte-Hanks will produce the documents.

**Request No. 17**

John Martus's personnel file.

**Response**

Harte-Hanks objects specifically to Request 17 on the grounds that it is overly broad and

unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to

lead to the discovery of admissible evidence. Subject to and without waiving its specific and

general objections, Harte-Hanks will produce the documents.

**Request No. 18**

All procedures, policies or manuals regarding the retention of personnel files or other
employee records in place at Harte-Hanks' Glen Burnie, Maryland office.

**Response**

Harte-Hanks objects specifically to Request 18 on the grounds that it is overly broad and

unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to

9

lead to the discovery of admissible evidence. Subject to and without waiving its specific and

general objections, Harte-Hanks will produce the documents.

### Request No. 19

All documents regarding efforts taken by Harte-Hanks to replace any employees who
have left the employment of Harte-Hanks since January 1, 2004, including but not limited to all
documents showing costs and expenses of replacing these individuals.

### Response

Harte-Hanks objects specifically to Request 19 on the grounds that it is overly broad and

unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to

lead to the discovery of admissible evidence. Subject to and without waiving its specific and

general objections, Harte-Hanks will produce the described documents relating to John Martus

and Joel Bakal.

### Request No. 20

All documents relating to damages suffered by Harte-Hanks as a result of Dall'Acqua's
alleged breach of the Purported Dall'Acqua Agreement.

### Response

Subject to and without waiving its general objections, Harte-Hanks will produce the

documents.

### Request No. 21

All documents relating to damages suffered by Harte-Hanks as a result of any actions
taken by Defendants since March 1, 2004.

### Response

Subject to and without waiving its general objections, Harte-Hanks will produce the

documents.

10

**Request No. 22**

All documents regarding training provided to Joel C. Bakal and John Martus during their period of employment with Harte-Hanks.

**Response**

Harte-Hanks objects specifically to Request 22 on the grounds that it is overly broad, and it is vague and ambiguous in its use of the term "training." Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents.

**Request No. 23**

Any and all notes, notations, notebooks, diaries, calendar entries and all other documents relating to any of the matters alleged in the Complaint or the Answer.

**Response**

Harte-Hanks objects specifically to Request 23 on the grounds that it is vague and ambiguous, and it purports to require Harte-Hanks to guess at which documents Dall'Acqua believes "relat[e] to any of the matters alleged in the Complaint or the Answer." Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents it believes are related to and/or support its claims.

**Request No. 24**

Any and all written statements and affidavits which refer or relate to any of the matters alleged in the Complaint, the Answer, or any other matter relevant to this case.

**Response**

No such documents other than those on file with the Court exist.

**Request No. 25**

Any and all documents relating to any employees allegedly hired or solicited by Defendants, including but not limited to employment contracts, offer letters, correspondence between Plaintiff and the individual employee(s) and personnel files.

11

**Response**

Harte-Hanks objects to Request 26 on the grounds that it is overly broad and unduly burdensome and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents.

**Request No. 26**

All expense records submitted by Elaine Dernoga from January 1, 2002 to the present.

**Response**

Harte-Hanks objects specifically to Request 26 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will Ms. Dernoga's expense records from January 1, 2002 to March 31, 2002.

**Request No. 27**

All expense records submitted by Dall'Acqua from January 1, 2002 to the present.

**Response**

Harte-Hanks objects specifically to Request 27 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents.

**Request No. 28**

Documents sufficient to show the organizational structure of Harte-Hanks (including any organizational charts) for the period (a) immediately prior to Dall'Acqua's termination and (b) subsequent to Dall'Acqua's termination.

12

**Response**

Harte-Hanks objects specifically to Request 28 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents.

**Request No. 29**

All documents where the stamp bearing Dall'Acqua's signature was used.

**Response**

Harte-Hanks objects specifically to Request 29 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks states that it is unaware of any such stamp.

**Request No. 30**

All documents supporting Plaintiffs contention that the signature on the Purported Dall'Acqua Agreement is that of Dall'Acqua.

**Response**

Subject to and without waiving its general objections, Harte-Hanks will produce the documents.

**Request No. 31**

All documents supporting Plaintiffs contention that Dall'Acqua received a copy of the Purported Dall'Acqua Agreement on or prior to January 25, 2002.

**Response**

Subject to and without waiving its general objections, Harte-Hanks will produce the documents.

13

**Request No. 32**

All documents concerning any meetings between Elaine Dernoga and Dall'Acqua at the Baltimore-Washington International Airport from January 2000 to the present.

**Response**

Harte-Hanks objects specifically to Request 32 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents.

**Request No. 33**

All documents concerning any delivery of documents to Dall'Acqua by Elaine Dernoga at any location other than the offices of Harte-Hanks from January 2000 to the present.

**Response**

Harte-Hanks objects specifically to Request 33 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents .

**Request No. 34**

All documents concerning any delivery of documents by Dall'Acqua to Elaine Dernoga at any location other than the offices of Harte-Hanks from January 2000 to the present.

**Response**

Harte-Hanks objects specifically to Request 34 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections, Harte-Hanks will produce the documents.

14

**Request No. 35**

All documents relating or referring to Harte-Hanks' decision not to seek to enforce the Non-Compete Agreement allegedly executed by John Martus on October 13, 2003 against John Martus.

**Response**

Harte-Hanks objects specifically to Request 35 on the grounds that it is overly broad and unduly burdensome, and it seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence, and documents that are or may be protected from disclosure under the attorney-client privilege and/or the attorney work-product doctrine. Subject to and without waiving its specific and general objections, Harte-Hanks will produce any discoverable documents.

## REQUESTS FOR INSPECTION

**Request No. 1**

Any stamp bearing a likeness of Dall'Acqua's signature.

**Response**

Subject to and without waiving its general objections, Harte-Hanks states that it is unaware of the item.

**Request No. 2**

Any filing cabinet or storage facility where the Purported Dall'Acqua Agreement was stored from January 25, 2001 to the present.

15

**Response**

Subject to and without waiving its general objections, Harte-Hanks will make the item

available for inspection in Glen Burnie, Maryland.

Dated: November 3, 2004                         HARTE-HANKS, INC.,

                                                By its attorneys,


                                                David B. Chaffin
                                                BBO# 549245
                                                Kathleen A. Kelley
                                                BBO # 562342
                                                HARE & CHAFFIN
                                                160 Federal Street
                                                Boston, Massachusetts 02110
                                                (617) 330-5000

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by hand on
counsel of record this 3rd day of November, 2004.


                                                Kathleen A. Kelley


422004.091504


16