UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTE-HANKS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES R. DALL'ACQUA, )<br>)<br>Defendant. )<br>) | Civil Action No. 04 CV 11548 DPW |

**RESPONSE TO MOTION TO COMPEL PRODUCTION OF
ALL OF ELAINE DERNOGA'S EXPENSE REPORTS**

Plaintiff, Harte-Hanks, Inc., hereby responds to, but does not oppose, Mr. Dall'Acqua's motion to compel the production of all of Elaine Dernoga's expense reports (the "Motion").

**Argument[1]**

On December 29, 2004, the undersigned had a Rule 37.1 conference with one of Mr. Dall'Acqua's Boston co-counsel, Mr. Grygorcewicz. Most of the conversation related to the shortcomings in Mr. Dall'Acqua's responses to Harte-Hanks's discovery requests. At the end of the conversation, Mr. Grygorcewicz identified a limited quantity of additional discovery Mr. Dall'Acqua wanted Harte-Hanks to supply. (Chaffin Dec., Ex. A.)

For example, Mr. Grygorcewicz said that Mr. Dall'Acqua wanted to see all of Ms. Dernoga's expense reports. The undersigned responded that, if memory served, her expense reports for January 2002 and March 2004 through the initiation of the suit had been provided

---

[1] Citations are to the accompanying Declaration of David B. Chaffin in Response to Motion to Compel all of Elaine Dernoga's Expense Reports.

because they covered the relevant periods. He asked Mr. Grygorcewicz to explain the relevance of the others. Frankly, other than saying that he did not want to reveal strategy, no explanation was provided. Mr. Grygorcewicz also pointed out that the report for May had not been produced. The undersigned advised him that if the May report had not been produced, it was an oversight that would be cured; he also said that reports as to which no basis for production had been provided would not be provided. (Chaffin Dec., Ex. A at 4-5.)

The issue did not die there. On Friday, January 7 (after 4:00 p.m.), the undersigned received a letter from one of Mr. Dall'Acqua's Chicago co-counsel, Mr. Winters. With respect to the expense reports, he said:

> You continue to refuse to produce these materials for the entire period requested. These materials are necessary, among other reasons, to probe the instances in which Ms. Dernoga met with Mr. Dall'Acqua outside the office (including at BWI Airport) and to determine how often she traveled via airplane. Given your position, we will move to compel

(Chaffin Dec., Ex. B at 1.)

The undersigned responded to Mr. Winters on Monday, January 10. As to the expense reports, he wrote:

> You mischaracterize my conversation with Mr. Grygorcewicz. As noted in my 12/31 letter, he was unable to explain the relevance or potential relevance of the expense reports and calendars. You have articulated your reasons for wanting to see the expense reports, but the request remains overly broad. I will ask Ms. Dernoga to compile all expense reports and calendar entries that indicate or relate to any meetings at BWI and any travel via airplane. Purely personal entries on her calendar will be redacted. In contrast to your client's expense reports, all of which are relevant in view of his testimony at the hearing, all of Ms. Dernoga's expense reports and calendars are not either relevant or reasonably calculated to lead to the discovery of admissible evidence.

(Chaffin Dec., Ex. C at 6.)

Still not satisfied, and apparently seeking another pretext for argument, Mr. Dall'Acqua moves to compel all of Ms. Dernoga's expense reports. Stretching, Mr. Dall'Acqua now claims:

> The evidence is that Dall'Acqua was travelling [on January 25, 2002], which supports Dall'Acqua's claim that he did not sign and could not have signed the agreement on January 25. In response, Dernoga has testified that pursuant to her customary practices and procedures, she must have[2] met with him at BWI Airport that evening to pick up (and countersign) the alleged agreement. Dernoga's expense reports and calendars, however, contain <u>no</u> reference to any such meeting.[3] In response, Dernoga has also testified that she generously[4] did not always seek reimbursement from her employer when traveling on business and must not have done so on that occasion. The limited records produced to date belie that testimony. If fact the limited records produced so far indicate that Dernoga was meticulous about seeking reimbursement of her out-of-pocket costs, no matter how small or inconsequential.[5] With a complete set of Dernoga's expense reports, the jury will be able to evaluate Dernoga's true practices and procedures regarding reimbursement, and will be able to draw an inference from the absence of any request for any reimbursement for an alleged January 25, 2002 meeting at BWI Airport. Accordingly, Dernoga's expense records are relevant and discoverable.

(Motion at 1-2.)[6]

Had Mr. Dall'Acqua's counsel previously articulated this theory – far-fetched though it may be – this Motion would not have been necessary. Harte-Hanks will produce the expense

---

[2]   One will search the record of the evidentiary hearing in vain for any such testimony.

[3]   One will find in the record Ms. Dernoga's explanation that if she met Mr. Dall'Acqua at BWI on the way to or from work, she did not seek reimbursement for the mileage because the airport was on the route she commutes. Mr. Dall'Acqua neglects to mention this testimony.

[4]   The tone of Mr. Dall'Acqua's papers is becoming increasingly snide.

[5]   Notably, Mr. Dall'Acqua continues to make factual assertions and to provide no evidentiary support for them. Nowhere in his motion (which, incidentally, does not comply with the Local Rules) does he support the assertions concerning Ms. Dernoga's habits.

[6]   According to Mr. Dall'Acqua's counterclaim, behind the allegedly-forged agreement is a vast anti-competitive conspiracy. According to the Motion, Ms. Dernoga is the culprit. (<u>See</u> footnote 4.) Of course, Mr. Dall'Acqua has already shown that he will argue whatever is convenient at the moment.

reports. Harte-Hanks is hopeful, but not optimistic, that Mr. Dall'Acqua will be similarly forthcoming.

## Conclusion

For the foregoing reasons, the Motion should be denied as moot.

Dated: January 14, 2005

Respectfully submitted,

HARTE-HANKS, INC.,

By its attorneys,

s/David B. Chaffin
David B. Chaffin
BBO No. 549245
Kathleen A. Kelley
BBO No. 562342
HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

422004.011405