UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HARTE-HANKS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES R. DALL'ACQUA, )<br>)<br>Defendant. )<br>) | Civil Action No. 04 CV 11548 DPW |

**MEMORANDUM IN SUPPORT OF MOTION TO
COMPEL PRODUCTION OF DOCUMENTS AND
<u>RESPONSES TO INTERROGATORIES</u>**

Plaintiff, Harte-Hanks, Inc., submits this memorandum in support of its motion to compel Mr. Dall'Acqua to produce certain documents and to respond to certain interrogatories.

**Preliminary Statement**

Harte-Hanks has devoted hundreds of hours to, and spent many thousands of dollars on, its responses to Mr. Dall'Acqua's discovery. Tens of thousands of documents have been reviewed, and thousands have been produced. Interrogatory responses have been provided and supplemented twice to address concerns raised by Mr. Dall'Acqua's counsel. Currently, all but perhaps one of Mr. Dall'Acqua's counsel's concerns with respect to Harte-Hanks's responses have been addressed, and that one will be addressed very soon.

Mr. Dall'Acqua, in contrast, is stonewalling. As discussed below, despite extensive reasoned and reasonable prompting, he continues to refuse to provide documents and information to which Harte-Hanks is entitled. He should be compelled to provide the documents and

information.

## Argument

### I. MR. DALL'ACQUA IS WITHHOLDING DISCOVERABLE DOCUMENTS

A.  **Documents Concerning Mr. Dall'Acqua's Employment With Harte-Hanks**

Harte-Hanks's first request for production of documents, which was served in September, contained multiple individual requests seeking documents concerning the terms and conditions of Mr. Dall'Acqua's employment with Harte-Hanks and concerning his activities that breach or potentially breach his Confidentiality/Non-Disclosure Agreement. (The individual requests include numbers 1, 8, 19, 22, 27, 46, and 49. (Declaration of David B. Chaffin in Support of Motion to Compel ("Chaffin Dec."), Ex. A, ¶¶ 1, 8, 19, 22, 27, 46, 49.))

On December 31, Harte-Hanks's counsel proposed to narrow the requests to six categories of documents. (Chaffin Dec., Ex. B at 2.) On January 7, Mr. Dall'Acqua's co-counsel, Mr. Winters, indicated that all documents concerning two of the categories had been produced. He objected, however, to producing all documents concerning the other four, which are (1) the terms and conditions of Mr. Dall'Acqua's employment at Harte-Hanks, (2) Mr. Dall'Acqua's compensation at Harte-Hanks, (3) agreements with Harte-Hanks, and (4) efforts to solicit any Harte-Hanks employees or former employees, including Deborah Kennedy. (Chaffin Dec., Ex. C at 3.) He wrote:

> As to your request for documents regarding the terms and conditions of [Mr. Dall'Acqua's] employment at Harte-Hanks, his compensation at Harte-Hanks, and any agreements he had with Harte-Hanks, **we do not understand this request.** These materials are all within your client's exclusive possession, custody and control. Also, given Mr. Dall'Acqua's 20+ year career at Harte-Hanks, your

2

>requests are overly broad and burdensome. If there is something in particular you are interested in, please advise. Finally, as to your item six, though we stand on our stated objections, we will follow-up regarding any pre-TRO potential employment-related communications with Ms. Kennedy and any other Harte-Hanks' (sic) employees and supplement our production, as necessary, in due course.

(Chaffin Dec., Ex. C at 3 (emphasis added) .)

On January 10, the undersigned replied to the January 7 letter. (Chaffin Dec., Ex. D.) In addition to objecting generally to the slow responses by Mr. Dall'Acqua's counsel, the undersigned (a) objected to the claim that the requests were not understood, (b) offered to narrow the time-frame to 1998 forward (based on Mr. Dall'Acqua's response to an interrogatory suggesting that the events of that year forward are relevant), and (c) objected to the objection that the documents need not be produced because they allegedly are in the exclusive possession, custody, and control of Harte-Hanks. ((Chaffin Dec., Ex. D at 3.) In addition, the undersigned made clear that Mr. Dall'Acqua should produce all documents concerning his efforts to solicit any Harte-Hanks employees, including telephone records and expense reports submitted to Protocol in which he sought reimbursement for any expense incurred in connection with contact with a Harte-Hanks employee (the notion being that if he sought reimbursement, the contact was not a personal contact). (Chaffin Dec., Ex. D at 3.)

