# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF ___Massachusetts___

HARTE-HANKS, INC.

**V.**

CHARLES R. DALL'ACQUA and

PROTOCOL MARKETING GROUP

TO:
Keeper of Records
Protocol Marketing Group, a/k/a
Protocol Services, Inc.
120 Campanelli Drive
Braintree, MA 02184

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]  04 CV 11548 DPW

(D. Mass)

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| Hare & Chaffin | December 3, 2004 |
| 160 Federal Street, Floor 23, Boston, MA 02110 | 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 11·29·04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David B. Chaffin, Esq.
Hare & Chaffin, 160 Federal Street, Floor 23, Boston, MA 02110    (617) 330-5000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE: | 11/24/04 | PLACE: | PROTOCOL MKTG GROUP |
|---|---|---|---|

**Aka  PROTOCOL SERVICES INC**
**120 Campanelli Drive – Braintree MA**

SERVED:   LISA BELVERY                                          "IN HAND" along with Schedule "A" &
              Human Resources Generalist               Witness Fee of  $0.00  for Records Only
              Person In Charge At Time of Service

SERVED ON (PRINT NAME)                                        MANNER OF SERVICE

Rosalind Applebaum                                               Constable/and a Disinterested Person

SERVED BY (PRINT NAME)                                        TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Proof of Service is true and correct.

Executed on      11/24/04
                       DATE                                    SIGNATURE OF SERVER

Applebaum & Applebaum Constables
PO Box 213
Randolph MA 02368
ADDRESS OF SERVER

## SCHEDULE A

## DEFINITIONS

1.      "Document" shall be given the most expansive interpretation permitted by the Federal Rules of Civil Procedure.  Without limiting its scope, the term "document" is intended to include any kind of printed, recorded, written, graphic or photographic matter (including tape recordings), however printed, produced, reproduced, coded,  or stored, of any kind or description, whether or not sent or received, including reproductions, facsimiles, and drafts, and including, without limitation, papers, books, accounts, correspondence, reports, memoranda, tapes, handwritten or stenographic notes, invoices, computer printouts, discs, tapes, data, email messages, telex messages, work papers, telephone logs, diaries, desk calendars, minutes, corporate resolutions, and things similar to any of the foregoing.  Each and every non-identical copy of a document (whether different from the original because of stamps, indication of receipt, handwritten notes, marks, or any other reason) is itself a document to be produced.

2.      "Harte-Hanks" refers to Harte-Hanks, Inc., and any affiliate, predecessor, successor, parent, subsidiary, agent, employee, or representative (including attorneys) of same.

3.      "Dall'Acqua," refers to Charles R. Dall'Acqua, and any affiliate, agent, employee, or representative (including attorneys) of same.

4.      "Protocol," "you," and "your" refer to Protocol Marketing Group a/k/a Protocol Services, Inc., Protocol Services, Inc., and any affiliate, predecessor, successor, parent, subsidiary, agent, employee, or representative (including attorneys) of same, and all other persons acting or purporting to act on its or their behalf.

5.      "Agreement" refers to the Confidentiality/Non-Disclosure Agreement between Harte-Hanks and Dall'Acqua, showing an (apparent) signature of Charles R. Dall'Acqua and dated January 25, 2002.

6.      As used herein, the word "each" includes the word "every."  The word "every" includes the word "each."  The word "any" includes the word "all," and the word "all" includes the word "any."

7.      As used herein, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside its scope.

8.      Where it is appropriate, the use of the singular incorporates the plural, and the use of the plural incorporates the singular.

9.      As used herein, the term "concerning" means referring to, relating to, describing, evidencing, or constituting.

10.     As used herein, the term "person" means any natural person, individual, firm, corporation, partnership, group, association, organization, or other legal, business, or governmental entity.

11.     As used herein, the term "correspondence" means any document (as defined) sent by any means from one person to another, and includes internal documents and communications (including email) exchanged between employees, agents, or other representatives of a person or entity.

12.     As used herein, the term "communication" means any transfer or exchange of information, or request for information, whether oral, written, electronic, or any other form, between or among two or more persons.