Because time is growing very short, the January 10 letter requested a response by the close of business on January 12. (Chaffin Dec., Ex. D at 4.) The 12th came and went without a response, as did the 13th. Today, the undersigned received a further letter from Mr. Winters in which he moved not an inch from his previous position. (Chaffin Dec., Ex. E at 2.) No additional documents concerning the four subject matter categories have been produced.

3

The documents should be produced. They obviously are relevant, and Mr. Dall'Acqua's objections have no merit.

## II. MR. DALL'ACQUA'S INTERROGATORY RESPONSES ARE INADEQUATE

### A.    Interrogatories In General

In several of his interrogatory responses, Mr. Dall'Acqua purports to incorporate by reference his prior testimony and affidavits. The undersigned advised Mr. Dall'Acqua's counsel that this approach is incorrect and asked that the responses be corrected. (Chaffin Dec., Ex. B at 3.) On January 7, Mr. Dall'Acqua's counsel wrote, "[g]iven the rather limited amount of testimony and declarations submitted to date in this case, **I do not understand** your request in this regard. If there is a particular response that you do not understand, please advise." (Chaffin Dec., Ex. C at 4 (emphasis added).)

On January 10, the undersigned repeated the objection to incorporation by reference, citing authority, including Mahoney v. Kempton, 142 F.R.D. 32, 33 (D. Mass. 1992) (Collings, M. J.), and reminding opposing counsel of the Court's directive with respect to Mr. Dall'Acqua's responses to Harte-Hanks's interrogatories. (Chaffin Dec., Ex. D at 4-5.) A response by the close of business on January 12 was requested, but none was received. (Chaffin Dec., Ex. D at 5, Ex. E.)

Today, the undersigned received a letter from Mr. Winters in which he said that he does "not understand your insistence on this point . . .," but offered to "provide page and line cites to the specific testimony referenced." (Chaffin Dec., Ex. E at 3.)

Proper responses to the interrogatories should be provided. Incorporation by reference of

4

other materials, other than business records, is not permissible. See, e.g., Mahoney, 142 F.R.D. at 33.

**B.    Interrogatories 2, 3, and 4**

These interrogatories sought in various ways the basis for Mr. Dall'Acqua's contention that his agreement is forged and the circumstances surrounding his hiring by Protocol. In response to all of them, Mr. Dall'Acqua made reference to contacts, sometimes called "due diligence," between Protocol (and others) on the one hand and, variously, "Harte-Hanks" and "various senior Harte-Hanks executives" on the other, wherein the party conducting the "due diligence" allegedly was told, among other things, that Mr. Dall'Acqua had no restrictive agreements. (Chaffin Dec., Ex. F, responses to interrogatories 2, 3, and 4 (pages unnumbered).) In paragraph 22 of his counterclaim, Mr. Dall'Acqua alleges that a "senior Harte-Hanks human resources manager also reviewed Dall'Acqua's personnel files and confirmed [to Protocl] the it accurately reflected the information provided by Dall'Acqua regarding his employment at Harte-Hanks. The human resources manager said nothing indicating Dall'Acqua was subject to any restrictive covenant." (Defendant Charles R. Dall'Acqua's and Protocol Services, Inc.'s Amended Answer and Defendant Dall'Acqua's Counterclaims ("Amended Answer and Counterclaims"), ¶ 22.) Mr. Dall'Acqua failed, however, to identify the persons who allegedly provided this information or the surrounding circumstances.