## DOCUMENTS

1.      All documents concerning Charles R. Dall'Acqua's, including, but not limited to those constituting or relating to: his employment at Harte-Hanks; his employment at Protocol; correspondence between Protocol and Dall'Acqua prior to March 31, 2004; correspondence between Dall'Acqua and any investor in, or equity partner with, Protocol before March 31, 2004; his compensation by Protocol; the terms and conditions of his employment at Protocol; and the status of the negotiations between Dall'Acqua and Protocol on or about March 1, 2004.

2.      All documents concerning the alleged forgery of the Agreement at issue in this case.

3.      All documents concerning any current or former employee of Harte-Hanks, including but not limited to John Martus, Joel Bakal, and Deb Kennedy, and including but not limited to the terms of the individuals' employment at Protocol.

4.      All documents concerning any efforts or attempts to solicit any current or former Harte-Hanks employees for employment at or with Protocol.

5.      All documents concerning interviews of Dall'Acqua by or on behalf of Protocol

before the commencement of Dall'Acqua's employment by Protocol.

6.      All documents concerning any communications of any sort concerning

Dall'Acqua that you had with any headhunter or recruiting firm from September 1, 2001, through

March 31, 2004.

7.      All documents concerning any communications, interviews, meetings,

discussions, conferences, dining engagements, other social engagements, correspondence, or

conversations Dall'Acqua had with any representative of Protocol or with any of the investors in

Protocol before March 31, 2004.

8.      All documents constituting or concerning the terms and/or conditions of

Dall'Acqua's employment with Harte-Hanks.

9.      All documents concerning any plan, intention, or effort to solicit Hart-Hanks

employees for employment at Protocol.

10.     All documents that were supplied to Protocol and/or investors in Protocol in

connection with Dall'Acqua's discussions and/or negotiations relating to or leading to his

employment with Protocol.

11.     All documents that identify the recruiter, headhunter, or executive search firm

who or that was involved in the events and circumstances leading to Dall'Acqua's employment

by or with Protocol.

12.     All documents concerning the reason for and circumstances surrounding

Dall'Acqua's execution of a non-competition and non-solicitation agreement with Protocol.

13.     All documents concerning any representation made by Dall'Acqua to Protocol concerning the terms and conditions of his employment by Harte-Hanks.

14.     All business records of Harte-Hanks.

15.     All documents concerning any of the assertions contained in any affidavit, declaration, or affirmation submitted on behalf of Protocol in connection with this action.

16.     All documents that identify salaried personnel hired by Protocol since March 1, 2004.

17.     All documents concerning any solicitation of James Davis for employment by Protocol.

18.     All documents concerning Dall'Acqua's consultation with attorneys concerning any employment agreement between him and Protocol.

19.     All documents concerning Dall'Acqua's communications with Dean H. Blythe in March 2004.

20.     All documents concerning any contact you have had with any customers, clients, or prospects of Harte-Hanks since March 1, 2004, including but not limited to H&R Block.

21.     All documents concerning your use of information concerning, or of, Harte-Hanks, including information concerning the terms and conditions of Harte-Hanks contractual relationships, in connection with attempts to solicit the business of Harte-Hanks customers, including H&R Block.

22.     All documents concerning Dall'Acqua's use of Harte-Hanks assets or personnel to assist him in connection with his negotiations or discussions concerning potential employment with Protocol, including all research materials developed as a result of such use.

23.     All documents concerning efforts by Protocol to ascertain whether Dall'Acqua was a party to any agreement with Harte-Hanks that restricts his activities after his employment with Harte-Hanks, including but not limited to documents concerning the identity of the individual calling Harte-Hanks on behalf of Protocol and the "senior Harte-Hanks human resources manager" he/she called, as referenced in ¶ 21 of Dall'Acqua's Counterclaim.

24.     All documents detailing or reflecting the revenue and profits earned by Protocol from January 1, 1999 through the present.

25.     All documents which reflect and/or relate to Dall'Acqua's allegation in ¶ 41 of his Counterclaim that Harte-Hanks has "interfere[d]  with Dall'Acqua's ability to lawfully compete with Harte-Hanks in his capacity as Protocol's president and CEO," including but not limited to documents relating to any opportunities Protocol has lost by reason of this action and preliminary injunction herein.

26.     All documents concerning any legally-compensable damages Protocol claims it has sustained as a result of any actions by Harte-Hanks.