In December, the undersigned insisted that Mr. Dall'Acqua needed to supplement his responses to these interrogatories to identify the "who what, when, where, etc., of these conversations." (Chaffin Dec., Ex. B at 3.) On January 7, his Chicago counsel wrote only the following in response to the very specific request that Mr. Dall'Acqua identify the "who, what,

5

when, were, etc." of these alleged contacts:

> We do not know who was involved in forging the agreement. We intend to continue to investigate that subject in discovery. And, we hereby renew our request that Harte-Hanks disclose all information within its possession regarding the circumstances of the forgery.
>
> We believe our response provides more than adequate detail regarding the circumstances surrounding the hiring of Mr. Dall'Acqua, and is consistent with the responses Harte-Hanks has provided in response to our discovery requests. Please advise what information within Mr. Dall'Acqua's knowledge you believe is missing.

(Chaffin Dec., Ex. C at 4.) On January 10, the undersigned responded:

> Dan, you have completely dodged the issue as to these interrogatories, and you know it. Let me know on Wednesday whether you will provide the very small amount of information we are seeking, and on which your client intends to rely and has relied. You can't have things all ways. See above with respect to sanctions.[1]

(Chaffin Dec., Ex. D at 5.)

Today, Mr. Winters once again refused to provide this information. (Chaffin Dec., Ex. E at 3.)

Mr. Dall'Acqua is relying on the alleged contacts as to which Harte-Hanks seeks detailed information. He simply must provide this information, and his blatant stonewalling as to it is improper.[2]

C.   **Interrogatory 9**

Interrogatory 9 asked Mr. Dall'Acqua to identify all persons with relevant knowledge and

---

[1] The reference to sanctions was to a prior reference in the letter to the Court's warning concerning Mr. Dall'Acqua's responses to Harte-Hanks's interrogatories. Mr. Dall'Acqua's refusal to provide the information at issue here warrants sanctions. Not only does he refer to, but refuse to provide sufficient information as to, these contacts in his interrogatory responses, but he relies on these same contacts in his counterclaim.

[2] Indeed, this information is so clearly relevant and Mr. Dall'Acqua's refusal to provide it so clearly improper that he should be sanctioned.

to provide a summary of each person's knowledge. In response, Mr. Dall'Acqua objected and simply referred Harte-Hanks to his Rule 26 voluntary disclosures, which list literally dozens of people (most without addresses). In December, the undersigned asked Mr. Dall'Acqua's counsel to supplement. (Chaffin Dec., Ex. B at 4.)

On January 7, Mr. Dall'Acqua's Chicago counsel wrote:

> We will supplement our Rule 26 Disclosures to include a "Subject(s)" column comparable to that provided by Harte-Hanks. To the extent you seek more detailed information, then any exchange will need to be reciprocal.

(Chaffin Dec., Ex. C at 4.) On January 10, the undersigned pointed out that the flaw in the logic of Chicago counsel's insistence on reciprocity is that Mr. Dall'Acqua did not propound an interrogatory like Interrogatory 9. (Chaffin Dec., Ex. D at 5.) The request for the information was renewed and a response to the request by January 12 was requested. (Chaffin Dec., Ex. D at 5.)

Today, Mr. Winters, continuing to ignore the flaw in his logic and to confuse the issue, wrote, "Your demand for one-sided discovery is unfortunate and improper, though reflective of your litigation tactics. The dictates of Rule 26 apply equally to both parties. As indicated, we will provide an amended Rule 26(a)(1)(A) disclosure next week." (Chaffin Dec., Ex. E at 4.)

The information should be provided. It obviously is relevant, and Mr. Dall'Acqua's objections have no merit, including his insistence on reciprocity to which he is not entitled.

### III. MR. DALL'ACQUA'S RESPONSES TO HARTE-HANKS'S REQUESTS RELATING TO HIS COUNTERCLAIM ARE INSUFFICIENT

On December 7, Harte-Hanks served two interrogatories and a second request for production, all seeking information concerning Mr. Dall'Acqua's counterclaim. (Chaffin Dec., ¶

8.) Mr. Dall'Acqua responded on January 10. (Actually, the responses to the interrogatories are not complete, for no verification has been provided.) (Chaffin Dec., Ex. G.) Late that evening, Harte-Hanks's counsel emailed Mr. Dall'Acqua's Chicago counsel, seeking a Rule 37.1 conference on the responses the next day. The next day, Mr. Dall'Acqua's Chicago counsel indicated that he would not be available until the next day (January 12). The undersigned therefore expressed his concerns with the responses via email. Chicago counsel responded two days later. Some supplementation, was promised, but two issues remain. (Chaffin Dec., ¶¶ 9, 10.)

**A.     Interrogatory 1**

Interrogatory 1 asked Mr. Dall'Acqua to identify all current and former Harte-Hanks personnel referenced in paragraphs 14-22 of Mr. Dall'Acqua's counterclaim. (Chaffin Dec., ¶ 11, Ex. G at response to interrogatory 1.) This interrogatory seeks essentially the same information that is discussed above – the "who, what, when, where, etc.," concerning the alleged contact between Protocol and others on the one hand and "Harte-Hanks" and a "senior Harte Hanks human resources manager" on the other.

Mr. Dall'Acqua, by his Chicago counsel, is flatly refusing to provide this critical and manifestly relevant information. (Chaffin Dec., ¶ 12.) For the reasons discussed above, the information should be provided, and Mr. Dall'Acqua and his counsel should be sanctioned for refusing to provide it.

**B.     Document Requests 16-19**

In his counterclaim, Mr. Dall'Acqua alleges that "Harte-Hanks has engaged in unfair methods of competition . . . ." (Amended Answer and Counterclaims, ¶ 38.) He says that Harte-

Hanks, by its allegedly wrongful behavior, "has and continues to interfere with the employment relationship between Dall'Acqua and Protocol . . .(id., ¶ 39) and "has and continues to interfere with Dall'Acqua's ability to lawfully compete with Harte-Hanks in his capacity as Protocol's president and CEO." (Id., ¶ 40.) He goes on to allege that Harte-Hanks's purpose is "to undermine Dall'Aqua's ability to compete freely against Harte-Hanks, to improperly distract Dall'Acqua's attention away from Protocol (sic) legitimate business objectives, and to unfairly gain a competitive advantage in the marketing services industry." (Id., ¶ 41.)

In view of these allegations, Harte-Hanks requested documents relating to the alleged damages. The requests are:

16. All documents concerning the damages Dall'Acqua and/or Protocol have sustained as a result of the alleged conduct of which Dall'Acqua complains.

17. Protocol's quarterly and annual financial statements for 2000 to the present.

18. All documents concerning the financial performance of Protocol during Dall'Acqua's tenure with Protocol.

19. All documents concerning the financial performance of Protocol during the three years preceding Dall'Acqua's hiring by Protocol.

(Chaffin Dec., ¶ 13.) Information concerning Protocol's finances were requested because its financial condition (period over period) is implicated by the allegation that Harte-Hanks has interfered with Mr. Dall'Acqua's ability to perform his job as CEO of Protocol. If there has been interference with the CEO's performance, the numbers should show it.

Notwithstanding his broad allegations of competitive injury, and even though a Confidentiality Stipulation and Order is in place, Mr. Dall'Acqua simply refuses to provide this documentation. (Chaffin Dec., ¶ 14.) The documents should be provided. Mr. Dall'Acqua

9

cannot claim competitive injury and at the same time refuse to provide documents that will allow Harte-Hanks to examine the claim.[3]

## Conclusion

For the foregoing reasons, Mr. Dall'Acqua should be compelled to provide the documents and information described above and to reimburse Harte-Hanks's counsel for the costs of this motion.

Dated: January 14, 2005

HARTE-HANKS, INC.,

By its Attorneys,

s/David B. Chaffin
David B. Chaffin
BBO No. 549245
Kathleen A. Kelley
BBO No. 562342
HARE & CHAFFIN
160 Federal Street
Boston, MA 02110
(617) 330-5000

## CERTIFICATE PURSUANT TO LOCAL RULE 37.1

I certify that I conferred and exchanged extensive correspondence with opposing counsel on numerous occasions concerning the matters at issue. The conferences and correspondence are described in detail in the text above. A number of issues were resolved, but those identified above could not be.

s/David B. Chaffin

---

[3] It is worth noting that Protocol has filed a separate action in Illinois state court in which it alleges a claim that is a virtual carbon-copy of Mr. Dall'Acqua's claim and in which it seeks damages for alleged competitive injury to it.